## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## BRUNSWICK DIVISION

| | |
|---|---|
| THE GLYNN ENVIRONMENTAL COALITION, INC. AND  CENTER FOR A SUSTAINABLE COAST, INC., )<br><br>    **Plaintiffs,**<br><br>**v.**<br><br>**SEA ISLAND ACQUISITION, LLC,**<br><br>    **Defendant.** | )<br>)<br>)<br>)<br>)<br>)  Civil Action No. __2:19-cv-50_____<br>)<br>)<br>)<br>)<br>) |

---

## COMPLAINT

---

Plaintiffs, The Glynn Environmental Coalition, Inc. and Center for a Sustainable Coast, Inc.  make the following allegations for their complaint:

### NATURE OF THE ACTION

1.      This is a citizen civil action to enforce the statutory requirements of the Clean Water Act.

2.      On January 10, 2013, the Defendant, Sea Island Acquisition, LLC ("***Sea Island***"), applied for authorization from the U.S. Army Corps of Engineers (the "***Corps***") under Nationwide Permit Number 39 ("***NWP 39***") to fill 0.49 acres of wetland in the proximity of its hotel, the Inn at Sea Island, at or near 100 Salt Marsh Lane on St. Simons Island, Georgia (the "***Subject Wetland***") for the stated purpose of constructing an office building and attendant parking lot.

3.      On February 20, 2013, the Corps authorized Sea Island to fill the Subject Wetland under NWP 39 and issued identification number SAS-2013-00045 for the proposed project. The

term of this NWP 39 authorization was for two years; thus initially expiring on February 20, 2015. *See* Exhibit "A."

4.    In its May 12, 2017 Memorandum for Record re Department of the Army File SAS-2013-00045, the Corps indicated that Sea Island's authorization under NWP 39 extended to March 18, 2017, with an additional year to complete work, because the Savannah District had verified 2012 NWPs with this deadline; thus, Sea Island's ability to comply with NWP 39 has expired. *See* Exhibit "B."

5.    NWP 39 is a general Section 404 permit under the Clean Water Act.

6.    NWP 39 allows fill material to be discharged into non-tidal waters of the United States for the construction or expansion of commercial and institutional building foundations and building pads and attendant features that are necessary for the use and maintenance of the structures.

7.    Upon information and belief, Sea Island has failed to build a commercial structure, as required under NWP 39, and has no plans to construct a commercial structure on the Subject Wetland. Instead, Sea Island has merely grassed over, or in other words, landscaped over the Subject Wetland.

8.    Failure to construct a commercial structure on the Subject Wetland is a violation of Sea Island's NWP 39.

9.    Since Sea Island's authorization to fill the Subject Wetland under NWP 39 expired, the continued fill of the Subject Wetland constitutes an ongoing violation of Section 301 of the Clean Water Act (or "***the Act***"), as the fill is not permitted under either Section 401 or Section 404 of the Act.

10.     Because Sea Island failed to comply with the terms of its NWP 39, it also failed to comply with its Section 401 permit under the Clean Water Act.

11.     Section 401(a)(1) of the Act requires that any application to the Corps for a Section 404 permit must include a "certification from the State" where the fill will occur.

12.     Georgia Environmental Protection Division ("**Georgia EPD**") issues Section 401 permits.

13.     The Section 401 permit issued by the Georgia EPD for NWP 39 is contingent upon Sea Island's compliance with NWP 39 – its Section 404 permit. *See* Exhibit "C."

14.     Because Sea Island did not comply and can no longer comply with NWP 39, as the term of the Corps' authorization has expired, Sea Island has also violated its Section 401 certification.

15.     Upon information and belief, Sea Island intentionally misled the Corps in seeking NWP 39, as Sea Island never intended to construct a commercial structure, but rather only intended to landscape over the Subject Wetland.

16.     Upon information and belief, Sea Island did not qualify for coverage under any nationwide permit for the purposes of filling and landscaping the Subject Wetland; accordingly, Sea Island would have been required to apply for an individual Section 401 and 404 permit in order to legally fill the Subject Wetland.

17.     Sea Island was required to apply for and receive an individual permit before filling the Subject Wetland because landscaping is not a permissible purpose for filling wetlands under any available nationwide permits.

18.     Obtaining an individual permit is a lengthier and more costly endeavor than obtaining coverage to fill wetlands under a nationwide permit.

19.     Individual Section 401 and Section 404 permits also require a more stringent public review procedure.

20.     Upon information and belief, in order to circumvent the Section 401 and Section 404 permitting requirements of the Clean Water Act, Sea Island applied for coverage under NWP 39 to fill the Subject Wetland under the ruse of constructing a commercial structure with no intent of actually doing so.

21.     Accordingly, upon information and belief, Sea Island intentionally misrepresented its intent to develop a commercial structure when seeking authorization to fill the Subject Wetland under NWP 39, as evidenced by the allegations stated below, demonstrating that Sea Island intended to fill the Subject Wetland for the purpose of permanent landscaping and sodding – not a commercial structure.

22.     Because Sea Island's authorization to act under NWP 39 was obtained by false pretenses, the authorization was invalid and void *ab initio*, and, therefore, Sea Island's past and ongoing fill activities in the Subject Wetland are violations of Section 301(a) of the Clean Water Act because the activities were never properly permitted under Sections 401 and 404 of the Clean Water Act.

23.     Sea Island's use of NWP 39 to fill the Subject Wetlands under the ploy of constructing a commercial structure obviated the Corps' and Georgia EPD's authority to review and assess the more stringent requirements of an individual permit application; furthermore, by intentionally sidestepping the Section 401 and Section 404 permitting process, Sea Island eliminated opportunities for meaningful public participation.

