**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION**

| | |
|---|---|
| THE GLYNN ENVIRONMENTAL COALITION, INC. AND CENTER FOR A SUSTAINABLE COAST, INC., | |
| Plaintiffs, | |
| v. | CIVIL ACTION FILE NO. 2:19-CV-50 |
| SEA ISLAND ACQUISITION, LLC, | |
| Defendant. | |

**BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

COMES NOW, Defendant **SEA ISLAND ACQUISITION, LLC** (hereinafter "Defendant" or "Sea Island"), and pursuant to Fed. R. Civ. P. 12(b)(1) *and* 12(b)(6) and S.D. Ga. L.R. 7.1 submits this its Brief in Support of its Motion to Dismiss Plaintiffs' Complaint, in support of which it relies upon all pleadings of record, and respectfully shows the following:

## I.   INTRODUCTION AND BACKGROUND

### A.   NATURE OF THE CASE AND PARTIES.

This is an attempted citizen suit brought under the provisions of the Clean Water Act ("CWA"), 33 U.S.C.A. §§ 1251 *et seq*. Plaintiffs, The Glynn Environmental Coalition, Inc., and The Center for a Sustainable Coast, Inc., are nonprofit organizations interested in protecting coastal wetlands. (Doc. 1, ¶¶ 27-28.) Defendant Sea Island Acquisition, LLC is a company which applied for and received a permit from the U.S. Army Corps of Engineers to fill jurisdictional waters on St. Simons Island, Georgia, which fill is the subject of this action.

1

B.  ALLEGATIONS IN THE COMPLAINT.

Taking the factual allegations in the Complaint as true,[1] the facts as pled are as follows:

In January 2013, Sea Island applied to the U.S. Army Corps of Engineers ("the Corps") under Nationwide Permit 39 ("NWP 39")[2] for authorization to fill less than one-half acre of wetland near its hotel on St. Simons Island, Georgia ("the site"). (Complaint, Doc. 1, ¶ 2.) The Corps authorized the project in February 2013, by issuing a nationwide permit under Section 404 of the CWA. (Id., ¶ 3.)

The site of the project on St. Simons Island comprises a combination of upland and wetland, with heavy tree growth and dense underbrush. (See Doc. 1-8, p. 8 (overhead view of site); Id., pp. 12-13 (photos of upland and wetland areas on-site).) At the site, Sea Island used fill dirt to enlarge the existing upland area, by .49 acres ("the fill"), all of which was then stabilized with grass. (See Doc. 1-5, p. 2; see also Doc. 1, ¶ 7.)

Plaintiffs are two nonprofit organizations whose stated interests, and those of their members living near to the site, are to protect and maintain the health of coastal Georgia and its adjoining wetlands. (Doc. 1, ¶ 30-34.) The essence of Plaintiffs' claims are *not* that Sea Island discharged pollutants or otherwise damaged the wetlands or environment at the site without a permit; but rather (1) that Sea Island's permit required Sea Island to construct a commercial structure on the fill (Doc. 1, ¶  4); (2) that, having failed to construct a building on the fill, Sea Island is in violation of the permits issued – and, by extension, section 301 of the CWA (Id., ¶¶ 8-9); and (3) that Sea Island asserted that it would build the commercial building on the fill in

---

[1] See Bell Atlantic Corporation, et al. v. Twombly, et al., 550 U.S. 544, 555 (2007).

[2] NWP's are categories of permits issued by the Corps for various activities that have been determined to have no more than minimal individual and cumulative adverse environmental effects. 33 C.F.R. § 323.2(h)(1). NWP 39 authorizes a fill of less than .5 acre of non-tidal wetlands in connection with commercial and institutional developments. See [https://usace.contentdm.oclc.org/utils/getfile/collection/p16021coll7/id/6767], at p. 6.

order to circumvent the arduous public comment and other requirements necessary for an *individual* permit, and obtain a *nationwide* permit instead (Id. at ¶¶ 16-23, 92, 133). However, despite repeated inquiries by or on behalf of the Plaintiffs, the Corps has determined to take no action against Sea Island for any alleged noncompliance with its permit for the fill. (Doc. 1, ¶ 26.)

