**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION**

| | | |
|---|---|---|
| THE GLYNN ENVIRONMENTAL COALITION, INC. AND  CENTER FOR A SUSTAINABLE COAST, INC., | ) ) ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **Civil Action No. 2:19-cv-00050-LGW-BWC** |
| **v.** | ) | |
| | ) | |
| SEA ISLAND ACQUISITION, LLC, | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>**RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**</u>

Defendant applied for authorization from the U.S. Army Corps of Engineers under Nationwide Permit Number 39 ("*NWP 39*") to fill 0.49 acres of wetlands on St. Simons Island (the "*Subject Wetland*"). (Doc. 1, Compl. ¶ 2). Filling of wetlands under NWP 39 is only permitted "for construction or expansion of commercial and industrial building foundations . . ." Defendant represented in its application to the Corps that it intended to construct a commercial building on the Subject Wetland while simultaneously representing to Glynn County that it intended to fill the Subject Wetland by permanently sodding the Subject Wetland. (Doc. 1, Compl. ¶¶ 109-135). Based on its representation to the Corps, Defendant obtained authorization to act under NWP 39 and also obtained a corresponding certification under Section 401 of the Clean Water Act from the Georgia Environmental Protection Division. *Id*. Defendant never constructed a commercial building and has permanently sodded the Subject Wetland. *Id*. The time to act under the NWP 39 has expired without compliance. (Doc. 1, Compl. ¶¶ 140-147; 160-163).

Plaintiffs' six claims derive from that single set of operative facts. Plaintiffs plead (1) a Section 404 violation of the Clean Water Act because Defendant is not complying with NWP 39;

(2) a Section 401 violation of the Clean Water Act because Defendant is not complying with the Section 401 certification; (3) a declaration that Defendant's authorization to act under NWP 39 expired without compliance; (4) a Section 301(a) violation of the Clean Water Act because the continued fill of the Subject Wetland after expiration of the authorization to act is not permitted; (5) a declaration that Defendant's authorization to act under NWP 39 was obtained by intentional and malicious misrepresentations and, therefore, is void *ab initio*; and (6) a Section 301(a) violation because the fill of the Subject Wetland was not and is not authorized due to the misrepresentation.

Defendant generally moves to dismiss the Complaint because it asserts it complied with terms and conditions of NWP 39. (Doc. 6, Dft's Mot. at 7-9). First, its allegation of compliance with NWP 39 is a factual question that is not appropriate at this Rule 12 stage. Nonetheless, its factual allegation of compliance is well-documented and well-plead to be false.[1] NWP 39 required construction of a commercial building structure that was neither built nor intended to be built. *See* discussion at **Section I** below.

Defendant moves to dismiss the First Cause of Action (the Clean Water ActSection 404 violation) by relying on a misreading of  the Clean Water Act that was erroneously adopted by Fifth Circuit Court of Appeals in *Atchafalaya Basinkeeper v. Chustz*, 682 F.3d 356 (5th Cir. 2012). (Doc. 6, Dft's Mot.  at 4-7.) The express language of the Clean Water Act, especially Section 404(p), and this Court's prior opinion[2] negate this argument. *See* discussion at **Section V** below.

---

[1] Plaintiffs have sufficiently made factual allegations, including attaching eleven documents that contain 140 pages of evidentiary pleading.
[2] *Jones Creek Inv'rs, LLC v. Columbia Cty., Ga.*, No. CV 111-174, 2013 WL 1338238, at *12 (S.D. Ga. Mar. 28, 2013).

Defendant moves to dismiss the Second Cause of Action (the Clean Water Act Section 401 violation) by asserting that a permit makes the Section 401 certification irrelevant. (Doc. 6, Dft's Mot. at 7. This argument relies only on *Parker v. Scrap Metal Processors, Inc.*, 386 F.3d 993, 1008 (11th Cir. 2004), which concerned a Section 402 violation – not a Section 401 violation. Claims under Section 401 are independent from claims under Section 404. *See* discussion at **Sections II and III** below.

Defendant does not specifically move to dismiss Plaintiffs' Third, Fourth, Fifth, and Sixth Causes of Action under FED. R. CIV. P. 12(b)(6).

Defendant asserts Plaintiffs lack standing because they have pled a speculative injury in fact, despite Plaintiffs clearly alleging actual injury to the Subject Wetland due to Defendant's unlawful fill. (Doc. 6, Dft's Mot. at 9-13).

Finally, Defendant moves to dismiss the Complaint under a "shotgun" theory. (Doc. 6, Dft's Mot. at 13-14). All six claims are based on a single set of operative facts that are pled as six separate claims.

None of Defendant's theories are meritorious. Plaintiffs have adequately pled its six causes of action in accordance with the federal notice pleading standard. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [a claim]. And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very

remote and unlikely.'"). Plaintiffs do not have to prove their case – they merely have to plead a claim. This is especially true where the Supreme Court has already decided that a mere allegation is sufficient to state a Clean Water Act claim. "Congress's use of the phrase 'alleged to be in violation' reflects a conscious sensitivity to the practical difficulties of detecting and proving chronic episodic violations of environmental standards. . . . Congress intended a good-faith allegation to suffice for jurisdictional purposes[.]" *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 65 (1987).

## I.   Defendant must comply with a valid permit – not merely receive a permit.

A person commits an unlawful act by discharging fill material into waters of the United States except where it complies with a lawfully obtained permit that allows the discharge. Section 301(a) of the Clean Water Act, the operative law at issue, states in full:

> Except as in compliance with this section and sections 1312, 1316, 1317, 1328, 1342, and 1344 of this title, the discharge of any pollutant by any person shall be unlawful.

