IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| THE GLYNN ENVIRONMENTAL COALITION, INC. and CENTER FOR A SUSTAINABLE COAST, INC., <br><br> Plaintiff, <br><br> v. <br><br> SEA ISLAND ACQUISITION, LLC, <br><br> Defendant. | CIVIL ACTION FILE <br> NO. 2:19-CV-50 |

**DEFENDANT'S REPLY TO PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

COMES NOW, Defendant **SEA ISLAND ACQUISITION, LLC ("Defendant" or "Sea Island")**, and submits its Reply to Plaintiffs' Response in Opposition to Defendant's Motion to Dismiss, in support of which it relies upon all pleadings of record and respectfully shows the following:

**I.     INTRODUCTION**

Plaintiffs were wrong in asserting this Court held that 33 U.S.C. § 1365(a) and (f) allows a citizen to file suit for the alleged violation of a Section 404 permit. Contrary to Plaintiffs' assertion, this Court in *Jones Creek Inv'rs, LLC v. Columbia Cty.*, Ga., No. CV111-174, 2013 WL 1338238, held that plaintiffs presented a good faith allegation of an on-going violation of Section 404 when the defendants discharged pollutants, including sediment, sand, rock, dirt, and eroded soil into the jurisdictional waters of the United States **without a permit**. *Id*. at *6, *9, and *12. This Court did not hold that a Section 1365 citizen suit can be brought for an alleged violation of

Section 404 when the activity is performed pursuant to a Section 404 permit.  In this case, the United States Army Corps of Engineers ("Corps") authorized Sea Island, under Nationwide Permit 39 (NWP 39), to fill less than .5 acre of wetlands on their property.  Defendant filled their property pursuant to the Section 404 permit.  Plaintiffs cannot bring a citizen's suit against this Defendant for what they contend is a violation of the Section 404 permit.

Throughout their brief, Plaintiffs consistently and incorrectly rely on cases in which defendants have violated Section 404 by filling wetlands without a permit to assert they have a right to bring a citizen suit under Section 1365 for filling wetlands allegedly in violation of a Section 404 permit.  This is wrong.  Plaintiffs' contention is not supported by the clear statutory language of 33 U.S.C. §§ 1344 and 1365, nor any decisions of this Court.  Further, Plaintiffs' contention is directly contradicted by the Fifth Circuit case of *Atchafalaya Basinkeeper v. Chustz*, 682 F. 3d 356, 359 (5th Cir. 2012).  In *Atchafalaya*, the Fifth Circuit stated that if Congress had intended to allow citizen suits for Section 404 permit violations, it would have done so explicitly, and it had not done so. *Id*. at 359.

Plaintiffs also fail to direct this Court to any condition which places a deadline on when the Defendant must construct a building on the property, because there is none.  The entire premise of Plaintiffs' argument is that Defendant is in violation of NWP 39 because it has not yet constructed a building on its property.  However, Plaintiffs are unable to support this claim.  In fact, Plaintiffs curiously avoided this point altogether in their responsive brief.

Plaintiffs have also failed to show the Court in their pleadings, or explain in their responsive brief, how any of their members have sustained an actual concrete injury as a result of the Defendant not constructing a building on the fill at this time.  Plaintiffs' allegations of injury remain conjectural and hypothetical, and as a result they do not have standing to bring this action.

Finally, contrary to Plaintiffs' assertions in their responsive brief, the Defendant moved to dismiss each and every claim asserted against it in its prayer for relief. All of the counts in Plaintiffs' Complaint are based upon their assertions that they can sue for an alleged violation of a Section 404 permit, that Defendant has violated its Section 404 permit and Section 401 certification by not having yet constructed a commercial structure on the fill, and by showing they have standing to sue. If any of these fail, which they all do, Plaintiffs' entire Complaint fails, and should be dismissed.

## II.     ARGUMENT AND CITATION OF AUTHORITY

### A. The CWA Does Not Authorize a Citizen Suit for Alleged Violations of the Terms and Conditions of a Section 404 Permit.

