IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | | |
|---|---|---|
| THE GLYNN ENVIRONMENTAL COALITION, INC. and CENTER FOR A SUSTAINABLE COAST, INC., | * * * * | |
| Plaintiffs, | * * | |
| v. | * * | CV 219-050 |
| SEA ISLAND ACQUISITION, LLC, | * * | |
| Defendant. | * | |

O R D E R

Before the Court is Defendant Sea Island Acquisition, LLC's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. 6.) The motion has been fully briefed and is ripe for review. For the following reasons, Defendant's motion is **DENIED** at this time.

I. BACKGROUND

The facts stated herein are taken from Plaintiffs' complaint (Doc. 1) and are assumed to be true for the purpose of deciding Defendant's motion to dismiss.

A. The Dispute

On January 10, 2013, Defendant applied to the United States Army Corps of Engineers ("Corps") for a Nationwide Permit Number 39 ("NWP 39") to fill 0.49 acres of wetland at or near 100 Salt

Marsh Lane, St. Simons Island, Georgia ("Wetland"). (Compl., ¶ 2.) NWP 39 permits are general Section 404 permits under the Clean Water Act ("CWA") allowing "fill material to be discharged into non-tidal waters of the United States for the construction or expansion of commercial and institutional building foundations and building pads and attendant features that are necessary for the use and maintenance of the structures." (Id. ¶¶ 5-6.) Defendant stated its purpose for seeking the NWP 39 and filling the Wetland was to construct an office building and accompanying parking lot. (Id. ¶ 2.)

On February 20, 2013, the Corps authorized Defendant's NWP 39 to fill the Wetland. (Id. ¶ 3.) The NWP 39 initially carried a two-year term set to expire on February 20, 2015. (Id.) Several years after the initial authorization, the Corps extended Defendant's NWP 39 through March 18, 2017, with an additional year to complete work. (Id. ¶ 4.)

Between February 20, 2013, and March 27, 2013, Defendant filled the Wetland. (Id. ¶ 114.) Defendant never constructed the commercial structure that served as its purpose for seeking the NWP 39 and currently possesses no plans to build the structure. (Id. ¶ 7.) Instead, Defendant landscaped the Wetland with permanent sodding. (Id. ¶¶ 7, 116.) According to Plaintiffs, Defendant never intended to construct a commercial structure on

the fill and intentionally misled the Corps as to its stated purpose in order to obtain the NWP 39. (Id. ¶ 15.)

Because, according to Plaintiffs, Defendant was not entitled to a nationwide permit for its actual use of the Wetland, Defendant would have needed to obtain an individual Section 401 or 404 permit to fill the Wetland. (Id. ¶ 16.) The process to obtain an individual permit is more stringent than the process for a nationwide permit. (Id. ¶¶ 18-19, 23.) As part of the more rigorous procedure, applications for individual permits provide opportunities for meaningful public participation. (Id. ¶ 23.)

Dunbar Creek is a body of water downstream of the Wetland. (Id. ¶ 39.) Wetlands serve as filters and barriers for downstream bodies of water. (Id. ¶ 40.) Therefore, Defendant's filling of the Wetland removed protection for Dunbar Creek. (Id. ¶ 41.)

**B. The Plaintiffs**

Plaintiff The Glynn Environmental Coalition, Inc. ("GEC") is a non-profit corporation committed to assuring environmental and economic benefits for citizens of Glynn County, Georgia. (Id. ¶ 27.) Plaintiff GEC monitors the water quality of Dunbar Creek and provides remediation when required. (Id. ¶ 43.) Plaintiff GEC's members reside in Glynn County, Georgia, including St. Simons Island, Georgia, and Sea Island, Georgia. (Id. ¶ 32.) A portion of Plaintiff GEC's members live close to the Wetland. (Id. ¶ 33.) Additionally, Plaintiff GEC owns property within one-half of a

3

mile of the Wetland. (Id. ¶ 36.) Plaintiff GEC and its members attempt to protect their interests through participation at public hearings addressing environmental matters particular to coastal Georgia. (Id. ¶ 27.) When public hearings related to Plaintiff GEC's missions arise, Plaintiff GEC notifies its members of the hearing. (Id. ¶ 34.)