24.     In its May 12, 2017 Memorandum for Record re Department of the Army File SAS-2013-00045, the Corps verified that a commercial structure had not yet been constructed on the Subject Wetland. *See* Exhibit "B."

25.     In a letter dated as of October 14, 2014 re Department of the Army permit SAS-2013-00045 from Kimberly L. Garvey, Section Chief, Coastal Branch, to Daniel Parshley, Glynn Environmental Coalition, the Corp acknowledged "that the applicant [Sea Island] provided some erroneous information" to the Corps when applying for NWP 39. *See* Exhibit "D."

26.     Nonetheless, the Corps has continually stated that there are "numerous factors which support a decision to pursue no further action" against Sea Island. *See* Exhibit "B" and Exhibit "D." *See also* September 6, 2016 Memorandum for Record re Department of the Army file SAS-2013-00045 (concluding that the Corps will not initiate an enforcement action against Sea Island) (Exhibit "E").

## PARTIES

### *Plaintiffs*

27.     Plaintiff, The Glynn Environmental Coalition, Inc. (the "**GEC**"), is a non-profit corporation organized under the laws of the State of Georgia. GEC's principal office address is P.O. Box 2443, Brunswick, Georgia, 31521.  GEC is an environmental group committed to assuring a clean environment and healthy economy for citizens of coastal Georgia, particularly Glynn County, Georgia. The group is dedicated to protecting the environment of the community in which its members live and work. GEC's members rely on the organization to represent their interests through participation at public hearings on coastal Georgia environmental matters.

28.     Plaintiff, Center for a Sustainable Coast, Inc. (the "*Center*"), is a non-profit corporation organized under the laws of the state of Georgia. The Center's principal office address is 221 Mallery Street, Suite B, St. Simons Island, GA, 31522. The Center's purpose is to improve the responsible use, protection, and conservation of coastal Georgia's resources— natural, historic, and economic. The Center's agenda includes protecting coastal wildlife, water quality, tidal marshes, and freshwater, as well as improving the transparency, impartiality, and accountability of governing agencies.

29.     Plaintiffs are corporations and therefore "persons" within the meaning of 33 U.S.C. § 1362(5).

30.     Plaintiffs have interests in protecting and maintaining the health of coastal Georgia and its adjoining wetlands. These interests are adversely affected by Defendant's violations. GEC and the Center are therefore "citizens" within the meaning of 33 U.S.C. § 1365(g).

31.     By fraudulently circumventing the permitting framework of the Clean Water Act in applying for a general nationwide permit, Plaintiffs' and their members were denied the opportunity to participate in public review procedures, which would have been required had Sea Island applied for the appropriate Section 404 individual permit and corresponding Section 401 certification in order to grass over the Subject Wetland. *See* 33 CFR 325.5(b)(1). (An individual permit under the Clean Water Act "is one which has been processed through the public interest review procedures, including public notice and receipt of comments.").

32.     GEC has members who reside in Glynn County, Georgia, on St. Simons Island, Georgia, and on Sea Island, Georgia (hereinafter "*GEC's resident members*").

33.     GEC also has members who live in Glynn Haven Estates and Epworth Acres, both of which are nearby neighborhoods in close proximity to the Subject Wetland.

34.     GEC sends "call to action" emails and/or mailings to its members and other organization participants regarding public hearings related to environmental matters impacting its organization and its mission.

35.     If Sea Island had not circumvented the permitting framework of the Clean Water Act by submitting "erroneous information" in its application for NWP 39 in order to avoid stringent public review procedures, then GEC would have sent an email regarding public hearings related to what should have been Sea Island's individual permit application review. See Exhibit "D."

36.     GEC also owns interests in real property that adjoins and includes Sea Island Road and is located within one half-mile of the Subject Wetland, which also adjoins Sea Island Road. *See* Deed Book 3-R, Page 15 of the Glynn County, Georgia Property Records.

37.     The Center has members who are residents of St. Simons Island, Georgia (hereinafter "***the Center's resident members***"), who have recently donated to the Center in support of its mission to improve the responsible use, protection, and conservation of coastal Georgia's resources.

38.     If Sea Island had not circumvented the permitting framework of the Clean Water Act by submitting "erroneous information" in its application for NWP 39 in order to avoid stringent public review procedures, then the Center would have notified its members via email regarding public hearings related to what should have been Sea Island's individual permit application review. Exhibit "D."

39.     Dunbar Creek (or "***the Creek***") is downstream of the Subject Wetland.

40.     According to the Environmental Protection Agency ("*EPA*"), "[w]etlands affect downstream waters by altering material fluxes through the river network, thereby affecting river structure and function; i.e. connectivity." *Connectivity of Wetlands to Downstream Waters: Conceptual Framework and Review*, EPA, available at https://bit.ly/2IyDyMf (last visited April 10, 2019). As such, wetlands act as natural filters and protective barriers to downstream bodies of water, including creeks.

41.     By illegally filling and continuing to fill the Subject Wetland, Sea Island has destroyed a natural barrier that protects Dunbar Creek.

42.     Plaintiffs' members regularly utilize Dunbar Creek for recreational activities, such as boating, kayaking and fishing.

43.     Additionally, GEC, through its Glynn Water Watch Program, monitors the water quality of Dunbar Creek in order to promote restoration and remediation of the water quality when necessary.

44.     By illegally filling the Subject Wetland, Sea Island has harmfully impacted Dunbar Creek and potentially Plaintiffs' members' future enjoyment of such recreational activities at the Creek.

45.     By engaging in fraudulent practices in applying for NWP 39, as opposed to an individual permit under the Clean Water Act, Sea Island prevented Plaintiffs and Plaintiffs' members from engaging in the public review process required as part of an individual permit application. *See* 33 CFR 325.5(b)(1).

46.     The permitting framework under the Clean Water Act seeks to protect the "integrity of the Nation's waters." 33 U.S.C. § 1251.