Plaintiffs claim they have been harmed by being denied the opportunity to participate in the public comment process required for individual permits under the CWA, which public comment is *not* required for nationwide permits. (Doc. 1, ¶¶ 35, 38, 45, 49, 52.) They also claim that Sea Island's fill has destroyed a natural barrier that protects Dunbar Creek, a small body of water downstream from the site, which Plaintiffs' members use for recreational activities. (Id., ¶¶ 39-42.) Plaintiffs *do not*, however, plead that either the environmental or aesthetic integrity of Dunbar Creek, or Plaintiffs' members' ability to recreate there, have been impinged upon in any particular way; instead, they claim in conclusory fashion that Dunbar Creek has been "harmfully impacted" and that their members' "future enjoyment" of recreational activities are "potentially" in jeopardy. (Id., ¶ 44.) Plaintiffs do not claim that Sea Island filled more than was authorized by the permit or otherwise violated the terms of NWP 39, *except* for the fact that the company has not, to date, constructed a commercial or industrial building on the fill.

Plaintiffs attempt to state six (6) causes of action, in three (3) categories:  that Sea Island's fill constitutes an illegal "discharge" into United States waters in violation of the CWA (Counts 1, 2, 4, *and* 6, Doc. 1, ¶¶ 149-159, 164-167, 177-180); noncompliance with NWP 39 (Count 3, Id., ¶¶ 160-163); *and* that Sea Island's permit is void *ab initio* because of misrepresentations about its purposes in constructing the fill (Count 5, Id., ¶¶ 168-176).

## II.      STANDARD ON MOTION TO DISMISS

In considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a district court must construe the complaint in the light most favorable to the plaintiff and accept all well-pled facts alleged in the complaint as true. Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009). To survive a motion to dismiss, the complaint must include enough facts to raise a right to relief above the speculative level. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007). The complaint must allege enough facts to state a claim to relief that is plausible on its face, meaning that the factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Speaker v. U.S. Dept. of Health & Human Servs., 623 F.3d 1371, 1380 (11th Cir. 2010).

When faced with a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), it is the plaintiff's burden to prove facts which show jurisdiction exists over its claim. Lee v. United States, 361 F.Supp.3d 1306 (S.D. Ga. 2019).

## III.      ARGUMENT AND CITATION OF AUTHORITY

### A.   PLAINTIFFS HAVE NO RIGHT TO INSTITUTE A PRIVATE CITIZEN SUIT AGAINST SEA ISLAND BECAUSE THE PROVISION OF THE CWA UNDER WHICH SEA ISLAND RECEIVED ITS GENERAL NATIONWIDE PERMIT FROM THE ARMY CORPS OF ENGINEERS CONTAINS NO PROVISION FOR CITIZEN SUITS.

The CWA provides for citizen suits to be brought by people on their own behalf against persons or entities who are allegedly in violation of the CWA. See 33 U.S.C.A. § 1365(a). However, these citizen suits may *only* be instituted in certain circumstances and against certain entities and for specific types of violations. A citizen may sue "the Administrator [of EPA]," and then only where there is an alleged failure of the Administrator to perform a non-discretionary act or duty under the CWA. 33 U.S.C.A. § 1365(a)(2). A citizen suit may be brought against a person or entity who violates an "effluent standard or limitation" or who violates an order issued

4

by "[t]he Administrator or a State" with respect to an effluent standard or limitation. 33 U.S.C.A. § 1365(a)(1). Consequently, Plaintiffs may only bring a citizen suit against Sea Island for violation of an effluent standard or limitation, or for violating an order dealing with the same, pursuant to 33 U.S.C.A. § 1365(a)(1). Plaintiffs do not allege anywhere in their Complaint, as a basis for their suit, that Sea Island violated any order of the EPA Administrator or of the State. (See generally Doc. 1.)