33 U.S.C. § 1311(a). Put simply, any discharge of a pollutant into waters of the United States without complying with the permitting sections of the Clean Water Act (Sections 402 and 404) is unlawful.

The Clean Water Act clearly defines the terms at issue. "Discharge of a pollutant" means "any addition of any pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12). While "pollutant" sounds noxious as a lay term, the technical definition of "pollutant" is broadly defined to include noxious materials as well as ordinary fill materials like dredged spoil, biological materials, rock, sand, and agricultural waste. 33 U.S.C. §1362(6).  "Fill material is a pollutant under the CWA."*Ogeechee-Canoochee Riverkeeper, Inc. v. T.C. Logging, Inc.*, No. 608CV064, 2009 WL 2390851, at *9 (S.D. Ga. Aug. 4, 2009). "Fill material" means "material placed in waters of the United States that has the effect of replacing any portion of a water of the

United States with dry land, or changing the bottom elevation of any portion of a water of the United States." *Draper v. H. Roberts Family, LLC*, No. 1:06-CV-3057-CC, 2009 WL 10668404, at *24 (N.D. Ga. Mar. 30, 2009) (citing 33 C.F.R. § 323.2(e)).

Defendant contends that Plaintiffs must allege under notice pleading that "(1) there has been a discharge (2) of a pollutant (3) into the waters of the United States (4) from a point source (5) without a permit." (Doc. 6, Dft's Mot. at 7) (citing *Parker v. Scrap Metal Processors, Inc.*, 386 F.3d 993, 1008 (11th Cir. 2004)))[3]. Defendant admits that Plaintiffs have properly pled the first four elements but argue that its discharge of a pollutant into waters of the United States from a point source was done with a permit. In essence, Defendant argues that a permit gives Defendant a license to do whatever it desires in waters of the United States regardless of the limitations and conditions placed on the permit.

Here, there is no dispute that the Corps authorized Defendant to act under NWP 39 and that the Georgia EPD issued Defendant a Clean Water Act Section 401 Water Quality Certification. But, the language of Section 301(a) is clear, "***compliance with*** . . . [Section 404] of this title" is required to be excepted from Section 301(a) – merely receiving a permit is not an exception to Section 301(a). 33 U.S.C. § 1311(a) (emphasis added).

Defendant errs by reading "compliance with" out of Section 301(a). A permit only cures a discharge of a pollutant into waters of the United States where the permittee complies with the permit conditions. "An activity is authorized by an NWP only when the permittee satisfies all of the NWP's terms and conditions. The United States Army Corps of Engineers' General Conditions 'must be followed in order for any authorization by an NWP to be valid[.]'" *Draper*

___
[3] Defendant's citation to *Parker* is inapposite because *Parker* concerned a Section 402 violation of an NPDES permit, which is not alleged in Plaintiffs' Complaint.

5

*v. H. Roberts Family, LLC*, No. 1:06-CV-3057-CC, 2009 WL 10668404, at *24 (N.D. Ga. Mar. 30, 2009) (citing 3 U.S.C. §§ 330.1(c); 67 Fed. Reg. 2020, 2089 (Jan. 15, 2002)).

Indeed, the language of Section 404(p) emphasizes that ***compliance with*** a permit is mandatory under Section 301(a):

> ***Compliance with*** a permit issued pursuant to this section, including any activity carried out pursuant to a general permit issued under this section, shall be deemed compliance, for purposes of sections 1319 and 1365 of this title, with section 1311, 1317, and 1343 of this title.

33 U.S.C. § 1344(p) (emphasis added).[4] The issuance of a permit cannot save a polluter unless the polluter complies with the permit. Defendant even admits this: "As a condition of the permit, Sea Island was required to meet certain conditions[.]" (Doc. 6, Dft's Mot. at 8). Compliance with the permit is mandatory. Plaintiffs have properly pled noncompliance.

## II.     Compliance with a permit and the intent to comply with a permit are questions of fact.

Defendant argues that "even if Plaintiffs had otherwise met their pleading requirements, Sea Island is not in violation of its permit." (Doc. 6, Dft's Mot.  at 7). Defendant prematurely argues the factual allegation of compliance at this Rule 12 stage. Where Plaintiffs "met their pleadings requirements," as Defendant states, the Complaint cannot be dismissed under Rule 12(b)(6). Plaintiffs have sufficiently pled noncompliance.

First, Plaintiffs allege in the First Cause of Action that Defendant failed to comply with NWP 39 by landscaping the Subject Wetland instead of constructing a commercial structure. Second, Plaintiffs allege in the Second Cause of Action that Defendant failed to comply with the Section 401 certification for the same reasons that it failed to comply with NWP 39. Indeed, a violation of NWP 39 will also trigger a violation of the Section 401 certification. Third, Plaintiffs

---

[4] Section 1365 is the Citizens Suit Provision at Section 505 of the Clean Water Act, and Section 1311 is Section 301(a) of the Clean Water Act.

allege in the Third Cause of Action that the authorization to act under NWP 39 and the Section 401 certification expired without compliance. All three of these causes of action allege that Defendant did not construct a commercial structure in the time period allowed by NWP 39. Plaintiffs have met their pleading burden for noncompliance. Moreover, Plaintiffs have sufficiently pleaded factual allegations of misrepresentation that would nullify the authorization to act under NWP 39 and moot the question of compliance with NWP 39. If the authorization to act under NWP 39 was void *ab initio*, the fill of the Subject Wetland is clearly unauthorized and unlawful.