Plaintiffs argue, contrary to the express language of the CWA, that the Act actually authorizes citizen suits to be brought for alleged violations of a Section 404 permit, by way of 33 U.S.C. §§ 1344(p), 1311(a), and 1365(a) and (f)[1]. (Doc. 11 at 8-9.) Plaintiffs assert, through a complex and misleading discussion cross-referencing different provisions of the CWA and legislative proposals that Congress ultimately determined not to enact into law, that a citizen suit for an alleged violation of a Section 404 permit may nevertheless be brought because of the relationships between Sections 1344(p) (Section 404(p)), 1311(a), and 1365(a) and (f). (Doc. 11 at 8-12.) This analysis is not supported by the statutory text nor by the one case that has squarely addressed this issue.

Section 1365 is the provision that authorizes private citizen suits under the Clean Water Act, but *only* for certain CWA violations – *not* including an alleged violation of the terms and conditions of a Section 404 permit. A citizen suit can be brought only for violations of an "effluent

---

[1] In this brief Defendant will generally refer to 33 U.S.C. §§ 1344 by its common moniker, Section 404, which is its Clean Water Act reference. Similarly, the brief will generally refer to 33 U.S.C. §§ 1341 as Section 401. All other CWA citations will generally be made with reference to the U.S. Code citations, rather than the CWA section numbers.

standard or limitation," as defined in Section 1365(f)(6). The statutory definition of "effluent standard or limitation" includes a violation of "a permit or condition thereof issued under Section 1342 [CWA Sec. 402]" but, crucially, not for violation of a permit or condition of a permit issued under Section 404. *See* 33 U.S.C. § 1365(f)(6). Discharging dredged or fill material into waters of the United States *without a Section 404 permit* is a violation of Section 1311 and therefore can be the subject of a citizen suit under Section 1365, but that is not the case presented here. The action by Congress to authorize a citizen suit for an alleged violation of a permit or permit condition under Section 1342 but not to include authorization of a citizen suit for violation of a Section 404 permit is a critical and important distinction, which Plaintiffs attempt to blur.

Plaintiffs seek to compensate for the lack of authority for their case in the citizen suit provision of the CWA by relying on the provisions of Section 404(p). Section 404(p) states that "Compliance with a permit issued pursuant to this section, including any activity carried out pursuant to a general permit issued under this section, shall be deemed compliance, for purposes of sections 1319 and 1365 of this title, with sections 1311, 1317, and 1343 of this title." 33 U.S.C. § 1344(p). This is a *compliance* provision, not an *enforcement* provision. By its terms, Congress provided that if one satisfies the conditions of a Section 404 permit, then one has satisfied the provisions of effluent limitations (§ 1311), toxic and pretreatment effluent standards (§ 1317), and ocean discharge criteria (§ 1343). Section 1319, for its part, provides for enforcement of Section 1344, among other provisions but addresses *only* the authority *of the Administrator of EPA* to bring a civil action against an alleged violator of Section 1344 in certain circumstances, and provides no authority for a suit by a private citizen. *See* 33 U.S.C. § 1319(a)(3), (b) (authorizing Administrator to commence civil action for appropriate relief in certain circumstances).[2] Section 1365 authorizes

---

[2] The Corps of Engineers has broad authority, and enforcement discretion, to take action against a permittee for violation of the terms of a Section 404 permit. *See* Section 404(s).

citizen suits, but only for certain enumerated CWA violations, not including an alleged violation of a term or condition of a Section 404 permit.

Reading these provisions together, it is clear from the text that Congress meant that if someone brings a citizen suit under Section 1365 for a violation of Sections 1311, 1317, or 1343 in particular, an allegation of noncompliance with those provisions will fail if the defendant has otherwise complied with Section 1344. However, the language of protection from suit in Section 404(p) is not written as an authorization of a right to bring a citizen suit and cannot be interpreted as such. The compliance provision in Section 404(p) does not broaden the citizen suit authorization beyond its specific terms. There is no authorization of suits under § 1365 to enforce the provisions of Section 404, and, it bears repeating, Section 1365 conspicuously excludes Section 404 permit violations from citizen suits, even while authorizing citizen suits to enforce the provisions of Sections 1311 and 1317 and to enforce violations of the terms of a permit issued under Section 1342. *See* § 1365(f). Had Congress intended to authorize citizen suits for violation of a Section 404 permit, it would have said so in Section 1365(f) by including Section 404 permit requirements and conditions in its definition of "effluent standard or limitation." But it did not.