Plaintiff Center for a Sustainable Coast ("CSC," and collectively with GEC, "Plaintiffs") is a non-profit corporation committed to protecting and conserving Georgia's natural, historic, and economic resources. (Id. ¶ 28.) Plaintiff CSC acts to protect coastal wildlife, water quality, tidal marshes and fresh water. (Id.) A portion of Plaintiff CSC's members live on St. Simons Island, Georgia. (Id. ¶ 37.)

Together, Plaintiffs possess a shared interest in protecting coastal Georgia and approximate wetlands. (Id. ¶ 30.) Had Defendant sought an individual permit rather than an NWP 39, Plaintiffs would have notified their members of the public hearings related to the individual permit application. (Id. ¶¶ 35, 38.) Plaintiffs' members enjoy recreational activities on Dunbar Creek such as boating, kayaking, and fishing and claim Defendant's filling of the Wetland harmfully impacted Dunbar Creek and potentially negatively impacted Plaintiffs' members' future enjoyment of those recreational activities on Dunbar Creek. (Id. ¶¶ 42, 44.)

## II. LEGAL STANDARD

### A. Rule 12(b)(6) – Failure to State a Claim

In considering a motion to dismiss under Rule 12(b)(6), the Court tests the legal sufficiency of the complaint. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), *overruled on other grounds by* Davis v. Scherer, 468 U.S. 183 (1984). Pursuant to Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant fair notice of both the claim and the supporting grounds.[1] Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true,[2] to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). The plaintiff must plead "factual content that allows the court to draw the reasonable inference that the

---

[1] As to at least one of Plaintiffs' claims, Count V, Plaintiffs allege that Defendant intentionally and maliciously misled the Corps. (Compl., ¶¶ 15, 169.) Plaintiffs seem to acknowledge that in asserting this claim, they are required to allege facts with particularity. (Resp. Opp'n Mot. to Dismiss, Doc. 11, at 23.) For the reasons set forth herein, however, the Court need not decide whether Federal Rule of Civil Procedure 9(b) governs certain of Plaintiffs' claims at this time.

[2] The Court must accept all well-pleaded facts in the complaint as true and construe all reasonable inferences therefrom in the light most favorable to the plaintiff. Garfield v. NDC Health Corp., 466 F.3d 1255, 1261 (11th Cir. 2006).

5

defendant is liable for the misconduct." Id. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. A plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). Furthermore, "the court may dismiss a complaint pursuant to [Rule] 12(b)(6) when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993).

**B. Rule 12(b)(1) - Standing**

"The Constitution of the United States limits the subject matter jurisdiction of federal courts to 'Cases' and 'Controversies.'" CAMP Legal Defense Fund, Inc. v. City of Atlanta, 451 F.3d 1257, 1269 (11th Cir. 2006) (citing U.S. CONST. art. III, § 2). "[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). Therefore, standing is "the threshold question in every federal case, determining the power of the court to entertain the

suit." CAMP Legal Defense Fund, 451 F.3d at 1269 (quoting Warth v. Seldin, 422 U.S. 490, 499 (1975)). "The party invoking federal jurisdiction bears the burden of establishing the[] elements" of standing. Lujan, 504 U.S. at 561.