47.     Consistent with both GEC's and the Center's missions, the Plaintiffs' members' interests rest on the benefits of sustainability of its community's coastal resources. Accordingly, Plaintiffs' members, including GEC's and the Center's resident members, depend upon orderly and responsible development, achieved in part by systemic consideration of a wide range of regulatory factors at the local, state, and federal level, on St. Simons Island.

48.     Plaintiffs' members, including GEC's and the Center's resident members, have an interest in the enjoyment and perpetuation of both natural and built amenities of St. Simons Island, which depend on good-faith efforts by both permit applicants and regulatory agencies.

49.     Plaintiffs and their members were deprived of the opportunity to meaningfully participate in the public interest review process under the Clean Water Act, and are continually harmed by Sea Island's blatant disregard of its NWP 39's requirements, as circumventing the Clean Water Act's permitting process sets a precedent for other developers to also exploit Georgia's coastal resources.

50.     The Corps acknowledged that Sea Island submitted "erroneous information" when applying for authority to fill the Subject Wetland under NWP 39. Even so, the Corps determined that it would not pursue action against Sea Island. Exhibit "D."

51.     Sea Island knowingly misled the Corps in applying for NWP 39, and in doing so eliminated the public's right, specifically Plaintiffs' right, to comment on the proposed fill of a protected wetland. Public policy dictates that such fraud harms the public and obviates the purpose of the Clean Water Act.

52.     Further, the Corps' lack of action sets a dangerous precedent that other developers can knowingly submit "erroneous information" to federal agencies in order to circumvent stringent agency and public review of the permitting process without repercussion. Exhibit "D."

53.     This precedent is particularly harmful to Plaintiffs, and generally the public at large, as it eliminates Plaintiffs' right to protect its community's natural resources, and incentivizes the submission of misinformation by Clean Water Act permit applicants in order to obtain a quicker and cheaper permit under the Act.

54.     Plaintiffs and their members have suffered, are suffering, and will continue to suffer injury from Sea Island's violations. Depriving Plaintiffs and their members of meaningful participation in the public review process required under the individual permitting framework of the Clean Water Act substantially injures Plaintiffs' ability to engage with its community, preserve wetlands on St Simons Island, and sustain the water quality in the waters of the United States for their use and enjoyment.

55.     Further, by illegally filling the Subject Wetlands, Plaintiffs suffer, and will continue to suffer, from harmful environmental repercussions. These injuries are actual and concrete and the relief sought in this action would redress them. Fraudulent practices by permit applicants, as evidenced below, directly threatens the interests of GEC, the Center, the members of both organizations, and their representative interests of the general public

### Defendants

56.     Defendant, Sea Island, is a Delaware Limited Liability Company with its principal office located at 351 Sea Island Road, St. Simons Island, GA, 31522. Sea Island is wholly owned by Sea Island Resort Holdings, LLC, which is a Delaware limited liability company, controlled by family trusts and entities established by or for Phillip Anschutz, a Colorado resident.

57.     Defendant bought the assets of the legacy Sea Island Company pursuant to a Bankruptcy Code Section 363(b) sale in or around 2010.

58.     Defendant is the named permittee on the Section 401 and 404 permits at issue in this case.

## JURISDICTION

59.     This is a citizen civil action brought under the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq*., more commonly called the Clean Water Act. *See* 33 U.S.C. §§ 1365. This Court has subject matter jurisdiction over the parties and this action pursuant to Section 505(a)(1) of the Clean Water Act, 33 U.S.C. § 1365(a)(1), and 28 U.S.C. §§ 1331 and 2201 (an action for declaratory and injunctive relief under the Constitution and laws of the United States).

## VENUE

60.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this judicial district, and under 33 U.S.C. 33 U.S.C. § 1365(c) because the sources of the violations described in this Complaint are located within this judicial district.

## NOTICE

61.     Plaintiffs sent a letter by certified mail to Defendant on January 15, 2019 ("Notice Letter"). In the Notice Letter, Plaintiffs notified Defendant of its violations under the Clean Water Act and of Plaintiffs' intent to file suit for such violations after sixty (60) days, as required by 40 C.F.R. § 135.2(a)(1) (Mar. 19, 1991). A copy of the Notice Letter is attached hereto as Exhibit "F" and is incorporated herein by reference.

62.     The Notice Letter was also sent to the state and federal regulatory agencies, as identified in Exhibits "F" and "G," and as required by Section 505(b) of the Clean Water Act, 33 U.S.C. § 1365(b)(1)(A).

63.    More than sixty (60) days have passed since the Notice Letter was sent to Defendant and the regulatory agencies.

64.    On March 13, 2019, Defendant, by and through counsel, responded to Plaintiffs' Notice Letter, denying any claim relating to violations of its nationwide permit.

65.    Plaintiffs are informed and believe that the federal or state agencies have neither commenced nor are diligently prosecuting any action to redress the violations alleged in the Notice Letter and in this Complaint. *See* 33 U.S.C. § 1365(b)(1)(B). *See* Exhibit "B" (Electing not "to initiate an enforcement action" against Sea Island); Exhibit "E" ("[T]he Corps [has] concluded that SAS-2013-00045 is presently in compliance with previously authorized NWP 39 verification."); Exhibit "D" (Electing not "to initiate an enforcement action or to request restoration of permitted wetland fills…").

66.    This action is not barred by any prior administrative penalty under Section 309(g) of the Clean Water Act, 33 U.S.C. § 1319(g).

67.    Plaintiffs seek relief from Defendant's violations of the procedural and substantive requirements of Section 301(a) of the Clean Water Act, 33 U.S.C. 33 U.S.C. § 1311(a).