33 U.S.C.A. § 1365(a), allows citizen suits for permits issued under certain sections of the CWA, to wit: §§ 1311(a), 1311, 1312, 1316, 1317, 1322(p), 1341, 1342, *and* 1345(d). Nowhere does this section authorize citizen suits related to a permit issued by the Corps under 33 U.S.C.A. § 1344, which is what the instant action concerns.  As Plaintiffs plead, the permit under which Sea Island proceeded, NWP 39, is a general permit for dredged or fill material under Section 404 of the Clean Water Act, issued pursuant to 33 U.S.C.A. § 1344. (See Doc. 1, ¶ 5). This provision-- 33 U.S.C.A. § 1344(e) --is an entirely *separate* provision of law from that governing citizen suits for violations of effluent standards and of orders from the EPA Administrator under 33 U.S.C.A. § 1365(a). These general permits are not issued by the EPA, but by the Secretary of the Army. Accord 33 U.S.C.A. § 1344(e)(1) (detailing issuance of general permits by "the Secretary") with 33 U.S.C.A. § 1344(d) (defining "Secretary" as "the Secretary of the Army, acting through the Chief of Engineers"). Unlike 33 U.S.C.A. § 1365(a), there is *no* provision for a citizen suit under the general permit provisions of 33 U.S.C.A. § 1344(e) for permits issued by the Corps in particular, nor in 33 U.S.C.A. § 1344 as a whole.

Had Congress intended to provide for citizen suits to be brought regarding general permits issued by the Secretary of the Army under 33 U.S.C.A. § 1344(e), it would have enacted legislation to say so, as it did for effluent limitations and orders of the EPA Administrator in 33

U.S.C.A. § 1365(a). But it specifically chose not to do so, and Plaintiffs cannot lift the citizen suit authorization from the latter and set it down in the former so as to create a vehicle for their own lawsuit. As the United States Supreme Court has "stated time and again[,](...) courts must presume that a legislature says in a statute what it means and means in a statute what it says there." United States Department of Defense v. FLRA, 510 U.S. 487, ---, 114 S.Ct. 1006, 1016 (1994) (quoting Connecticut National Bank v. Germain, 503 U.S. 249, 253-54 (1992). Having excluded activities under 33 U.S.C.A. § 1344, from citizen suits, it must be presumed that Congress did not intend to include suits for alleged violation of 33 U.S.C.A. § 1344 permits, and therefore it did not intend to authorize citizen suits for violations of those permits See, e.g. Reyes-Fuentes v. Shannon Produce Farm, Inc., 671 F.Supp.2d 1365, 1369 (S.D. Ga. 2009) (quoting Allstate Life Ins. Co. v. Miller, 424 F.3d 1113, 1116 n. 3 (11th Cir. 2005) ("[W]here the legislature has included certain exceptions to [a statute], the doctrine of *expressio unis est exclusio alterius* counsels against judicial recognition of additional exceptions."); United States v. Koonce, 991 F.2d 693, 698 (11th Cir. 1993) ("The canon of statutory construction that the inclusion of one implies the exclusion of others is well-established.").

This was addressed directly in the Fifth Circuit case of Atchafalaya Basinkeeper v. Chustz, 682 F.3d 356 (5th Cir. 2012). In that matter, the defendant secured a permit issued by the Corps under 33 U.S.C.A. § 1344, and the plaintiffs brought a citizen suit under 33 U.S.C.A. § 1365 alleging defendant violated the conditions of that permit. Atchafalaya, supra, 682 F.3d at 357. The District Court dismissed the case after determining that the CWA does not allow citizen suits to enforce the conditions of a § 1344 permit. The Court of Appeals affirmed, noting that, if Congress had intended to allow citizen suits for § 1344 permit violations, it would have done so explicitly, and it had not done so. Id. at 359. See also Verdier v. Bost, No. C18-5043

6

BHS, 2018 WL 4335626, at *3 (W.D. Wash. Sept. 11, 2018) ("Moreover, if Defendants had specifically obtained a § 404 permit issued by the Corps, the Court agrees that a violation of that permit would likely not be redressable by citizen plaintiffs.").

Since there is no provision for a citizen suit for a § 1344 violation in the CWA, and this matter involves an alleged § 1344 violation, Plaintiffs simply cannot bring a citizen suit, and their claims must fail.