Factual findings must be made, including the terms and conditions of NWP 39, whether Defendant complied with those terms and conditions, whether the authorization to act under NWP 39 and the Section 401 certification has expired, whether Defendant ever intended to comply with NWP 39, and whether the authorization to act was valid in the first instance. These factual findings will substantiate that the Defendant's fill of the Subject Wetland was unlawful. Plaintiffs have satisfied the notice pleading standard and have gone beyond mere allegation to provide evidentiary pleading of noncompliance and misrepresentation.

**III.    Violations of Sections 301(a) and 401 of the Clean Water Act are expressly allowed under the Citizens Suit Provision, as Defendant admits.**

Any citizen may commence a civil action on his own behalf against any person who is alleged to be in violation of an effluent standard or limitation under the Clean Water Act. 33 U.S.C. § 1365 (the "*Citizen Suit Provision*"). "Effluent standard or limitation" is defined to mean, among other things, "an unlawful act under [Section 301(a)]" and "a certification under [Section 401]. 33 U.S.C. § 1365(f). Plaintiffs' First, Second, Fourth, and Sixth Causes of Action allege an unlawful act under Section 301(a). (Doc. 1, Compl. at ¶¶ 152, 156, 165 and 178).

Plaintiffs' Second Cause of Action alleges noncompliance with Section 401. *Id.* at ¶¶ 154-159. Each of these claims may be brought under the Citizen Suit Provision.

There is no dispute that "any citizen" may commence a civil action against any person, who is alleged to be in violation of Sections 301(a) and 401. Plaintiffs have properly pled claims under Sections 301(a) and 401. Defendant does not dispute this, as the Defendant's Brief admits that these are proper claims for a citizen's suit. *See* (Doc. 6, Dft's Mot. at 5) ("33 U.S.C.A. § 1365(a), allows citizen suits for permits issued under certain sections of the CWA, to wit: §§ 1311(a) [and] 1341 . . .")[5].

## IV.     Defendant does not specifically seek to dismiss the Plaintiffs' declaratory claims.

Plaintiffs seek two declarations: (1) Defendant's authorization to act under NWP expired and (2) Defendant's authorization to act under NWP was obtained by misrepresentation and, therefore, is void *ab initio*. *See* Plaintiff's Third and Fifth Causes of Action (Doc. 1, Compl. ¶¶ 160-163, 168-176). Defendant has not asserted any basis under FED. R. CIV. 12(b)(6) for dismissal of these claims.

## V.      Violations of Section 404 of the Clean Water Act are also allowed under the Citizens Suit Provision.

Defendant is correct that the Citizens Suit Provision, Section 505(f), does not expressly list Section 404 as an effluent standard or limitation and that the Fifth Circuit Court of Appeals in *Atchafalaya Basinkeeper v. Chustz*, 682 F.3d 356 (5th Cir. 2012), held that a citizen suit cannot be brought to challenge a Section 404 permit violation. But, Defendant and the *Atchafalaya* court misinterpret the Citizens Suit Provision by failing to consider the entire statutory scheme enacted by Congress. The Clean Water Act expressly permits citizens suit to

---

[5] Section 1311(a) is the codified Section 301(a) of the Clean Water Act and Section 1341 is the codified Section 401 of the Clean Water Act.

enforce noncompliance with Section 404 permits. *See* 33 U.S.C. §§ 1344(p), 1311(a), and 1365(a) and (f).

Moreover, this Court has already found that it has subject matter jurisdiction of a Section 404 claim when denying a motion to dismiss. *Jones Creek Inv'rs, LLC v. Columbia Cty., Ga.*, No. CV 111-174, 2013 WL 1338238, at *12 (S.D. Ga. Mar. 28, 2013). "[T]he alleged continued presence of unlawful fill materials within Willow Lake constitutes an ongoing violation of § 404 of the CWA." *Id*.

As discussed above, the discharge of a pollutant into waters of the United States is unlawful unless the discharging person acts in "compliance with" a permit. 33 U.S.C. § 1311(a). Failure to comply with a Section 404 permit causes the discharge to be unlawful under Section 301(a) of the Clean Water Act. And, Section 301(a) is expressly included as an effluent standard or limitation that is enforceable under the Citizen Suit Provision. 33 U.S.C. § 1365(f).

Section 404(p) clearly contemplates citizens suits enforcing noncompliance with Section 404 permits. 33 U.S.C. § 1344(p). It states that "compliance with a permit issued pursuant to this section . . . shall be deemed compliance with [Sections 505 and 301]". *Id*. Again, Section 505 is the Citizens Suit Provision, and Section 301(a) is expressly enumerated as an effluent standard or limitation in Section 505(f). Congress did not need to expressly list Section 404 in the definition of effluent standard or limitation at Section 505(f) because noncompliance with a Section 404 permit is a violation of Section 301(a) which is expressly incorporated into Section 505(f).

Defendant relies on *Atchafalaya*, which would only apply to the Plaintiffs' First Cause of Action.[6] But, *Atchafalaya* was wrongly decided and is not binding on this Court. The *Atchafalaya* Court examined the Clean Water Act and found that Congress' failure to include Section 404 in the definition of effluent standard and limitation at Section 505(f) prevented a

---

[6] *Atchafalaya* is inapposite to the Plaintiffs' Second, Third, Fourth, Fifth, and Sixth Causes of Action.

citizens suit enforcing noncompliance with a Section 404 permit. While the court acknowledged that Section 301(a) is expressly included in the definition of effluent standard and limitation at Section 505(f), it refused to proceed down what it called a "tri-level maze of statutory cross-references" to get to the right result. *Id.* at 359.