Plaintiffs' mistake here is a subtle, but critical fallacy of logic: denying the antecedent. Plaintiffs argue, in effect, that because *compliance* with a Section 404 permit constitutes *compliance* with Section 1311 (Section 301(a)), that *non*compliance with a Section 404 permit therefore must also constitute *noncompliance* with Section 1311; and since Congress authorized citizen suits for the former, it thus also authorized citizen suits for the latter. (*See* Doc. 11 at 9). But Congress is presumed not to have enacted illogical legislation when a plain reading of the text of the statutory framework does not itself commit a fallacy. *See, e.g.*, *N.L.R.B. v. Noel Canning*, 573 U.S. 513, 589 (2014) (Scalia, J., concurring in judgment) (discussing at length that, where one

provision implies another, the negation of the former does not constitute the negation of the latter, characterized as "the incorrect assumption that if P implies Q, then not-P implies not-Q"). The plain text of the Clean Water Act makes clear there is no authority, either in Section 404 or in Section 1365 to bring a citizen suit for a violation of the terms of a Section 404 permit.

Plaintiffs attempt to argue that the Fifth Circuit's decision in *Atchafalaya Basinkeeper v. Chustz*, 682 F.3d 356 (5th Cir. 2012), in which the Court expressly determined that the CWA does not provide citizens the right to sue to enforce the conditions of a permit for the discharge of dredge or fill material – that is, the conditions of a Section 404 permit – is wrong because, in essence, the Court didn't do a good enough job investigating the complete statutory framework. (Doc. 11 at 10.) They rely on the Supreme Court's observation in *Coeur Alaska, Inc. v. Se. Alaska Conservation Council*, 557 U.S. 261, 280 (2009), that Section 404 compliance will "protect" compliant persons from enforcement actions, including those by private citizens, to argue there is no need to protect a person from suit if that person is not in danger of suit. *Id.* However, a careful reading of the Court's decision reveals that the Court did not say that Section 404(p) protects permittees from Section 404 actions which, but for Section 404(p), could be brought by private citizens; rather, it said that Section 404(p) protects Section 404 permittees from those actions which otherwise could be brought against those permittees for violations of §§ 1311, 1317, or 1343. 557 U.S. at 280-81. Plaintiffs' misunderstanding of the Supreme Court's decision here repeats the same logical fallacy discussed above. Moreover, to the extent that the Court's opinion can be read to imply that Section 404(p) authorizes a citizen suit against a Section 404 permittee, that statement is pure dicta; the issue presented here was not decided in that case. Even further, the Court's discussion, in direct contrast to Plaintiffs' position, reinforces the principle that, where Congress has elected not to provide an enforcement mechanism where it has done so elsewhere in

6

the same statute, then it is presumed that Congress intended not to make such a provision. *Id.* ("In our view, Congress's omission of § 306 from § 404, and its inclusion of § 306 in § 402(k), is evidence that Congress did not intend § 306(e) to apply to Corps § 404 permits or to discharges of fill material."). Because Congress did not provide for citizen suits for violations of a Section 404 permit in either Section 1365 or in Section 404, such a remedy is simply not available to a private plaintiff, although the Corps of Engineers has broad enforcement authority. *See* Section 404(s).

In an attempt to get around the plain meaning of Section 404 and the conspicuous absence of a citizen suit enforcement provision, Plaintiffs attempt to interpret legislative history, arguing two points. First, the Senate bill version of the CWA originally compiled Section 404 and what eventually became Section 1342 into a single provision under Section 1342 and then proposed a citizen suit enforcement mechanism for that compiled provision. Second, the Senate Report contains commentary suggesting that failure to comply with Section 404 would constitute a violation of Section 1311. Because of this, Plaintiffs argue it is implied that in enacting the final version of the CWA, Congress meant to authorize citizen suits for Section 404 violations, even though, as Plaintiffs acknowledge, this is *not* the version of the law Congress actually adopted. (Doc. 11 at 10-11.) But the Supreme Court and Eleventh Circuit have made quite clear that where, as here, the plain meaning of statutory text is unambiguous, it is improper to turn to legislative history to contravene that meaning. *See CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1224 (11th Cir. 2001) ("[W]e look to the actual language used in a statute, not to the circumstances that gave rise to that language. Our decisions back up that requirement by mandating that ambiguity in statutory language be shown *before* a court delves into legislative history(...) Any ambiguity in the statutory language must result from the common usage of that language, *not* from the parties' dueling characterizations of what Congress 'really meant.'") (italics in original.) The