In order to establish standing, Plaintiffs must demonstrate requirements commonly referred to as (1) injury, (2) traceability, and (3) redressability. See Koziara v. City of Casselberry, 392 F.3d 1302, 1304-05 (11th Cir. 2004) (citing Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180-81 (2000)). The injury component requires a showing that the plaintiff suffered an "injury-in-fact." Lujan, 504 U.S. at 560. An injury-in-fact is defined as "an invasion of a legally protected interest which is (a) concrete and particularized, . . . and (b) actual or imminent, not conjectural or hypothetical." Id. at 560 (citations and internal quotation marks omitted). Traceability demands a causal connection "between the asserted injury-in-fact and the challenged action of the defendant." Shotz v. Cates, 256 F.3d 1077, 1081 (11th Cir. 2001) (citation omitted). Finally, the plaintiff must demonstrate that the injury-in-fact is redressable should plaintiff receive a favorable decision. Id.

Although Defendant argues that Plaintiffs only assert associational standing, the Court finds a possibility of direct standing at least as to Plaintiff GEC. Some appellate courts have recognized an organization's direct standing when the complaint

7

alleges frustration of its mission and diversion of its resources. See La Asociación de Trabajadores de Lake Forest v. City of Lake Forest, 624 F.3d 1083, 1088 (9th Cir. 2010); see also Arcia v. Fla. Sec'y of State, 772 F.3d 1335, 1341 (11th Cir. 2014). Otherwise, an "association may have standing solely as the representative of its members," notwithstanding "the absence of injury to itself." Warth, 422 U.S. at 511. An organization possesses associational standing when: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Doe v. Stincer, 175 F.3d 879, 882 (11th Cir. 1999) (quoting Hunt v. Wash. State Apple Advert. Comm'n, 432 U.S. 333, 343 (1977)). "For purposes of ruling on a motion to dismiss for want of standing, . . . the trial . . . court[] must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." Warth, 422 U.S. at 501.

### III. DISCUSSION

The Court addresses the issues of direct and associational standing in turn.

## A. Plaintiff GEC - Direct Standing

Although the Court refrains from expressly concluding whether either of the organizations here may assert direct standing, the only allegation the Court discerns that may confer direct standing to Plaintiff GEC is Plaintiffs' allegation that Plaintiff GEC monitors the water quality and provides remediation services to Dunbar Creek when necessary.[3] Despite these allegations, Plaintiffs offer nothing in the complaint other than conjectural and conclusory allegations that (1) the development of wetlands generally removes a barrier for downstream bodies of water and (2) the filling of the Wetland harmfully impacted Dunbar Creek. Plaintiffs claim that the removal of the barrier "effectively" harmed Dunbar Creek, but they provide no citation to the complaint or other document supporting this argument. (Resp. Opp'n Mot. to Dismiss, Doc. 11, at 15.) Plaintiffs offer no specific factual allegations that Plaintiff GEC's testing of the water quality at Dunbar Creek found a deterioration of the water quality despite their contention Defendant filled the Wetland between February 2013 and March 2013, seven years ago. Furthermore, Plaintiffs

---

[3] Upon review of the complaint, the Court finds no allegations potentially conferring direct standing to Plaintiff CSC.

9

fail to allege any required remediation of Dunbar Creek resulting from deterioration of the water quality.

Therefore, the complaint lacks factual allegations to confer direct standing as to Plaintiff GEC. No factual allegations assert a specific injury-in-fact that Plaintiff GEC suffered resulting from Defendant's fill.

**B. Associational Standing**

As for the injury-in-fact of Plaintiffs' members, the Court finds insufficient factual allegations to confer standing. Plaintiffs argue four different injuries-in-fact: (1) environmental harm; (2) recreational harm; (3) aesthetic harm; and (4) procedural harm. At the outset, the Eleventh Circuit recently clarified the requirement to establish injury when a plaintiff depends on associational standing. See Ga. Republican Party v. Sec. Exch. Comm'n, 888 F.3d 1198, 1203-05 (11th Cir. 2018). Relying on Summers v. Earth Island Inst., 555 U.S. 488 (2009), Ga. Republican Party instructed that to establish associational standing, "an organization must 'make specific allegations establishing that at least one identified member has suffered or will suffer harm.'" 888 F.3d at 1203 (quoting Summers, 555 U.S. at 498). The Eleventh Circuit continued, "We cannot accept an organization's 'self-descriptions of its membership regardless of whether it is challenged.'" Id. (quoting Summers, 555 U.S. at 499).