## LEGAL BACKGROUND

### *Clean Water Act Permitting Structure: Section 404 of the Clean Water Act*

68.    Section 301(a) of the Clean Water Act provides, in pertinent part, that "except as in compliance with ... § 1344 of this title, the discharge of any pollutant by any person shall be unlawful." 33 U.S.C. § 1311(a).

69.    The Clean Water Act defines the term "discharge of a pollutant" to include "any addition of any pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12).

70.    The term "pollutant" is broadly defined to include dredged spoil, rock, sand, and agricultural waste discharged into water. 33 U.S.C. §1362(6).

71.    "The term 'point source' means any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged." 33 U.S.C. § 1362(14).

72.    Section 404 of the Clean Water Act authorizes the Corps to issue permits for the discharge of dredge or fill material into "navigable waterways." 33 U.S.C. § 1344. Likewise, 33 C.F.R. § 323.3(a) charges the Corps to issue Clean Water Act Section 404 permits "for the discharge of dredged or fill material into waters of the United States."

73.     "Navigable waters" includes wetlands that directly abut traditional navigable waters or have a significant nexus with traditional navigable waters.[1]

74.    Under Section 401 of the Clean Water Act, a federal agency cannot issue a Section 404 permit for an activity that may result in a discharge to United States waters until the state where the discharge would originate has granted or waived Section 401 certification. *See* 33 U.S.C. § 1341.

***Clean Water Act Permitting Structure: Section 401 of the Clean Water Act***

75.    Section 401(a)(1) of the Clean Water Act requires that any application to the Corps for a Section 404 permit must include a "certification from the State in which the discharge originated or will originate…[and] that any…discharge will comply with [other sections of the Clean Water Act]." 33 U.S.C. § 1341(a)(1).

---

[1] *See* Memorandum from U.S. Army Corps of Engineers and U.S. EPA, "Clean Water Act Jurisdiction Following U.S. Supreme Court Decision in Rapanos v. United States & Carabell v. United States," available at https://www.epa.gov/sites/production/files/201602/documents/cwa_jurisdiction_following_rapanos120208.pdf; *Rapanos v. United States*, 547 U.S. 715, 742 (2006).

76.     This certification from the state is known as Section 401 Water Quality Certification ("401 WQC").

77.     Denying certification prohibits the federal permit or license from being issued. 33 U.S.C. § 1341(a)(1).

78.     The State of Georgia is authorized under Section 401 to issue a 401 WQC for all Section 404 permits.

79.     Individual Section 404 permits require corresponding Section 401 WQC by the State of Georgia.

80.     By letter dated March 12, 2012 to the Savannah District, U.S. Army Corps of Engineers, the Georgia EPD issued a Section 401 WQC for all of the nationwide permits including NWP 39, pursuant to Section 401 of the Clean Water Act. *See* 33 U.S.C. § 1341. *See also* Exhibit "C."

81.     The Section 401 permit issued by the Georgia EPD for NWP 39 is contingent upon the following applicable conditions (Exhibit "C"):

(1)     "The discharge may not cause the loss of greater than ½ acre."

(2)     "The discharge of dredged or fill material is for the construction or expansion of commercial and institutional building foundations and building pads and attendant features that are necessary for the use and maintenance of the structures."

(3)     "All work performed during construction will be done in a manner so as not to violate applicable water quality standards."

(4)     "No oils, grease, materials or other pollutants will be discharged from the construction activities that reach public waters."

14

(5)     "Georgia EPD may require submission of a formal application for individual 401 water quality certification for any project if it is determined, based upon consideration of Georgia's water quality rules, that the project is likely to have a significant adverse effect upon water quality."

(6)     "This certification is contingent upon satisfaction of the Savannah District's Regional Conditions, including the Appendix A provisions requiring prior notification to Georgia EPD before the commencement of NWP authorized projects."

82.     The Savannah District, U.S. Army Corps of Engineers' Regional Conditions requires the following: "For uses of NWPs requiring submission of a Pre-Construction Notification (PCN) to the Savannah District prior to commencing work in waters of the United States (US), a copy of the PCN with project plans must also be submitted to the Georgia Department of Natural Resources (DNR), Environmental Protection Division (EPD) …., prior to commencing work."

83.     Upon submission of the requirements set forth in paragraphs 75 through 82, a project is deemed to be in compliance with the State issued conditional 401 WQC for NWP39.

### Section 404 General NWP 39

84.     The Corps may issue general permits, as opposed to individual permits, to approve activities that have minimal individual and cumulative adverse environmental effects. These general permits can be issued for no more than five years. 33 U.S.C. § 1344.

85.     A nationwide permit is a type of general permit that authorizes specific activities across the United States.

86.     Currently, the Corps has 52 existing nationwide permits. *See* Nationwide Permits Chronology and Related Materials, UNITED STATES ENVIRONMENTAL PROTECTION

AGENCY, available at https://www.epa.gov/cwa-404/nationwide-permits-chronology-and-related-materials.

87.     The basic premise of the Section 404 permit program is to prohibit discharge of dredged or fill materials into U.S. waters if a practicable alternative exists that is less damaging to the aquatic environment and surrounding ecosystem. *See* Section 404 Permit Program, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, available at https://www.epa.gov/cwa-404/section-404-permit-program.

88.     NWP 39 is a specific nationwide permit under the Corps' general permitting authority, which allows for the discharge of dredged or fill material into non-tidal U.S. waters "for the construction or expansion of commercial and institutional building foundations and building pads and attendant features that are necessary for the use and maintenance of the structures." 77 Federal Register 10184-01, 10279 (Feb. 21, 2012).

89.     In order to fill wetlands under NWP 39, the Corps must verify that the applicant intends to build a commercial structure or institutional building foundation or building pad, as this is a common activity with recognized minimal environmental impact in light of the benefits gained through economic development.

90.     If a project does not "qualify for a nationwide permit, an individual permit is required. *See* Section 404 Permit Program, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, available at https://www.epa.gov/cwa-404/section-404-permit-program.

91.     The Corps' evaluation of each individual permit application involves a thorough review of the potential environmental and socioeconomic effects of the proposed activity. There

is also a public interest review process, including a required public notice and public comment period. *Id.*

92.    For these reasons, obtaining an individual permit is a lengthier and more costly endeavor than obtaining coverage under a nationwide permit.

93.    In fact, per the Environmental Protection Agency's ("EPA") website, "[t]he general permit process eliminates individual review and allows certain activities to proceed with little or no delay, provided that the general or specific conditions for the general permit are met."[2]

94.    Sea Island's use of NWP 39 to fill the Subject Wetlands under the ruse of building a commercial structure usurped the Corps and Georgia EPD's authority to review and assess the more stringent requirements of an individual permit application; moreover, by circumventing the Section 401 and Section 404 permitting process, Sea Island eliminated meaningful public participation, and thereby GEC and the Center's public participation and ability to comment on Sea Island's intended actions.

### Section 404 Individual Permits

95.    If a project within the jurisdiction of the Clean Water Act does not meet the requirements of a general permit, an individual Section 401 and Section 404 permit are required.

96.    An individual permit "is one which has been processed through the public interest review procedures, including public notice and receipt of comments." 33 CFR 325.5(b)(1).

---

[2] *United States Environmental Protection Agency*, SECTION 404 PERMIT PROGRAM, https://www.epa.gov/cwa-404/section-404-permit-program.

97.     The public interest is an important component of an individual permit evaluation process for individual Section 401 and Section 404 permits.

98.     The individual Section 401 and Section 404 permit evaluation process includes issuance of a public notice, solicitation of comments from government agencies and the public, and a decision document describing the environmental impacts and the findings of the public review process. The Corps of Engineers will add any special conditions deemed appropriate for minimizing adverse impacts to the environment. *See generally* 40 CFR Part 230 – Section 404(b)(1) Guidelines for Specification of Disposal Sites for Dredged or Fill Material.

99.     When an individual permit is required, an applicant should submit a complete application to the appropriate Corps district office. 33 CFR 325.5(b)(1).

100.    Pursuant to 33 CFR 325.1, "The application must include a complete description of the proposed activity including necessary drawings, sketches, or plans sufficient for public notice (detailed engineering plans and specifications are not required); the location, purpose and need for the proposed activity; scheduling of the activity; the names and addresses of adjoining property owners; the location and dimensions of adjacent structures; and a list of authorizations required by other federal, interstate, state, or local agencies for the work, including all approvals received or denials already made."

101.    Due to the more rigorous review process on the part of the Corps, the state, and the public, obtaining an individual permit is more time consuming and more costly than obtaining authority to act under a general permit, specifically a nationwide permit.

### *Citizen Suits*

102.    Clean Water Act Section 505(a)(1) provides that "any citizen may commence a civil action on his own behalf—against any person," including any government agency, "who is

18

alleged to be in violation of (A) an effluent standard or limitation under this Act or (B) an order issued by the Administrator [of the Environmental Protection Agency] or a State with respect to such standard or limitation." 33 U.S.C. § 1365(a).

103.   Clean Water Act Section 505 defines "effluent standard or limitation" to include "an unlawful act under subsection (a) of section 1311." 33 U.S.C. § 1365(f); *see also* 33 U.S.C. § 1311(a) (prohibiting unpermitted discharges). The Clean Water Act defines "citizen" as "a person or persons having an interest which is or may be adversely affected." 33 U.S.C. § 1365(g).

104.   In addition, Section 505(f)(5) defines "effluent standard or limitation" to include "certification under section 1341 of this title."   *See* 33 U.S.C. §1365(f)(5) also known as Section 401 of the Clean Water Act.

105.   The Clean Water Act defines "person" to include individuals, corporations, and political subdivisions of the state. 33 U.S.C. § 1362(5).

106.   Under Clean Water Act Section 309(d), "Any person who violates [the Clean Water Act § 301]…shall be subject to a civil penalty," which 40 C.F.R. § 19.4 caps at $37,500 per day for each violation. 33 U.S.C. § 1319(d).

## GENERAL FACTUAL ALLEGATIONS

### *Site History*

107.   The Subject Wetland in question is 0.49 acres and is located northeast and adjacent to a parking lot and entrance to the Inn at Sea Island.   *See* January 10, 2013, Nationwide Permit Application package from Resource and Land Consultants (on behalf of Sea Island Company; to U.S. Army Corps of Engineers, Savannah District. Reference #SAS-2013-000045. (Exhibit "H").

108.  This parcel sits at 100 Salt Marsh Lane, St. Simons Island, Georgia.

***Sea Island Intentionally Misled the Corps in its Nationwide Permit Application***

109.  Sea Island applied to the Corps to fill the Subject Wetland under NWP 39 on January 10, 2013.

110.  Sea Island's project description was to construct a new office building. *See* Exhibit "H."

111.  Pursuant to the terms of the Pre-Construction Notification, Sea Island submitted a sketch plan showing portions of a 12,000 square-foot administrative office building and accompanying parking lot within the Subject Wetland. *See* Exhibit "H."

112.  On February 20, 2013, the Corps verified authorization of Sea Island's proposed activity to build a commercial structure and attendant parking lot under NWP 39. *See* Exhibit "A."

113.  The Corps issued identification number SAS-2013-00045 for the above mentioned proposed project.

114.  Upon information and belief, Sea Island filled the Subject Wetland with pollutants (fill material) between February 20, 2013, and March 27, 2013.

115.  Sea Island failed to construct any building or attendant structures on the Subject Wetland in accordance with NWP 39 and its 401 WQC.

116.  Instead, Sea Island landscaped the Subject Wetland with permanent sodding.

117.  Landscaping (or sodding) is not an authorized use under NWP 39 or the 401 WQC, which allows discharges of fill material only "for construction or expansion of commercial and industrial building foundations…"

118.    Upon information and belief, Sea Island never intended to comply with NWP 39 and the 401 WQC, and only applied for a general nationwide permit to save time and money.

119.    The intent to mislead the Corps is evidenced by Sea Island's inconsistent applications relating to this site.

120.    As part of its January 2013 application to act under NWP 39, Sea Island submitted a sketch plan showing 12,000 square-feet of a commercial structure, as required under General Condition 31(b) of NWP 39.  *See* Exhibit "H."

121.    In contrast, a Preliminary Plat submitted to Glynn County, Georgia, November 20, 2012, *before* Sea Island applied to the Corps for authorization to proceed under NWP 39, showed no proposed building within the Subject Wetland.  *See* Exhibit "J."

122.    Sea Island's Final Construction Plans for the Inn at Sea Island identifies the Subject Wetland as "Ds4 – PERMANENT SODDING." Exhibit "I."

123.    A Final Plat submitted to Glynn County by Sea Island on March 14, 2014, *after* the Corp's verification, also did not show any commercial building or structure within the filled area, indicating Sea Island's intent to deceive, or at least mislead, the Corps.  *See* Exhibit "K."

124.    The lack of curb cuts on the subject parcel further substantiates Sea Island's deception, illustrating that Sea Island never intended to comply with NWP 39 and the 401 WQC.

125.    A sketch plan submitted to the Corps with the Pre-Construction Notification included curb cuts along Salt Marsh Lane into a parking lot next to the proposed office building. *See* Exhibit "H."

126.    The construction plans and Final Plat filed with Glynn County, Georgia did not include any such curb cuts. *See* Exhibits "J" and "K."

127.   If Sea Island intended to construct an office complex and adjoining parking lot within the terms of NWP 39 and the 401 WQC, the curb cuts would have been designed into the paving project instead of only being shown on the sketch plan submitted to the Corps. *See* Exhibit "H."

128.   Based on information and belief, utilities were installed adjacent to the Subject Wetland where the curb cuts would have been located; potentially limiting Sea  Island ability to ever construct curb cuts.

129.   Sea Island's inconsistent submittals to federal and local agencies, coupled with its illogical curb design if an office building and parking lot were intended to be constructed, demonstrates Sea Island's intent to never comply with NWP 39 and the corresponding 401 WQC.

130.   The information presented in paragraphs 107 through 129 illustrates Sea Island's intent to mislead the Corps so that it would be granted authorization to act under the NWP 39 and the 401 WQC.

131.   Landscaping the Subject Wetland requires an individual permit under Section 404 of the Clean Water Act, as well as Section 401 WQC by the Georgia EPD.

132.   In its May 12, 2017 Memorandum for Record re Department of the Army File SAS-2013-00045, the Corps confirmed Sea Island's failure to construct a commercial structure. ("[T]he permittee has not constructed the physical project according to plans."); Exhibit "B."

133.   Applying for an individual permit is more costly and time intensive than applying for authorization to act under a nationwide permit under Section 404 of the Clean Water because of the Corps' and Georgia EPD's stringent application requirements.

134.    Additionally, applying for an individual permit provides the public an opportunity to participate, comment, and oppose the issuance of the individual permit; whereas, certification under a nationwide permit does not provide the public this same opportunity.

135.    Upon information and belief, it would have been much more difficult, time consuming and costly for Sea Island to apply for an individual permit authorizing Sea Island to fill the Subject Wetland for the purpose of landscaping.

***Sea Island Continues to Violate its Authority to Act under NWP 39 and the 401 WQC***

136.    Even if Sea Island did not intentionally mislead the Corps, upon information and belief, Sea Island has no definitive plan to construct a commercial structure.

137.    The Corps' verification to act under NWP 39 explicitly stated that the "use of this NWP is valid only if (a) [t]he activity is conducted in accordance with the information submitted and meets the conditions applicable to the NWP." Exhibit "A."

138.    Further, in the Corps' Letter dated as of October 14, 2014 re Department of the Army permit SAS-2013-00045 from Kimberly L. Garvey, Section Chief, Coastal Branch, to Daniel Parshley, Glynn Environmental Coalition, it stated that "[a]ll future work associated with the [Subject Wetland] must be constructed in accordance with the information submitted [in Sea Island's January 2013 application] as any revisions may invalidate this permit." Exhibit "D."

139.    Sea Island's present use of the Subject Wetland is neither in accordance with the information submitted in its January 2013 application, nor meets the conditions of NWP 39 or the conditions of the 401 WQC. *See* 33 C.F.R. § 330.4(a): "A prospective permittee must satisfy all terms and conditions of a[] [nationwide permit] for a valid authorization to occur," and 33 C.F.R. § 330.2(c): "Authorization means that specific activities that qualify for an NWP may proceed, provided that the terms and conditions of the [nationwide permit] are met."

140.   The Corps' authorization letter stated that, "[t]his verification is valid for a period of two years." Exhibit "A."

141.   The two-year period for Sea Island to act under the terms and conditions of the NWP 39 expired in 2015 without any construction that would justify the use of NWP 39.

142.   Because Sea Island failed to comply with the two year authorization set by the Corps, it was required to reapply for authorization under NWP 39 or apply for an individual permit.

143.   In its May 12, 2017 Memorandum for Record re Department of the Army File SAS-2013-00045, the Corp indicated that Sea Island's authorization under NWP 39 extended to March 18, 2017, with an additional year to complete work, because the Savannah District had verified 2012 NWPs with this deadline. *See* Exhibit "B."

144.   In the five years that Sea Island should have constructed the commercial complex, there has been no indication that the violation will ever be remedied. In fact, there is evidence to the contrary, demonstrating Sea Island's actual intent to maintain the property as is.

145.   On May 4, 2016 and May 9, 2016, the authorized agent for Sea Island, responded to the Corps request for information and stated that the Subject Wetland had been filled and that "temporary grassing" had been planted. *See* Exhibit "E."

146.   This representation to the Corps was made subsequent to Sea Island submitting Final Construction Plans for the Inn at Sea Island identifying the Subject Wetland as "Ds4 – PERMANENT SODDING." Exhibit "I."

147.   As set forth above, the activity conducted at the Subject Wetland is not in accordance with the information submitted to the Corps and does not meet the terms and conditions of the NWP 39 and the 401 WQC; thus, an ongoing and continuous violation exists.

148.   Sea Island's violations of the Clean Water Act eliminated meaningful public participation, as well as federal and state agency review of Sea Island's application to fill wetlands protected under federal environmental laws.

**WHEREFORE**, Plaintiffs pray for judgment against Sea Island as set forth below.

## FIRST CAUSE OF ACTION

### Noncompliance with Section 404 of the Clean Water Act
### 33 U.S.C. § 1311(a), 1344, 1365(a) and 1365(f)

149.   Plaintiffs incorporate the allegations contained in the above paragraphs as though fully set forth herein.

150.   Because Sea Island was only authorized to fill the Subject Wetland for purposes of constructing a commercial structure in accordance with NWP 39, Sea Island's filling of the Subject Wetland for the unauthorized purpose of landscaping was not in compliance with NWP 39 issued under Section 404 of the Clean Water Act. *See* 33 U.S.C. 1344(p) ("Compliance with a permit issued pursuant to this section, including any activity carried out pursuant to a general permit issued under this section, shall be deemed compliance, for purposes of sections 1319 and 1365 of this title, with section 1311, 1317, and 1343 of this title.").

151.   Because Sea Island's fill of the Subject Wetland was not in compliance with NWP 39 issued under Section 404 of the Clean Water Act, the fill in the Subject Wetland is an illegal discharge into the waters of the United States in accordance with Section 301(a) of the Clean Water Act. 33 U.S.C. § 1311(a). Sea Island continues to violate the Clean Water Act each day the Subject Wetland remains filled without complying with Section 404 of the Clean Water Act.

152.   By committing the acts and omissions alleged above, Sea Island is subject to an assessment of civil penalties for each violation of 33 U.S.C. § 1311(a), pursuant to Sections

309(d) and 505 of the Clean Water Act, 33 U.S.C. § 1319(d), 33 U.S.C. § 1365, and 40 C.F.R. § 19.4 (effective February 6, 2019).

153.   Plaintiffs are entitled to injunctive relief to remedy Sea Island's violations of the Clean Water Act, 33 U.S.C. § 1365(a), because Sea Island's continuing commission of the acts and omissions alleged above will irreparably harm GEC and the Center and its members, for which they have no plain, speedy, or adequate remedy at law.

## SECOND CAUSE OF ACTION

### Noncompliance with Section 401 of the Clean Water Act
### 33 U.S.C. § 1311(a), 1341, 1365(a) and 1365(f)

154.   Plaintiffs incorporate the allegations contained in the above paragraphs as though fully set forth herein.

155.   Because Sea Island was only authorized to fill the Subject Wetland for purposes of constructing a commercial structure in accordance with NWP 39 and the subsequently issued 401 WQC by the George EPD, Sea Island's filling of the Subject Wetland for the unauthorized purpose of landscaping was not in compliance with the 401 WQC issued in accordance with Section 401 of the Clean Water Act.

156.   Because Sea Island's fill of the Subject Wetland was not in compliance with the 401 WQC and NWP 39 issued in accordance with Sections 401 and 404 of the Clean Water Act, respectively, the fill in the Subject Wetland is an illegal discharge into the waters of the United States in accordance with Section 301(a) of the Clean Water Act. 33 U.S.C. § 1311(a).

157.   Sea Island continues to violate the Clean Water Act each day the Subject Wetland remains filled without complying with Section 401 of the Clean Water Act.

158.   By committing the acts and omissions alleged above, Sea Island is subject to an assessment of civil penalties for each violation of 33 U.S.C. § 1311(a), pursuant to Sections

309(d) and 505 of the Clean Water Act, 33 U.S.C. § 1319(d), 33 U.S.C. § 1365, and 40 C.F.R. § 19.4 (effective February 6, 2019).

159.   Plaintiffs are entitled to injunctive relief to remedy Sea Island's violations of the Clean Water Act, 33 U.S.C. § 1365(a), because Sea Island's continuing commission of the acts and omissions alleged above will irreparably harm GEC and the Center and its members, for which they have no plain, speedy, or adequate remedy at law.

## THIRD CAUSE OF ACTION

### *Declaration that Sea Island's Authorization to Act under NWP 39 Is Expired without Compliance*

160.   Plaintiffs incorporate the allegations contained in the above paragraphs as though fully set forth herein.

161.   The Corps' authorization to act under NWP 39 was valid for a period of two years, which expired in 2015 without any commercial structure being built.

162.   In its 2017 Memorandum for Record re Department of the Army File SAS-2013-00045, the Corps indicated that Sea Island's NWP 39 authorization extended to March 18, 2017, but this time also expired without construction of a commercial structure. *See* Exhibit "B."

163.   Because Sea Island failed to construct a commercial structure in accordance with the applicable time-limits under NWP 39, its authorization to act under NWP 39 has expired without compliance with NWP 39.

## FOURTH CAUSE OF ACTION

### Unpermitted Fill Activities in Violation of Sections 301(a) of the Clean Water Act 33 U.S.C. § 1311(a), 1365(a) and 1365(f)

164.   Plaintiffs incorporate the allegations contained in the above paragraphs as though fully set forth herein.

165.   Because Sea Island's authorization to act under NWP 39 has expired without compliance with NWP 39 and the 401 WQC, the ongoing fill in the Subject Wetland is an illegal discharge into the waters of the United States in accordance with Section 301(a) of the Clean Water Act. 33 U.S.C. § 1311(a).

166.   By committing the acts and omissions alleged above, Sea Island is subject to an assessment of civil penalties for each violation of 33 U.S.C. § 1311(a), pursuant to Sections 309(d) and 505 of the Clean Water Act, 33 U.S.C. § 1319(d), 33 U.S.C. § 1365, and 40 C.F.R. § 19.4 (effective February 6, 2019).

167.   Plaintiffs are entitled to injunctive relief to remedy Sea Island's violations of the Clean Water Act, 33 U.S.C. § 1365(a), because the continuing commission of the acts and omissions alleged above will irreparably harm GEC and the Center and its members, for which they have no plain, speedy, or adequate remedy at law.

## FIFTH CAUSE OF ACTION

### *Declaration that Sea Island's Authorization to Act under NWP 39 Is Invalid and Void ab initio*

168.   Plaintiffs incorporate the allegations contained in the above paragraphs as though fully set forth herein.

169.   Upon information, belief, and the above-stated allegations, Sea Island intentionally and maliciously misled the Corps in its application to act under NWP 39 and the 401 WQC and Sections 401 and 404 of the Clean Water Act.

170.   The Corps' verification to act under NWP 39 explicitly stated that the "use of this NWP is valid only if (a) [t]he activity is conducted in accordance with the information submitted and meets the conditions applicable to the NWP."[3]

171.   The Georgia EPD's approval of the 401 WQC for NWP 39 is based solely upon the Corps' application to Georgia EPD that coverage under NWP 39 would be limited to one-half acre and for the sole purpose of constructing a commercial structure.

172.   The "activity" the Corps referenced in its authorization letter was Sea Island's intent to fill the Subject Wetland in order to construct a commercial structure. *See* Exhibit "A."

173.   The above-stated allegations strongly evidence that Sea Island intentionally and maliciously misled the Corps by filing its application to act under NWP 39 and the 401 WQC and representing that it intended to construct a commercial structure in the Subject Wetland while making contradictory representations to the local governing authority that it intended to permanently landscape the Subject Wetland.

174.   NWP 39 and the 401 WQC does not allow filling a wetland for the purpose of landscaping.

175.   If Sea Island had truthfully represented its intent to landscape the Subject Wetland, the Corps would have been mandated by the Clean Water Act to reject Sea Island's application to act under NWP 39 and the 401 WQC.

176.   Because Sea Island intentionally and maliciously misrepresented its intentions in its application to the Corps, the Corps' authorization to Sea Island under NWP 39 and the 401 WQC was invalid and void *ab initio*.

---

[3] February 2013 Authorization Letter.

## SIXTH CAUSE OF ACTION

**Unpermitted Fill Activities in Violation of Sections 301(a) of the Clean Water Act
33 U.S.C. § 1311(a), 1365(a) and 1365(f)**

177.   Plaintiffs incorporate the allegations contained in the above paragraphs as though fully set forth herein.

178.   Because Sea Island's authorization to act under NWP 39 and the 401 WQC was invalid and void *ab initio*, its fill in the Subject Wetland was never permitted in accordance with Section 401 and 404 of the Clean Water Act and, therefore, is an illegal discharge into the waters of the United States in accordance with Section 301(a) of the Clean Water Act. 33 U.S.C. § 1311(a).

179.   By committing the acts and omissions alleged above, Sea Island is subject to an assessment of civil penalties for each violation of 33 U.S.C. § 1311(a), pursuant to Sections 309(d) and 505 of the Clean Water Act, 33 U.S.C. § 1319(d), 33 U.S.C. § 1365, and 40 C.F.R. § 19.4 (effective February 6, 2019).

180.   Plaintiffs are entitled to injunctive relief to remedy Sea Island's violations of the Clean Water Act, 33 U.S.C. § 1365(a), because Sea Island's continuing commission of the acts and omissions alleged above will irreparably harm GEC and the Center and its members, for which they have no plain, speedy, or adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiffs pray for judgment as follows:

A.   An order declaring Sea Island's authorization to act under NWP 39 and the 401 WQC is expired, invalid, and void *ab initio*.

B.  An order declaring Sea Island illegally discharged and continues to illegally discharge fill material into the Subject Wetland in violation of Sections 301(a), 401, and 404 of the Clean Water Act.

C.  An order compelling Sea Island to restore the Subject Wetland.

D.  An order requiring Sea Island to apply for an individual permit before filling or continuing the fill of the Subject Wetland.

E.  A civil penalty in the amount of $37,500 for each day of each violation of the Clean Water Act pursuant to 33 U.S.C. § 1319(d) and 40 C.F.R. § 19.4.

F.  An award for expenses and attorneys' fees, pursuant to 33 U.S.C. § 1365(d) and any other applicable laws; and

G.  An award of such other relief as the Court deems just and proper.

## <u>DEMAND FOR A JURY TRIAL</u>

Plaintiffs hereby request a jury trial on all issues raised in this Complaint.

Respectfully submitted on April 17, 2019.

/s/ E. Righton J. Lewis
E. Righton J. Lewis
Georgia Bar No. 215211
**BUTLER SNOW LLP**
1170 Peachtree Street NE
Suite 1900
Atlanta, Georgia 30309
(678) 515-5064 Telephone
(678) 515-5001 Facsimile
righton.lewis@butlersnow.com

*Attorney for Plaintiffs The Glynn Environmental Coalition, Inc. and Center for a Sustainable Coast, Inc.*

47109363v1