> **B. PLAINTIFFS HAVE NO RIGHT TO INSTITUTE A PRIVATE CITIZEN SUIT AGAINST SEA ISLAND UNDER SECTION 401 OF THE CWA BECAUSE SEA ISLAND IS OPERATING PURSUANT TO A PERMIT.**

To establish a CWA violation under section 401, Plaintiffs must prove that (1) there has been a discharge (2) of a pollutant (3) into the waters of the United States (4) from a point source (5) without a permit. See Parker v. Scrap Metal Processors, Inc., 386 F.3d 993, 1008 (11th Cir. 2004). The Complaint fails to sufficiently plead all five elements of a claim; in fact, Plaintiffs have specifically alleged that the discharge was done pursuant to a permit.

Simply put, Sea Island did in fact secure a permit for the fill at the site at issue from the Corps, and Plaintiffs attached that permit as part of their Complaint. (See Doc. 1-1, Plaintiffs' Exhibit A.) Sea Island timely placed the fill and mitigated its impact. (See Doc. 1-1, Plaintiffs' Exhibit B.) Further, Plaintiffs do not allege any issues with *how* Sea Island placed the fill. Plaintiffs therefore cannot establish that Sea Island did *not* have a permit, and therefore cannot state a claim for relief under the CWA.

> **C. EVEN IF PLAINTIFFS HAD OTHERWISE MET THEIR PLEADING REQUIREMENTS, SEA ISLAND IS NOT IN VIOLATION OF ITS PERMIT.**

At the heart of the Complaint is the assertion that Sea Island is in violation of its permit under NWP 39. (See Doc. 1, ¶¶ 160-163.) But the terms and conditions of the permit, and the

findings of the Corps, as they are attached to the Complaint, show on their faces that there is no such violation.

As a condition of the permit, Sea Island was required to meet certain conditions, such as purchasing mitigation credits, which it did. (See generally Doc. 1-8.) If there *had* been any violation of a condition – which there wasn't – it was within the Army Corps of Engineers' authority to determine whether Sea Island's fill violated the permit. See Avoyelles Sportsmen's League, Inc. v. Marsh, 715 F.2d 897, 916 (5th Cir. 1983) (Congress validly delegated authority to Corps by giving it jurisdiction under the CWA to "all waters of the United States" and granting it discretion in considering multiple factors in reviewing an application for a dredge-and-fill permit). The Corps made its determination when, in 2016, it determined that Sea Island's intention to build a future structure on the fill satisfied the conditions of the permit, and therefore Sea Island was *not* in violation. (See Doc. 1-5, p. 1, Exhibit E.)  Sea Island filled the area in the applicable time limit, and contrary to Plaintiff's contention, there is no time limit on completing the structure. Id.   ("The applicant has not built any structure to date, has filled within the allowable footprint and has stated that they plan to build the authorized structures in the future. Based on all information provided and with the advice of the OC, the Corps have concluded that SAS-2013-00045 is presently in compliance with the previously authorized NWP 39 verification. All future work associated with the project site must be constructed in accordance with the information submitted…").  Activities in wetlands pursuant to a nationwide permit must be carried out prior to expiration of the nationwide permit. There is no argument by Plaintiffs that the work in wetlands was not completed within the time limits in the NWP 39. However, there is no requirement that the planned commercial or industrial building must be constructed within any given time period, and Plaintiffs have not identified any such deadline.

The Corps also verified that any erroneous information in the permitting process had no bearing on the Corps' approval of the permit. (Doc. 1-4, p. 1, Exhibit D.)

Consequently, there is no set of facts on the basis of the allegations as pled by which Plaintiffs could show a violation of an applicable permit under the CWA, and Plaintiffs' claims should be dismissed.

### D. Plaintiffs Lack Standing To Sue Because They Fail to Plead an "Injury-In-Fact."

To demonstrate standing, Plaintiffs must show (1) an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; *and* (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. Friends of the Earth, Inc. v. Laidlaw Environmental Servs., 528 U.S. 167, 180–81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000); Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs, 781 F.3d 1271, 1278–80 (11th Cir. 2015). As entities, as opposed to being themselves private citizens, Plaintiffs have standing to sue on behalf of their members *only if* their members would have standing to sue in their own right, the interests at stake are germane to Plaintiffs' purposes, and neither the claim asserted nor the relief requested requires the participation of Plaintiffs' members in the action. Friends of the Earth, 528 U.S. at 181, 120 S.Ct. 693; Black Warrior Riverkeeper, 781 F.3d at 1278–80. Plaintiffs' individual members, for the following reasons, have no standing to sue; and so, neither do the corporate Plaintiffs themselves.

To establish standing to sue under Article III, a plaintiff must plead "a concrete injury even in the context of a statutory violation." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1549, 194 L. Ed. 2d 635 (2016), as revised (May 24, 2016). The mere fact that a statute creates a cause of action "does not mean that a plaintiff automatically satisfies the injury-in-fact requirement

whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." Id. "[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation … is insufficient to create Article III standing." Summers v. Earth Island Inst., 555 U.S. 488, 496, 129 S. Ct. 1142, 1151, 173 L. Ed. 2d 1 (2009). With regard to citizen suits under 33 U.S.C.A. § 1365(a), if a plaintiff cannot establish Article III standing to sue, then the court lacks jurisdiction over the matter. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 115, 118 S. Ct. 1003, 1022, 140 L. Ed. 2d 210 (1998); Upper Chattahoochee Riverkeeper Fund, Inc. v. City of Atlanta, 953 F.Supp. 1541, 1552 (N.D. Ga. 1996) (standing to sue under Section 505 of the CWA is an issue of subject matter jurisdiction).

In the context of environmental legislation, a generalized or abstract "ecosystem nexus," under which a person who uses any part of a contiguous ecosystem may be considered adversely affected by an activity, does not provide a sufficient basis for standing to challenge the activity. Lujan v. Defs. of Wildlife, 504 U.S. 555, 565, 112 S. Ct. 2130, 2139, 119 L. Ed. 2d 351 (1992). Rather, a plaintiff claiming injury from environmental damage must use the area *actually affected* by the challenged activity, not an area roughly "in the vicinity" of it. Lujan v. Nat'l Wildlife Federation, 497 U.S. 871, 887-889 (1990).

Those matters where this Court and its sister courts within the Eleventh Circuit  have found an injury-in-fact sufficient to confer standing to bring a citizen suit under 33 U.S.C.A. § 1365(a) all have a common thread: that the allegations of harm contained something more than the mere *existence* of an alleged pollutant or danger to the environment, and factual assertions of specific harms more imminent than the possibility of future damage. See, e.g., Jones Creek Inv'rs, LLC v. Columbia Cty., Ga., 98 F.Supp.3d 1279, 1297 (S.D. Ga. 2015) (holding that conclusory allegations and general averments that organization's members use unspecified

portions of a large tract of territory are insufficient to overcome a standing challenge; allegations will be sufficient to satisfy injury-in-fact where affidavits and evidence assert that defendant's conduct and members' concerns about that conduct "directly affects" the members' recreational, aesthetic, and economic interests); City of Mountain Park, Georgia v. Lakeside at Ansley, LLC, No. CV 1:05-2775-CAP, 2010 WL 11500087, at *3 (N.D. Ga. Feb. 16, 2010) (plaintiff's allegation that development activities caused silt and sediment-laden water to be discharged into lakes and surrounding wetlands constituted sufficient averment of "ongoing violation" to plead that discharge was continuous or intermittent under CWA); New Manchester Resort & Golf, LLC v. Douglasville Development, LLC, 734 F.Supp.2d 1326 (N.D. Ga. 2010) (corporate owner of wetlands suffered injury-in-fact, for standing purposes, in its suit alleging that upstream landowner's sediment-laden storm water discharges in stream that passed through wetlands violated Clean Water Act (CWA); wetlands owner alleged it received sediment deposits of approximately 2,834.5 cubic yards from stream, which undermined health of wetlands and would require clean up cost of $980,000, and even though plaintiff was a corporation, it had property and economic interests that were affected by the deposits); Flint Riverkeeper, Inc. v. Southern Mills, Inc., 276 F.Supp.3d 1359 (M.D. Ga. 2017), certification denied 261 F.Supp.3d 1345 (allegations in complaint brought by environmental group and property owners against protective fabric manufacturer for violations of CWA were sufficient to state a continuous or intermittent violation of the Act, as required for court's jurisdiction over the citizen suit; complaint alleged that manufacturer's land application system used to treat industrial wastewater generated at its plant was overburdened and oversaturated with polluted wastewater, causing loss of soil structure and increased runoff, and that such deficiencies, which caused high levels of sodium,

calcium, potassium, nitrates, and other chemicals in navigable waters were continuous or intermittent, having the potential to reoccur).

In stark contrast to this body of law, Plaintiffs' allegations concerning their supposed injury are nothing more than speculative and conclusory; and in the end, they rest not on any actual environmental or aesthetic degradation, but only in a supposed *procedural* harm.

Plaintiffs allege that the existence of the less than .5 acre fill has destroyed a "natural barrier" *upstream* from the area where their members participate in various recreational activities, but at no point do they say *how* these activities have actually been impacted, claiming instead that the area has been "harmfully impacted" and that their members' "future enjoyment" of recreational activities are "potentially" in jeopardy. (Doc. 1, ¶ 44.) This is patently insufficient to allege an injury-in-fact for standing purposes.  To survive a motion to dismiss, the complaint must include enough facts to raise a right to relief above the speculative level. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007).

What is *especially* peculiar about this claim, apart from its vagueness, is that Plaintiffs necessarily imply that, had Sea Island constructed a commercial structure as Plaintiffs believe it should have done, there would be no harm – *despite the fact* that the structure necessarily would have rested upon the fill in question, and thus the fill would *continue* to be in existence. (Id., ¶ 144). The root of Plaintiffs' claims stem from the allegation that Sea Island is not in compliance with its permit because Sea Island did not build a structure (Id., ¶ 147); but the *absence* of a structure does not *cause* the continued existence of the *fill* on which it would rest, and the *fill* is the alleged source of the supposed *environmental* harm. So, by the very nature of

the Complaint, Defendants do *not* plead the existence of any particular injury-in-fact simply because the fill exists without a structure on it.[3] <u>See, Bell Atl. Corp.</u>, supra.

Finally, Plaintiffs claim that they have been harmed by being denied the opportunity to participate in the public comment process required for individual permits under the CWA, which public comment is *not* required for *general* permits. (Doc. 1, ¶¶ 35, 38, 45, 49, 52.) But this is merely a *procedural* harm, not a concrete or particularized injury sufficient to confer Article III standing. <u>See</u> <u>Summers</u>, 555 U.S. at 488 ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation … is insufficient to create Article III standing."). Having failed, then, to sufficiently allege an injury-in-fact, Plaintiffs lack standing to bring suit. Consequently, the Court lacks subject matter jurisdiction over Plaintiffs' claims, and all claims asserted in this action should be dismissed.

### E. PLAINTIFFS' COMPLAINT CONSTITUTES AN IMPERMISSIBLE "SHOTGUN" PLEADING.

The typical "shotgun" complaint "contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts … contain irrelevant factual allegations and legal conclusions." <u>Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.</u>, 305 F.3d 1293, 1295 (11th Cir. 2002). They are "calculated to confuse the enemy, and the court, so that theories for relief not provided by law and which can prejudice an opponent's case, especially before the jury, can be masked...." <u>Weiland v. Palm Beach Cty. Sheriff's Office</u>, 792 F.3d 1313, 1320 (11th Cir. 2015), quoting <u>T.F.S. Inc. v. Shelby Mut. Ins. Co.</u>, 760 F.2d 1520, 1544, n. 14 (11th Cir. 1985). Shotgun pleadings violate the rule

---

[3] In the same vein, to the extent that the Complaint attempts to allege a harm on the basis of unnatural discharge or runoff, it is bizarre that Plaintiffs also claim to have been injured by the absence of a structure. Had a structure been built on the site, this would create impervious surfaces that impact the natural infiltration of stormwater runoff. <u>See, e.g.</u>, <u>McLeod v. Columbia County, GA</u>, 254 F.Supp.2d 1340.

setting forth the notice pleading standard by failing, to one degree or another, to give the defendants adequate notice of the claims against them and the grounds on which each claim rests, and for that reason, are properly subject to dismissal. See Vibe Micro, Inc. v. Shabanets, 878 F.3d 1291, 1295 (11th Cir. 2018).

Plaintiffs' Complaint is a lengthy amalgamation of competing and intertwined theories of liability. Not only does each count of the Complaint incorporate by reference all preceding allegations, but no fewer than four (4) separate counts assert the exact same theory of liability, worded slightly differently. (See Counts 1,2, 4, and 6, Doc. 1, ¶¶ 149-159, 164-167, 177-180, asserting in various forms that Sea Island's static fill constitutes an illegal "discharge" into United States waters in violation of the CWA.) Further, what appears to be the real issue – that Sea Island allegedly misrepresented its justification when applying for its fill permit and ultimately failed to meet the conditions thereof by failing to complete a structure (Id., Count 3, ¶¶ 160-163, 168-176) – is nestled among the remaining, duplicative counts concerning "discharge," despite bearing no relation whatsoever to the "discharge" issue. These claims are, indeed, entirely spurious, because there is no cause of action under the CWA for a private citizen to bring suit to remedy any alleged misrepresentation by an entity in the course of that entity applying for a nationwide permit from the Army Corps of Engineers. (See generally Part III, A and B, above.) Clearly, these allegations are designed to "muddy the waters" and, ultimately, to prejudice a jury against Sea Island. The Complaint in this matter is therefore a classic "shotgun pleading," and dismissal of each and every claim asserted therein is warranted.

## II.     CONCLUSION

This purported "citizen suit" should be dismissed pursuant to Rule 12(b)(1) and 12(b)(6) because (1) there is no independent authorization of citizen suits for alleged violations of general nationwide permits;  (2) Sea Island was operating in accordance with NWP 39; and (3) at all times Sea Island has been in compliance with its permit.  Further, Plaintiffs lack standing to sue, and consequently the Court lacks subject matter jurisdiction over this action, because Plaintiffs fail to allege a concrete "injury-in-fact." Plaintiffs fail to state a claim for relief under the CWA because their anticipated harm to "future enjoyment" of an offsite recreational area does not rise above the speculative level; and the repetitive nature of their consistently reincorporated claims, interspersed with an irrelevant theory of recovery that is not in fact actionable at law, renders their Complaint an impermissible "shotgun pleading."   Finally, Plaintiff's allegations are conclusory throughout, and do not include enough facts to raise a right of relief above the speculation level as set forth in Bell Atl. Corp. v. Twombly.  For all these reasons, Defendant Sea Island respectfully requests that its Motion to Dismiss be GRANTED, that each and every claim asserted against it in Plaintiffs' Complaint be dismissed, that Plaintiffs take nothing, and that Sea Island be awarded its costs incurred in this action.

Respectfully submitted this 9th day of May, 2019.


HALL BOOTH SMITH, P.C.


/s/ James B. Durham
3528 Darien Highway, Suite 300          JAMES B. DURHAM
Brunswick, Georgia 31525                Georgia Bar No. 235526
Phone: (912) 554-0093                   *Attorney for Defendant*
Fax:    (912) 554-1973                  *Sea Island Acquisition, LLC*
Email: jdurham@hallboothsmith.com

**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION**

THE GLYNN ENVIRONMENTAL
COALITION, INC. AND CENTER FOR A
SUSTAINABLE COAST, INC.,

     Plaintiffs,

v.

SEA ISLAND ACQUISITION, LLC,

     Defendant.

CIVIL ACTION FILE
NO. 2:19-CV-50

---

**CERTIFICATE OF SERVICE**

---

     I hereby certify that I have this day served a copy of the **Defendant's Motion to Dismiss** and **Brief in Support of Defendant's Motion to Dismiss** upon all parties to this matter by depositing a true copy of same in the U.S. Mail, proper postage prepaid, addressed to counsel of record as follows and/or filing said documents with the CM/ECF system which will automatically send electronic notification to the following:

E. Righton J. Lewis
BUTLER SNOW, LLP
1170 Peachtree St. NE, Suite 1900
Atlanta, GA 30309

Respectfully submitted this 9th day of May, 2019.

HALL BOOTH SMITH, P.C.

*/s/ James B. Durham*
JAMES B. DURHAM
Georgia Bar No. 235526
*Attorney for Defendant*

3528 Darien Highway, Suite 300
Brunswick, Georgia 31525

16

Phone: (912) 554-0093                    *Sea Island Acquisition, LLC*
Fax:    (912) 554-1973
Email: *jdurham@hallboothsmith.com*