But, the *Atchafalaya* court's analysis fails because it did not consider the entire statutory scheme of the Clean Water Act. Nowhere in the Court's analysis did it consider Section 404(p). This was error. Section 404(p) expressly cross-references Section 404 to both Sections 301(a) and 505. 33 U.S.C. § 1344(p). If Congress had intended to exclude noncompliance with Section 404 permits from citizen suits, the cross-references in Section 404(p) should have been excluded from the statutory scheme of the Clean Water Act because there is no reason to cross-reference Section 505 in Section 404(p) if citizens suits do not apply to Section 404. Indeed, the Supreme Court recognizes that Section 404(p) will "protect" persons in compliance with a Section 404 permit from "enforcement actions by the EPA or private citizens." *Coeur Alaska, Inc. v. Se. Alaska Conservation Council*, 557 U.S. 261, 280 (2009).  There is no need to protect a person from suit if that person is not in danger of suit. Section 404(p) may only be read to require the exact "tri-level maze of statutory cross-references" that the *Atchafalaya* court ignored. The Citizen Suit Provision applies to Section 404 violations.

Not only is this reading required, Congress actually had a legislative reason for using the cross-references in the manner enacted. At the time the Clean Water Act was being debated before Congress, the Senate bill combined what is now Sections 404 and 402 permits into a singular permitting scheme under Section 402. 1972 U.S.C.C.A.N. 3776, 3818. The Senate bill also contained the effluent standard or limitation definition in Section 505(f), which expressly identifies Section 402. *Id.* at 3823. But, the House amendment bill contained Section 404 as a

separate provision from Section 402 and did not contain the effluent standard definition at Section 505(f). *Id*. The House amendment bill contained Section 404(p), which referenced Section 301(a) and 505 and made citizens suits applicable to Section 404. *Id*.

In reconciling the Senate bill and the House amendment bill, the Conference Substitute adopted the Senate's version of Section 505(f) and the House's version of Section 404. *Id*. Thus, Congress actually enacted the Clean Water Act with the tri-level maze of statutory cross-references that the *Atchafalaya* court ignored. It is the result of bicameral legislative sausage making. Indeed, the Senate Report of the Conference Substitute explains: "Failure to obtain a permit under [Section 404], or failure to comply with the requirements of such a permit, would be a violation of section 301(a)[.]" *Id*. at 3819.

Like this Court in *Jones Creek Inv'rs*, other courts in the Eleventh Circuit and elsewhere recognize jurisdiction over citizen suits enforcing noncompliance with a Section 404 permit and related violations. *See*, *e.g.*, *Stillwater of Crown Point Homeowner's Ass'n, Inc. v. Kovich*, 820 F. Supp. 2d 859, 895 (N.D. Ind. 2011) (relying on Section 404(p) and holding "[a] term or condition in a permit issued under CWA Section 404 or a water quality certification issued under CWA Section 401 is an "effluent standard or limitation" that may be enforced by way of a citizen suit under § 1365."); *Draper v. H. Roberts Family, LLC*, No. 1:06-CV-3057-CC, 2009 WL 10668404, at *24 (N.D. Ga. Mar. 30, 2009) (citing Section 301(a) in conjunction with Section 404 when allowing a citizen suit to enforce Section 404 violations); *N. Carolina Shellfish Growers Ass'n v. Holly Ridge Assocs., L.L.C.*, 200 F. Supp. 2d 551, 558 (E.D.N.C. 2001) (same); *Greenfield Mills, Inc. v. O'Bannon*, 189 F. Supp. 2d 893, 902 (N.D. Ind. 2002), *aff'd in part, rev'd in part and remanded sub nom. Greenfield Mills, Inc. v. Macklin*, 361 F.3d 934 (7th Cir. 2004) (same); *Ogeechee-Canoochee Riverkeeper, Inc. v. T.C. Logging, Inc.*,

11

No. 608CV064, 2009 WL 2390851, at *11 (S.D. Ga. Aug. 4, 2009) (requiring defendant to bear the burden of proving entitlement to the Section 404 exception and finding that a Section 404 violation occurred because defendant did not meet the exception); *Black Warrior River Keeper, Inc. v. Drummond Co., Inc.*, No. 2:16-CV-01443-AKK, 2019 WL 2011396, at *18 (N.D. Ala. May 7, 2019) (allowing Section 404 claim to proceed).

As demonstrated, Congress gave and this Court and other courts, except the Fifth Circuit, have found subject matter jurisdiction over Section 404 violations. When Sections 301(a), 404(p), and 505 are read together, they provide for a cause of action for noncompliance with a Section 404 permit. Noncompliance with a permit is an unlawful discharge of a pollutant into waters of the United States.

## VI. Factual evidence will show that Defendant was not acting under NWP 39 because it procured its authorization to act by fraud, which rendered it a nullity.

This Court recognizes that, while Clean Water Act permits themselves are not contracts, they are interpreted as if they were. *Altamaha Riverkeeper, Inc. v. Rayonier, Inc.*, No. CV 214-44, 2015 WL 1505971, at *3 (S.D. Ga. Mar. 31, 2015). "In general, a Government contract tainted by fraud or wrong-doing is void *ab initio*." *Godley v. United States*, 5 F.3d 1473, 1475 (Fed. Cir. 1993). A government contract is void at its inception if the contract would not have been granted had the private party stated the truth. *J.E.T.S., Inc. v. United States*, 838 F.2d 1196, 1200 (Fed. Cir. 1988) ("Had it stated the truth about its size, it would not have received the contract. A government contract thus tainted from its inception by fraud is void *ab initio*[.]"). "Citizen plaintiffs who bring a suit under § 1365 are suing as 'private attorneys general seeking enforcement of a federal law.'" *Altamaha* at *3 (quoting *Atl. States Legal Found., Inc. v. Tyson Foods, Inc.*, 897 F.2d 1128, 1131 n. 5 (11th Cir.1990). They "stand in the shoes of" the permit issuing authority to enforce the permit or the lack thereof. *Id*.

NWP 39 allows discharges of fill material only "for construction or expansion of commercial and industrial building foundations . . ." (Doc. 1, Compl. ¶ 117). Defendant represented to the Corps that it intended to build a commercial building, and this representation prompted the Corps to grant authorization to act under NWP 39 to the Defendant. (Doc. 1, Compl. ¶¶ 109-113). But, Defendant neither intended to act nor acted as it represented. Prior to and subsequent to its application to the Corps, Defendant submitted documents to Glynn County evidencing that it intended to place "PERMANENT SODDING" in the Subject Wetland. (Doc.1, Compl. ¶¶ 118-130). Defendant sodded the Subject Wetland and never corrected its representation to the Corps. Extrinsic evidence exists that the Defendant intentionally misrepresented its intent to build a commercial building in order to wrongfully obtain authorization to act under NWP 39. This intentional misrepresentation will be proven at trial. Such a misrepresentation renders the permit void *ab initio*. Plaintiffs' Fifth Cause of Action gives clear notice regarding this allegation of intention and malicious misrepresentation. (Doc. 1, Compl. ¶¶ 168-176). And, the Sixth Cause of Action gives clear notice that the fill in the Subject Wetland is a violation of Section 301 of the Clean Water Act because the authorization to act under NWP 39 was void. (Doc. 1, Compl. ¶¶ 177-180).

## VII.   Plaintiffs have Standing to Sue

Defendants allege Plaintiffs lack standing to sue because they fail to plead an injury in fact. *Defendant Brief* at 9-13. This is incorrect. Plaintiffs suffered, and continue to suffer, from Defendant's illegal fill of the Subject Wetland.  In order to possess standing to invoke the power of a federal court, a plaintiff must satisfy three constitutional requirements. *Sierra Club v. U.S. Army Corps of Engineers*, 935 F. Supp. 1556, 1568 (S.D. Ala. 1996)

> "First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally-protected interest which is (a) concrete and particularized and (b) 'actual or imminent, not "conjectural" or

"hypothetical".' Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court.' Third, it must be 'likely', as opposed to merely 'speculative', that the injury will be 'redressed by a favorable decision'."

*Id*. at 1569 (citing *Region 8 Forest Service Timber Purchasers Council v. Alcock*, 993 F.2d 800, 805 (11th Cir.1993) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). Plaintiffs satisfy each of the above requirements, and Defendant does not dispute that Plaintiffs satisfy the second and third constitutional requirement.

Plaintiffs have suffered, and continue to suffer, from three concrete harms: (1) environmental harm; (2) aesthetic harm; (3) recreational harm. Plaintiffs have also suffered a procedural harm, as Defendant intentionally circumvented the permitting process of the Clean Water Act in order to avoid stringent public participation regulations required when applying for an individual permit, which would have been the appropriate permit in this case. *See* 33 CFR 325.5(b)(1). (An individual permit under the Clean Water Act "is one which has been processed through the public interest review procedures, including public notice and receipt of comments.").

### a. Concrete Harms

On November 27, 2002, the Corps made a jurisdictional determination regarding the Subject Wetland. Specifically, the Corps asserted that "[t]hese wetlands would be subject to [the Corps'] jurisdiction pursuant to Section 404 of the Clean Water Act since [the Subject Wetlands] are adjacent to and/or have a surface connection to a tributary to Dunbar Creek, a tidal, navigable water of the US." *See* Jurisdictional Determination, November 27, 2002, Permit Number 200205870.

Though the Subject Wetland is on Defendant's property, it is nonetheless public property, as a navigable water of the United States. Accordingly, Plaintiffs have an interest in protecting the Subject Wetland and what would be the connected tributary, Dunbar Creek, had the Subject Wetland not been filled. Wetlands serve vital purposes, such as acting as natural barriers to filter pollutants out of downstream tributaries.[7] *See United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 135 (1985) ("[W]etlands adjacent to lakes, rivers, streams, and other bodies of water may function as integral parts of the aquatic environment"); *see also* 33 C.F.R. § 320.4 ("wetlands constitute a productive and valuable public resource, the unnecessary alteration or destruction of which should be discouraged as contrary to the public interest.").  By filling the Subject Wetland, Defendant effectively lowered the water quality of Dunbar Creek, eliminated vital nutrients in surrounding habitats, and exacerbated the environmental harm already caused by development on St. Simon Island.

As a protective barrier, the Subject Wetland helped improve and maintain the water quality of Dunbar Creek. The destruction of this natural barrier allows non-point source pollutants, such as the oil run off from the nearby parking lot at the Inn at Sea Island, to make their way into Dunbar Creek.  Plaintiffs have a specific interest in Dunbar Creek's well-being, as Plaintiffs' members recreate in the Creek. Additionally, Plaintiff Glynn Environmental Coalition, Inc. monitors water quality at Dunbar Creek. (Doc. 1, Compl. at ¶ 43.

Defendant mischaracterizes Plaintiffs' interest in Dunbar Creek. (Doc. 6, Dft's Mot.  at 19). Defendant states that "a plaintiff claiming injury from environmental damages must use the area actually affected by the challenged activity, not an area roughly 'in the vicinity'…" *Id.* Plaintiffs do not allege an injury in fact "roughly in the vicinity" of the Subject Wetland, but

---

[7] *See Connectivity of Wetlands to Downstream Waters: Conceptual Framework and Review*, EPA, available at https://bit.ly/2IyDyMf (last visited April 10, 2019).

rather have an actual interest in Dunbar Creek. The law is clear that "[i]n cases where an environmental injury is alleged, an acceptable injury-in-fact can consist of 'a plaintiff claiming injury from environmental damage *[in] the area affected by* the challenged activity....'" *Sierra Club, Inc. v. St. Johns River Water Mgmt. Dist*., No. 614CV1877ORL40DAB, 2015 WL 6814566, at \*4 (M.D. Fla. Nov. 6, 2015) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 565 (1992)) (emphasis added). Since filling the Subject Wetland affects Dunbar Creek, Plaintiffs' interest in the Creek is proper to establish standing, though Plaintiffs also assert standing based on their interest in the Subject Wetland itself.

In addition to acting as protective barriers, wetlands produce nutrients that support the aquatic food web surrounding the Subject Wetland and Dunbar Creek. *See generally United States v. Tilton*, 705 F.2d 429, 431 n. 1 (11th Cir. 1983) (noting evidence of the importance specific wetlands to the food chain). The environmental harms stemming from Defendant's actions are exacerbated because of the high degree of development on St. Simon Island, which is a relatively small land area. Thus, even though the Subject Wetland is not large in size, the cumulative impact of filling the Subject Wetland multiplies the loss of habitat, wildlife, and water quality.

There is no question that filling a half acre of wetlands is an environmental harm, even if that harm is minimal in light of the public policy behind nationwide permits. *See* 33 U.S.C. § 1344 (referencing that the destruction of wetlands causes "adverse environmental effects."); *see also* 82 FR 1860 ("The terms and conditions of these NWPs protect the aquatic and environment and other *public interest review factors*.") (emphasis added). The policy behind nationwide permits is that the harm is minimal in light of other public interest facts, such as economic

development. Because Defendant's failed to build a commercial structure, an environmental harm ensued with no overriding public benefit.

Filling the Subject Wetland specifically caused the direct harm of physical loss of a protective natural barrier. This direct harm will continue as long as the Subject Wetland remains filled. Filling the Subject Wetland also caused run off and disturbance to habitats surrounding the Subject Wetland and those habitats related to adjoining waterways, such as Dunbar Creek. The destruction of Subject Wetland also exacerbates other environmental harms that impact Plaintiffs' interests of protecting coastal Georgia, as well as Plaintiffs' recreational interest in Dunbar Creek.

Plaintiffs' recreational interest in Dunbar Creeks is impacted by the environmental harms Defendant caused. An injury in fact exists when the recreational value of the affected area has been diminished. *See Jones Creek Inv'rs, LLC v. Columbia Cty., Ga*., 98 F. Supp. 3d 1279, 1297 (S.D. Ga. 2015). Here, the Plaintiffs' ability to recreate and enjoy Dunbar Creek is diminished, as the water quality and habitat surround the Creek is damaged from the Subject Wetland's destruction. Notably, an injury does not have to be severe to exist. "In order to show an injury in fact, a plaintiff need not make any showing as to the magnitude of the injury suffered, and may satisfy the requirement by merely establishing that an "identifiable trifle' of an injury has been or will imminently be incurred as a result of the challenged conduct." *Id*. at 1569. Undoubtedly, an environmental harm has occurred, as identified in 33 U.S.C. § 1344. This environmental harm diminishes Plaintiffs' enjoyment and ability to recreate in Dunbar Creek and an injury in fact exists. *See generally Sierra Club v. Johnson*, 436 F.3d 1269 (11th Cir. 2006)(finding environmental organization would suffer an injury in fact if Defendant filled wetlands).

In *Sierra Club*, the defendant City of Mobile, sought to obtain a wetland fill permit from the Corps. Plaintiffs filed suit to prevent wetland destruction. Like in the instant action, the defendant asserted that the plaintiffs lacked standing because they could not prove an "injury in fact." Nonetheless, the Court held that the plaintiffs had standing to assert their claim. Specifically, the Court recognized that the plaintiffs would suffer from a concrete, particularized injury in fact if the wetlands were filled, as destruction of the wetlands would impair the plaintiffs' ability "to use and enjoy the environment, waters, wetlands, air and lands of Alabama, including Dog River, the lands of the Dog River Basin, and the benefits from the wetlands." *Id*. at 1569.

In other words, because the plaintiffs "alleged that they engage in various activities in Dog River… which [would] be curtailed or otherwise adversely affected by the proposed wetlands fill-in," an injury in fact existed. The Court went on to state that "[t]hough the injury is small in that the impact of the wetlands fill on recreation in the Dog River will undoubtedly be slight, it is sufficient to create an injury in fact. The case law is abundantly clear that a minimal showing of detriment is all that is required to establish an injury in fact, and that the plaintiffs' demonstration of an injury in fact in this case is *more than adequate* to establish standing to sue." *Id*. (emphasis added).

Like the plaintiffs in *Sierra Club*, Plaintiffs in the instant action assert an injury in fact on the grounds that the destruction of the Subject Wetland pursuant to NWP 39 not only deprived, and continues to deprive, Plaintiffs of their interest in the Subject Wetland itself and the many benefits the wetland provides, but also Defendant's actions harmed Dunbar Creek. Plaintiffs' members regularly utilize Dunbar Creek for recreational activities, such as boating, kayaking and

fishing. Even Plaintiff, GEC, monitors the environmental quality of the Creek, just as the plaintiffs in *Sierra Club* studied the wildlife of the river connected to the wetlands. *Id*. at 1570.

Plaintiffs also have an aesthetic interest in the Subject Wetland. The Subject Wetland abuts Sea Island Road, a main thoroughfare on the island. The Subject Wetland is clearly visible from the road; thus, Plaintiffs' have an aesthetic interest in the Subject Wetland. It is well-settled that "[e]nvironmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons 'for whom the aesthetic and recreational values of the area" is lessened by the challenged activity. *Jones Creek*, 98 F. Supp. 3d at 1297(citing *Friends of the Earth*, 528 U.S. 167, 183 (2000) (*quoting Sierra Club v. Morton*, 405 U.S. 727, 735, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972)).  Here, Defendant has already destroyed the Subject Wetland. Therefore, Plaintiffs' have been deprived of their aesthetic interest in the Subject Wetland.

Plaintiffs have demonstrated they have a concrete interest in the Subject Wetland and Dunbar Creek, which was and continues to be affected by the Subject Wetland's fill. Injury in fact also requires that the concrete interest be "actual or imminent." *Sierra Club*, 935 at 1569. There is no question that the environmental harm to the Subject Wetland is actual, as the Subject Wetland has been destroyed. Thus, Plaintiff's aesthetic interest in the Subject Wetland has also been destroyed. Further, as a protective barrier, the destruction of the Subject Wetland has been harmed and will continue to harm Dunbar Creek. Accordingly, injuries in fact exist and Plaintiffs' have standing to sue.

### b. Procedural Harm

Plaintiffs have also suffered a procedural harm. The Eleventh Circuit has "conclude[ed] that a plaintiff has established procedural injury standing if he has established that the claimed violation of the procedural right caused a concrete injury in fact to an interest of the plaintiff that

the statute was designed to protect." *Sierra Club v. Johnson*, 436 F.3d 1269, 1278 (11th Cir. 2006). A procedural injury exists in this case, as Plaintiffs' concrete injuries in fact, as described above, were violated as a result of Defendant's intentional misrepresentations to the Corps in order to circumvent the public participation requirements of the Clean Water Act's individual permitting structure.

If a project within the jurisdiction of the Clean Water Act does not meet the requirements of a general nationwide permit, an individual Section 401 permit is required. Because Defendant filled the Subject Wetland for the purpose of landscaping, a purpose not covered under general NWP 39, an individual permit was required. An individual permit "is one which has been processed through the public interest review procedures, including public notice and receipt of comments." 33 CFR 325.5(b)(1). The purpose of public notice is to advise "all interested parties of the proposed activity for which a permit is sought and [to] solicit[] comments and information necessary to evaluate the probable impact on the public interest." 33 CFR § 325.3.

Plaintiffs' concrete injuries in fact are directly tied to Defendant's circumvention of the permitting process, which allowed Defendants to forego procedural public notice requirements. Accordingly, Defendants' violated Section 404 of the Clean Water Act and related regulations. *See* § 33 U.S.C. § 1344 33 CFR 325.5(b)(1); 33 CFR § 325.3. *See generally Lujan v. Defs. of Wildlife*, 504 U.S. 555, 606 (1992) ("[A]s a general matter, the courts owe substantial deference to Congress' substantive purpose in imposing a certain procedural requirement."). *See also Sierra Club v. State Water Control Bd.*, 898 F.3d 383, 401 (4th Cir. 2018) (finding that petitioners had standing to sue because petitioners lost the "opportunity to have more stringent requirements imposed.").

Defendant's misrepresentations to the Corps effectively shut out Plaintiffs' opportunity to comment and protect their interests in the Subject Wetland. Therefore, Plaintiffs have suffered a procedural injury, which directly relates to Plaintiffs' concrete injuries resulting from the illegal fill of the Subject Wetland.

## VIII.   Shotgun Pleadings can be remedied by a request for a more definite statement. But, here, Defendant's complaint is that Plaintiffs' claims are too definite.

Plaintiffs' Complaint is unambiguous and clearly identifies the claims and factual allegations against Defendant. As such, the Complaint cannot be characterized as a "shotgun pleading." The Eleventh Circuit has defined "shotgun pleading" as one that is "replete with factual allegations that could not possibly be material to any of the causes of action they assert." *Shillingford v. Rolly Marine Serv.., Inc*., No. 14-CIV-61936, 2014 WL 6682477, at *3 (S.D. Fla. Nov. 25, 2014). *See also Osahar v. U.S. Postal Service,* 297 Fed. App'x 863, 864 (11th Cir.2008) (term also refers to pleadings that are "replete with factual allegations and rambling legal conclusions"). "Shotgun pleadings take many forms, some of which are so vague and ambiguous that it is impossible for the defendant to even frame a response." Here, the Complaint is anything but vague. In fact, Defendant not only frames, but actually asserts a response to the first three causes of action. Moreover, Defendant identified and categorized all claims, and alleges that Plaintiffs cannot bring a citizen suit action under Section 404 or Section 401 of the Clean Water Act. (Doc. 6, Dft's Mot. at 3-4). This response clearly shows that Defendant recognizes the claims asserted against it as it pertains to the illegally filled wetland. Further, Defendant even identified "the essence of Plaintiffs' claims."  (Doc. 6, Dft's Mot. at 2). Thus, it appears that Defendant's issue with Plaintiffs' Complaint is not that it is too vague, but rather too definite.

Plaintiffs' theories of liability clearly identify which facts relate to which cause of action. (Doc. 1, Compl. ¶¶ 149-180). Plaintiffs incorporate by reference preceding paragraphs because

each claim builds on the previous cause of action. For example, Defendant claims that there is "*no relation whatsoever*" between the discharge issues and claim that Defendant intentionally deceived the Corps. (Doc. 6, Dft's Mot. at 14). Defendant's exaggerated assertion is unfounded. Sea Island misled the Corps in seeking a nationwide permit. By acquiring the permit through means of deception, Sea Island illegally discharged fill into protected wetlands. Clearly, these issues are related and should be treated as such.

Additionally, the First Cause of Action asserts Defendants' noncompliance with Section 401 of the Clean Water Act. (Doc. 1, Compl. ¶¶ 149-153). The Second Cause of Action asserts Defendant's noncompliance with Section 404 of the Act. (Doc. 1, Compl. ¶¶ 154-159). Section 401 of the Clean Water Act itself explicitly requires compliance with Section 404 of the Act; thus, these claims are not only related, but statutorily intertwined. *See* 33 U.S.C. § 1341. Even so, each cause of action specifically identifies the factual allegations directly relating to each claim. This is very different than a shotgun complaint that "fails to adequately link a cause of action to its factual predicates." *See Jones Creek Inv'rs, LLC v. Columbia Cty., Ga*., No. CV 111-174, 2011 WL 7446782, at *1 (S.D. Ga. Dec. 9, 2011), report and recommendation adopted, No. CV 111-174, 2012 WL 694316 (S.D. Ga. Mar. 1, 2012).

*Midnight Pass Soc., Inc. v. Fla. Dep't of Envtl. Prot.*, No. 8:12-CV-1314-T-17TBM, 2013 WL 1245987, at *9 (M.D. Fla. Mar. 26, 2013), provides an example of an actual shotgun pleading. The complaint in *Midnight* alleged five causes of action, incorporated by reference, against thirteen defendants. Though the court noted incorporating by reference "can be manageable in certain instances," the approach was not manageable in *Midnight* because the complaint asserted three separate statutory claims and two separate constitutional claims against

thirteen defendants, and plaintiffs failed to identify which defendant was being sued for which claim. This is dramatically different from the Complaint in question against Defendant.

In this case, Plaintiffs filed suit against a single Defendant based solely on the Clean Water Act. Further, Plaintiffs specifically identify which facts pertain to each cause of action. Again, Defendant's grievance appears to be that Plaintiffs' complaint is too "lengthy," but simultaneously claims Defendant cannot adequately respond to the complaint for lack of information (Doc. 6, Dft's Mot.  at 14). Defendants contradicting contention cannot be reconciled.

Plaintiffs' complaint is the length presented due to the nature of the causes of action, the complexity of the Clean Water Act, and Rule 9 of the Rules of Civil Procedure. Each section of the Clean Water Act is inherently related to other sections, especially as it relates to permits. For this reason, the complaint clearly identifies each applicable Clean Water Act section and its relation to the other applicable Clean Water Act sections and to each cause of action. Further, Fed.R.Civ.P. 9 requires heightened particularity when pleading fraud. Because the complaint alleges Defendant's intent to misrepresent and mislead the Corps, a heightened pleading standard was required and satisfied.

Plaintiffs' Complaint is unambiguous and asserts particularized causes of action that Defendant identified. Defendant's contention that it cannot discern Plaintiffs' causes of action is a farce, especially in light of the fact that Defendant specifically identifies and defends itself against three cause of action and discusses the others in detail. (Doc. 6, Dft's Mot. at 4-14). Plaintiffs' Complaint is well-plead.

If the Court finds, however, that Plaintiffs' Complaint does not clearly identify the causes of action and related factual allegations, "the proper course of action for a court faced with a

shotgun pleading is to require the pleader to re-cast the pleading with the requisite specificity."

*Jones Creek*, 2011 WL 7446782, at *3.

## **CONCLUSION**

Defendant's motion to dismiss should be rejected, as Defendant's arguments are meritless. Defendant must comply with its Clean Water Act permit, and whether Defendant complied with its permit, as well as Defendant's intent to comply, are questions of fact. Such considerations are premature at this Rule 12 stage. Additionally, violations of Section 404 of the Clean Water Act are allowed under the Citizens Suit Provision and should not be dismissed. Plaintiffs' Complaint is well-plead, and Plaintiffs have suffered injuries in fact. Accordingly, Plaintiffs respectfully ask this Court to deny Defendant's motion.

Respectfully submitted on May 23, 2019.

/s/ E. Righton J. Lewis
E. Righton J. Lewis
Georgia Bar No. 215211
**BUTLER SNOW LLP**
1170 Peachtree Street NE
Suite 1900
Atlanta, Georgia 30309
(678) 515-5064 Telephone
(678) 515-5001 Facsimile
righton.lewis@butlersnow.com

*Attorney for Plaintiffs The Glynn Environmental Coalition, Inc. and Center for a Sustainable Coast, Inc.*

24

## <u>CERTIFICATE OF SERVICE</u>

I certify that on May 23, 2019 I electronically filed the foregoing with the Clerk of Court

using the CM/ECF system which will send notification of filing to the following:

James B. Durham
jdurham@hallboothsmith.com


/s/E. Righton J. Lewis
E. Righton J. Lewis
Georgia Bar No. 215211


47443986v2