plain meaning of Congress's words here are unmistakable: unlike, for example, Section 1341 and Section 1342, which are explicitly spelled out in Section 1365, Section 404 is nowhere to be found in Section 1365's citizen suit provision, nor are citizen suits authorized by Section 404 itself. Thus, there is simply no citizen suit provision applicable to alleged violations of a Section 404 permit, and Plaintiffs' claims must fail.

Plaintiffs repeatedly blur the crucial distinction between a citizen's right to sue for an alleged Section 404 violation where there is no permit –a citizen suit is authorized -- with situations when there is a Section 404 permit and alleged violations of the terms of that permit. Plaintiffs rely on cases where defendants failed to obtain a Section 404 permit and were therefore illegally discharging fill material in jurisdictional waters—a clear violation of Section 301 (33 U.S.C. § 1311 ("the discharge of any pollutant by any person shall be unlawful" except in compliance with other provisions including, the requirement to have a Section 404 permit to discharge dredged and fill material into jurisdictional waters))to argue that Section 1365 allows claims for violations of a Section 404 permit. Most egregiously, Plaintiffs miscite this Court's decision in *Jones Creek Inv'rs, LLC v. Columbia Cty., Ga*., No. CV 111-174, 2013 WL 1338238, at *12 (S.D. Ga. Mar. 28, 2013) to argue that this Court has already determined the issue contrary to Defendant's argument and ruled that Section 1365 allows a citizen suit for an alleged violation of a Section 404 permit. (Doc. 11 at 1, 9-11.)  That is a blatant misreading of the case. In *Jones Creek*, plaintiff contended that the defendants were violating Section 404 by dredging, filling, or altering the flow of jurisdictional waters *without a Section 404 permit*. *Id*. at *9.  The case did not address and the Court did not decide the question whether a citizen may bring an action under Section 1365 for an alleged violation of a Section 404 permit.

Plaintiffs cite additional case law that, according to them, stands for the proposition that, despite Congress's clear language, the CWA actually does authorize citizen suits for an alleged violation of a Section 404 permit. (Doc. 11 at 11-12.)  However, all the cases cited by Plaintiffs, save one, deal with situations where the defendants were discharging without a Section 404 Permit. *See Draper v. Roberts Family, LLC*, No. 1:06-CV-3057-CC, 2009 WL 10668404, *24 (N.D. Ga. Mar. 30, 2009) (Defendant installed check dams without a permit); *Shellfish Growers Ass'n v. Holly Ridge Assocs., LLC.*, 200 F. Supp. 2d 551, 553-557 (E.D.N.C. 2011) (defendants failed to obtain the requisite permits to perform the discharge of pollutants, and none of plaintiffs' claims were barred because the State of North Carolina had not prosecuted defendant under comparable state law); *Greenfield Mills, Inc. v. O'Bannon*, 189 F. Supp. 2d 902 (N.D. Ind. 2002) (defendants discharged fill materials into navigable waters without a § 404 permit); *Ogeechee-Canoochee Riverkeeper, Inc. v. T.C. Logging, Inc.*, No. 608CV064, 2009 WL 2390851, *1, *11 (S.D. Ga. Aug. 4, 2009) (the activities of the defendant were done without a § 404 permit and the defendant met no exceptions under § 404); *Black Warrior River-Keeper, Inc. v. Drummond Co., Inc.*, No. 2:16-CV-01443-AKK, 2019 WL 2011396 (N.D. Ala. May 7, 2019)(ongoing presence of dams and mining waste in jurisdictional waters; no Section 404 permit discussed; the issue was whether past discharges were ongoing violations).

The sole outlier is the case of *Stillwater of Crown Point Homeowner's Ass'n, Inc. v. Kovich*, 820 F. Supp. 2d 859 (N.D. Ind. 2011), but that decision is not persuasive, because it is apparent from the order that none of the parties asserted that a permit issued under § 404 barred a private citizens suit and because the court's error in analysis is clear on the face of the decision.  In *Stillwater* the defendant did have a Section 404 permit, and the district court did allow the citizen suit to proceed for alleged violations of the Section 404 permit. But the decision was based on the

court's erroneous reading of the definition of "effluent standard or limitation" in Section 1365. The court held:

> "A term or condition in a permit issued under CWA § 404 or a water quality certification issued under CWA § 401 is an "effluent standard or limitation" that may be enforced by way of a citizen suit under § 1365. Section 1365(f) defines 'effluent standard or limitation' as 'an unlawful act under subsection (a) of section 1311, …certification under section 1341,…and a permit or condition thereof issued under section 1342 of this title.'" *Id.* At § 1365(f).

As this holding makes clear, the court in the *Stillwater* case confused Section 402 (33 U.S.C. § 1342) with Section 404 (33 U.S.C. § 1344). A violation of "a permit or condition thereof issued under section 1342 [Section 402]" is clearly an "effluent standard or limitation"; in contrast, a permit or condition thereof issued under Section 404 is clearly not.

Any precedential value of the *Stillwater* case is further refuted by the fact that it precedes the decision of the Fifth Circuit in *Atchafalaya Basinkeeper v. Chustz*, 682 F.3d 356 (5th Cir. 2012). As argued in the Brief in Support of Defendant's Motion to Dismiss (Doc. 6-1 at 6), that decision is the only reported case where the issue presented here has been squarely presented and decided. The *Atchafalaya* case is persuasive, and Plaintiffs have failed to distinguish it or undermine the validity of its holding.

In sum, Plaintiffs cannot overcome the fact that a claim for violation of the terms or conditions of a Section 404 permit is clearly excluded from Section 1365's citizen suit provision; because Congress by this exclusion says "what it means and means (...) what it says,"[3] there is

---

[3] *United States Department of Defense v. FLRA*, 510 U.S. 487, ---, 114 S.Ct. 1006, 1016 (1994) (quoting *Connecticut National Bank v. Germain*, 503 U.S. 249, 253-54 (1992)).

simply no provision for a citizen suit for an alleged violation of a Section 404 permit. All of Plaintiffs' claims collapse on this basis.

### B. There is no Deadline that Defendant Must Meet When Constructing the Building on the Authorized Fill.

Plaintiffs allege noncompliance with the Nationwide Permit 39 authorization because defendant has not, to date, constructed the commercial structure and parking lot on the authorized fill. However, Plaintiffs have not and cannot direct the Court to any condition or authority that requires the construction of the building prior to some established deadline. Plaintiffs did not address this point in their responsive brief, although it was specifically raised in Defendant's Motion to Dismiss. (Doc. 6-1 at 8) ("However, there is no requirement that the planned commercial or industrial building must be constructed within any given time period, and Plaintiffs have not identified any such deadline.") This is not a situation of Plaintiffs stepping to the plate and swinging and missing on such a key point, but the Plaintiffs' failing to swing at all.

The authorization under NWP 39 that was issued to Sea Island by the Corps authorizing placement of the fill contains five special conditions. (*See* Doc. 1-1, Pls.' Ex. A). Nowhere does the Corps place a time limit on when the structure must be completed. *Id*. Further, Plaintiffs allege but cannot point to any condition in the Georgia Department of Natural Resources' Water Quality Certification associated with the issuance of the Corps Nationwide Permits that requires a permittee to implement the purpose for which the activity was authorized or that imposes any deadline for construction. (*See* Doc. 1-3, Pls.' Ex. C).

Plaintiffs assert they have properly pleaded a claim of violation of Section 401 (33 U.S.C. § 1341. (Doc. 11- 8 ). The Complaint alleges that the Section 401 certification applicable to this matter is "contingent upon Sea Island's compliance with NWP 39…" and asserts that defendant has "violated its Section 401 certification." (Doc 1 at 3, 14-15). Those allegations are refuted by

11

the Complaint. Plaintiffs have provided as an attachment to the Complaint the Section 401 certification that they claim has been violated. (Doc 1-3, Pls.' Ex. C.) Review of that document reveals that it was a letter from Georgia EPD to the Corps of Engineers dated March 12, 2012, which provided a blanket Section 401 certification to the Corps of Engineers and constituted the State's approval for use in Georgia of the entire slate of nationwide permits that the Corps was reissuing, including NWP 39.  The Section 401 certification letter includes six conditions, none of which is addressed to Sea Island and none of which is even arguably relevant to the issues in this case.

In 2013, the Corps verified that the *activity* authorized by the permit was the fill itself, drawing a clear distinction between what the permit authorized Sea Island *to do*, and *why* Sea Island wanted to do it. (Doc. 1-2 at 1) ("On February 13, 2013, the Corps verified authorization under NWP 39 **for the fill** of 0.49 acre (*sic*) of wetland **associated with** a commercial development(...) The **authorized fill** of waters of the United States is complete, however the permittee has not constructed the physical project according to plans(...) The **wetland fill completed** was **authorized** by the Corps"). (emphasis supplied).

In its authorization letter, the Corps notes:

This verification is valid for a period of 2 years from the date of this letter, or until the NWP is modified, reissued or revoked. All of the existing NWPs are scheduled to expire on March 18, 2017. It is incumbent upon you to remain informed of changes to the NWPs. Furthermore, if you commence or are under contract to commence this *activity* before the date that the relevant Nationwide permit is modified or revoked, you will have twelve (12) months from the date of the modification or revocation of the in WP to complete the *activity* under the present terms and conditions of this NWP.

(Doc. 1-1 at 2.)

As discussed in more detail above, the *activity* authorized by the NWP is the discharge of fill into the jurisdictional waters and not the *purpose* used to justify the *activity*. In 2016, the Corps

12

stated "[t]he applicant has not built any structures to date, has filled within the allowable footprint and has stated that they planned to build the authorized structures *in the future*.[4] Based on all information provided and with the advice of OC [Office of Counsel], the Corps [has] concluded that SAAS-2013-00045 is presently in compliance with the previously authorized NWP 39 verification." (Doc. 1-5.)  Further, less than a year later, in its Memorandum of Record dated May 12, 2017, the Corps indicated "[t]he wetland fill completed was authorized by the Corps…" (Doc. 1-2.)

This is even more evident in the Decision Document for Nationwide Permit 39.  77 FR 10222-10223 (Feb. 21, 2012).  In explaining the scope of and justification for NWP 39, the Corps stated, "[t]he acreage limits of this NWP apply to single and complete projects, even though a single and complete project may have more than one proponent.  In general, a commercial development project in which a developer prepares a large site and then markets individual lots to individual builders would be one single and complete project, and the acreage limits would apply to the development as a whole." *Id*. The Corps contemplates the use of NWP 39 to authorize the filling of small areas of wetlands (less than .5 acres) to facilitate development of commercial projects such as hospitals, schools, government buildings and shopping centers, all of which necessarily take years to complete.  NWP 39 imposes no time limits on the construction of the project, but only on completing the fill ("the activity").

It is clear from language of the permit, and exhibits attached to the Complaint, there is no deadline by which Sea Island must complete the construction of the building.  Rather, the deadlines contained in the permit are associated with the placement of the authorized fill and purchase of the compensatory mitigation credits.

---

[4] It is important to emphasize that the Corps did not place any deadline on the construction of the structures "in the future."

13

In addition, there was no Section 401 certification issued to Sea Island relating to this project, there is no condition in the Section 401 certification issued to the Corps that is applicable here, and there is no condition in the Section 401 certification that imposes any deadline for the construction of a project for which NWP 39 has been utilized. Plaintiffs' allegation that defendant is in noncompliance with a Section 401 certification is conclusively refuted by Exhibit C to the Complaint.

Accordingly, Plaintiffs' allegation that Sea Island failed to timely construct the building is not correct and is not a violation of its permit or of any Section 401 certification. Therefore, Plaintiffs' Complaint is incorrect and must be dismissed in its entirety.

### C. Plaintiffs Lack Standing Because the Alleged "Concrete Harm" Is Too Amorphous and Remote, and the Alleged "Procedural Harm" Cannot Exist Because Section 404 Does Not Require Public Comment of Activities Authorized by Nationwide Permits.

Plaintiffs' entire action is premised upon the fact that the Defendant has not yet constructed a commercial structure and attendant parking lot on a less than 0.5 acre fill on Defendant's property. Contrary to Plaintiffs' bald assertion (Doc. 11 at 15), the site in question is not public property. Plaintiff has yet to explain or sufficiently plead how the construction of a commercial project on the property will eliminate any harm alleged by Plaintiffs. The fill will be present after the construction of the building and parking lot. It is illogical to assume that if there were harm, it would simply disappear when a commercial structure was placed on the property. This assertion by Plaintiffs is conjectural, at best, and does not support Plaintiffs' contentions that its members have sustained an injury-in-fact that is concrete and traceable to the Defendant.

The fact that Plaintiffs allege some of their members like to recreate on Dunbar Creek does not establish a concrete injury. (Doc. 1 ¶ 42.) There are no allegations set forth as to how the fill, which was placed pursuant to NWP 39 requirements, allegedly affects Plaintiffs' members

14

recreating on Dunbar Creek. There are no allegations that the fill causes sediment deposits, discoloration, or any other alleged concrete injury from the fill on Sea Island's property that affects recreational activities of Plaintiffs' members. *Cf. Jones Creek Inv'rs, LLC v. Columbia Cnty.*, Ga., 98 F. Supp. 3d 1279, 1297-98 (S.D. Ga. 2015). Of particular interest, the exhibits to Plaintiffs' Complaint show the subject property separated by some distance from Dunbar Creek, while at the same time, show a sewage disposal plant immediately adjacent to Dunbar Creek across Sea Island Road to the northwest of Sea Island's property. (Doc 1-1 at 13; Doc 1-8 at 7-8.) Further, according to the Corps in exhibits attached to the Plaintiffs' Complaint:

b.  "[i]f the fill remains in place without the project being completed in accordance with the plans submitted, there would be no impact on navigation, cultural resources, Essential Fish Habitat, or endangered species (reference draft NWP Decision Document in ORM dated February 27, 2013).

c.  There is no risk to any other public interest factors if the fill remains in place." (Doc 1-2 p. 2).

The actual evidence attached to Plaintiffs' Complaint shows no injury-in-fact traceable to Defendant's property. The Plaintiff merely makes conclusory statements of injuries which do not establish standing under the case law. (Doc. 1 ¶¶ 41, 42, 44, and 55.)

In their argument that they have sustained procedural harm, the Plaintiffs cite the Eleventh Circuit case of *Sierra Club v. Johnson*, 436 F.3d 1269, 1278 (11th Cir. 2006). The Court there "conclud[ed]" that a plaintiff establishes procedural injury standing if they show that the claimed violation of procedural right caused a concrete injury-in-fact to an interest of the plaintiff that the statute was designed to protect. *Id.* First, Plaintiffs fail to state what procedure was violated by the Corps when they authorized Defendant's use of NWP 39. The question is, what procedure in the

issuance of this authorization was violated, not what procedure was violated in a fictitious permitting process that did not take place. Second, Plaintiffs cannot avoid the requirement that they must show a concrete injury directly related to an alleged procedural defect. As previously stated, Plaintiffs have failed to show any concrete injury to any of its members, and have merely made conclusory allegations.

Plaintiffs' arguments on standing are circular and conclusory. They continue to reiterate the same conclusory allegations without any substance. Plaintiffs have failed to allege a concrete injury traceable to the Defendant because there is none. This is demonstrated by Plaintiffs' own Complaint and Exhibits, as mentioned above.

### D. Sea Island Moved to Dismiss *All* Claims, Including Declaratory Claims; and Declaratory Claims Must Fail Where Their Underlying Allegations Also Fail.

Plaintiffs claim that Sea Island failed to move to dismiss Plaintiffs' declaratory claims, and therefore those claims must stand, ignoring Sea Island's prayer that "each and every claim asserted against it in Plaintiffs' Complaint be dismissed." (*See* Doc. 11 at 8; Doc. 6-1 at 15). Plaintiffs have failed to show they have a right to bring a citizen suit under 1365(a), and therefore, all of Plaintiffs' claims and counts fail and should be dismissed. Plaintiffs further fail to show in their Complaint that the Defendant has violated its NWP 39 permit or the Section 401 certification for NWP 39 by not constructing a commercial structure on the fill at this time, and therefore, all of Plaintiffs' claims and counts should be dismissed. Finally, Plaintiffs' conclusory Complaint fails to establish that the Plaintiffs have standing to bring this action, and therefore, all of Plaintiffs' claims and counts should be dismissed.

### E. Plaintiffs' Complaint Remains a "Shotgun" Pleading.

Finally, Plaintiffs argue that their Complaint does not constitute an impermissible "shotgun pleading" simply because it isn't *too* vague or *too* convoluted, despite admitting the repetitious nature of Plaintiffs' claims and despite the complete irrelevance of Plaintiffs' allegations concerning "misrepresentation" in Sea Island's permit application to any question of whether Plaintiffs have the right to sue in the first place. But, as noted in Defendant's Motion, Plaintiffs' Complaint is a lengthy amalgamation of competing and intertwined theories of liability, with each count of the Complaint incorporating by reference all preceding allegations but contains no fewer than four separate counts asserting the exact same theory of liability, worded slightly differently. (*See* Counts 1, 2, 4, and 6, Doc. 1, ¶¶ 149-159, 164-167, 177-180, asserting in various forms that Sea Island's authorized fill constitutes an illegal "discharge" into United States waters in violation of the CWA.)  The Complaint in this matter is therefore a classic "shotgun pleading," and dismissal of each and every claim asserted therein is warranted.

### III.   CONCLUSION

Defendant respectfully requests that this Court dismiss Plaintiffs' Complaint in its entirety. Sections 1365(a) and 1365(f) do not give Plaintiffs the right to file a citizen suit on an alleged violation of a Section 404 permit.  Plaintiffs have further failed to show that the Defendant is in violation of NWP 39 and the Complaint refutes any allegation of violation of the Section 401 certification issued to the Corps for NWP 39.  The Defendant has completed the fill, which was the "activity" permitted by the Corps.  There is no time limit placed on the Defendant by NWP 39 as to when the construction of a structure must be completed.  The Corps is responsible for regulating and enforcing compliance with permits issued under Section 404.  Plaintiffs do not have that authority.  Finally, Plaintiffs have failed to show a procedural harm or any injury-in-fact

traceable to the Defendant.  Therefore, Plaintiffs lack standing to bring this action.  All other counts of Plaintiffs' Complaint are premised upon their ability to bring a private citizen suit, showing Defendant has violated NWP 39 and/or the Section 401 certification for NWP 39 by not having constructed a commercial structure at this time, and having standing to bring the action.  If any one of these necessary elements fail, Plaintiffs' entire Complaint fails, and should be dismissed. All of these fail; Plaintiffs' Complaint should be dismissed in its entirety.

    Respectfully submitted this 6th day of June, 2019.

                               HALL BOOTH SMITH, P.C.

| | |
|---|---|
| 3528 Darien Highway, Suite 300 | */s/ James B. Durham* |
| Brunswick, Georgia 31525 | JAMES B. DURHAM |
| Phone: (912) 554-0093 | Georgia Bar No. 235526 |
| Fax:    (912) 554-1973 | *Attorney for Defendant* |
| Email: *jdurham@hallboothsmith.com* | *Sea Island Acquisition, LLC* |

# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## BRUNSWICK DIVISION

| | |
|---|---|
| THE GLYNN ENVIRONMENTAL COALITION, INC. and CENTER FOR A SUSTAINABLE COAST, INC.,<br><br>    Plaintiffs,<br><br>v.<br><br>SEA ISLAND ACQUISITION, LLC,<br><br>    Defendant. | CIVIL ACTION FILE<br>NO. 2:19-CV-50 |

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the **Defendant's Reply to Plaintiffs' Response in Opposition to Defendant's Motion to Dismiss** upon all parties to this matter by filing said documents with the CM/ECF system which will automatically send electronic notification to the following:

E. Righton J. Lewis
BUTLER SNOW, LLP
1170 Peachtree St. NE, Suite 1900
Atlanta, GA 30309

Respectfully submitted this 6th day of June, 2019.

HALL BOOTH SMITH, P.C.

*/s/ James B. Durham*
JAMES B. DURHAM
Georgia Bar No. 235526
*Attorney for Defendant*
*Sea Island Acquisition, LLC*

3528 Darien Highway, Suite 300
Brunswick, Georgia 31525
Phone: (912) 554-0093
Fax:    (912) 554-1973
Email: *jdurham@hallboothsmith.com*