In Ga. Republican Party, the Eleventh Circuit ultimately concluded that the plaintiff "failed to put forward sufficient factual support to show that it has, or will, suffer an injury in fact . . . to establish standing under any theory." Id. at 1204-05. Here, the Court is unaware of specific allegations of a member that has suffered harm or will suffer harm in the future. Plaintiffs generally discuss their members and their residences and that the members would have attended an individual permit hearing and recreate in Dunbar Creek. Plaintiffs offer only that Defendant's conduct potentially impacts Plaintiffs' members' future enjoyment of their recreational activities at Dunbar Creek. "'[W]hile it is certainly possible — perhaps even likely — that one individual will' suffer an injury" from Defendant's conduct, "that speculation does not suffice." Id. at 1204 (quoting Summers, 555 U.S. at 499).

Plaintiffs' complaint cannot satisfy their burden of establishing an environmental, recreational, or aesthetic harm. Plaintiffs' filings are replete with conclusory and speculative assertions that Dunbar Creek has been negatively impacted. (See Resp. Opp'n Mot. to Dismiss, at 15-17.) Nothing points to specific injuries suffered by specific members or that harm to any member is certain.

Plaintiffs' complaint is juxtaposed with cases where courts found associational standing. In Jones Creek Inv'rs, LLC v.

11

Columbia Cty., an association's member affied as to his difficulty navigating a kayak because "sediment deposited at the convergence of the rivers created a shallow channel and increased vegetation." 98 F. Supp. 3d 1279, 1298 (S.D. Ga. 2015). In the same case, a separate member swore to the negative impact the sediment had on the aesthetics of the river where his home was located. Id.; see also Ouachita Watch League v. Jacobs, 463 F.3d 1163, 1172 (11th Cir. 2006) (finding declarations satisfied injury-in-fact burden for associational standing); Sierra Club v. Johnson, 436 F.3d 1269, 1276-79 (11th Cir. 2006) (same); Sierra Club v. Tenn. Valley Auth., 430 F.3d 1337, 1345 (11th Cir. 2005) (same). Plaintiffs assert that their members' activities at Dunbar Creek are potentially impacted. But, "the Supreme Court has 'repeatedly reiterated that "threatened injury must be *certainly impending* to constitute injury in fact," and that "allegations of *possible* future injury" are not sufficient.'" Ga. Republican Party, 888 F.3d at 1202 (emphasis in original) (quoting Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409 (2013) (quoting Whitmore v. Arkansas, 495 U.S. 149, 158 (1990))). Because Plaintiffs fail to establish any of their members suffered a concrete injury, associational standing is lacking.

The above conclusion is true even if Plaintiffs establish a procedural injury. To assert a procedural injury, the plaintiff must connect the procedural injury to a separate concrete interest.

Region 8 Serv. Timber Purchasers Council v. Alcock, 993 F.2d 800, 810-11 (11th Cir. 1993) (citing Lujan, 504 U.S. at 572 n.7). Accordingly, for the reasons above, the Court need not decide whether Plaintiffs assert a procedural injury because they are unable to tie any alleged procedural injury to a concrete interest to establish standing. For these reasons, Plaintiffs fail to establish they possess Article III associational standing, and the Court need not address the traceability and redressability prongs. Nevertheless, Plaintiffs are permitted one more opportunity to make a standing showing. See Warth, 422 U.S. at 501 ("[I]t is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing.").

### IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (Doc. 6) is **DENIED**. Plaintiffs are **GRANTED** leave to amend their complaint and shall file their amended complaint within **FOURTEEN (14) DAYS** from the date of this Order. Defendant may again move to dismiss at the appropriate time.

**ORDER ENTERED** at Augusta, Georgia, this 9th day of March, 2020.

_____
J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA