IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

THE GLYNN ENVIRONMENTAL          *
COALITION, INC.; CENTER FOR A    *
SUSTAINABLE COAST, INC.; and     *
JANE FRASER,                     *
                                 *
     Plaintiffs,                 *          CV 219-050
                                 *
          v.                     *
                                 *
SEA ISLAND ACQUISITION, LLC,     *
                                 *
     Defendant.                  *
                                 *

_____

**O R D E R**

_____

Before the Court is Defendant Sea Island Acquisition, LLC's ("Sea Island") motion to dismiss. (Doc. 26.)  The motion has been fully briefed and is ripe for review.  For the following reasons, Defendant's motion is **GRANTED**.

**I.   BACKGROUND**

**A. Procedural History**

Plaintiffs The Glynn Environmental Coalition ("GEC") and Center for a Sustainable Coast ("CSC") initially filed suit on April 17, 2019 against Defendant Sea Island for alleged violations of the Clean Water Act ("CWA"), 33 U.S.C. § 1251 *et seq.*  (Doc. 1.)  Subsequently, the Court found Plaintiffs GEC and CSC failed

to show standing and allowed them to amend their complaint.  (See Mar. 9, 2020 Order, Doc. 23, at 13.)  Plaintiffs GEC and CSC filed their amended complaint on March 23, 2020 and joined Jane Fraser ("Fraser") as a plaintiff to the suit.  (See Am. Compl., Doc. 24.) Defendants now move to dismiss Plaintiffs' amended complaint for lack of standing and failure to state claim.  (Doc. 26.)

## B. The Dispute

The underlying facts of the dispute are outlined in the Court's last Order, so the Court will only summarize them here. (See Mar. 9, 2020 Order, at 1-3.)  On February 20, 2013, the United States Army Corps of Engineers ("Corps") authorized Defendant to fill 0.49 acres of wetland ("Subject Wetland") located on St. Simons Island, Georgia under Nationwide Permit Number 39 ("NWP 39").  (Am. Compl., at 1.)  Plaintiffs allege Defendant failed to construct a commercial structure on Subject Wetland in violation of NWP 39.  (Id. at 3.)  Because, according to Plaintiffs, Defendant never had plans to build a commercial structure, Defendant was required to obtain an individual Section 401 and 404 permit to fill Subject Wetland, which is a more stringent process that requires a public notice and comment period.  (Id. at 3-4, 7.)

Plaintiffs contend that by filling Subject Wetland, Defendant has harmed the surrounding vegetation and habitat and the aesthetic and recreational uses of Dunbar Creek, a body of water downstream

2

of Subject Wetland. (<u>Id.</u> at 9-10.) Additionally, Plaintiffs allege the water quality at Dunbar Creek has diminished since the fill of Subject Wetland. (<u>Id.</u>)

## C. The Plaintiffs

A description of Plaintiffs GEC and CSC is included in the Court's previous Order. (<u>See</u> Mar. 9, 2020 Order, at 3-4.) Plaintiff Fraser is a member of GEC and CSC. (Aff. of Fraser, Doc. 24-12, at 1.) She owns interests in real property that is "in the immediate vicinity" of Subject Wetland. (Am. Compl., at 7.) She alleges she recreates in and enjoys the aesthetics of wetlands and marshes on St. Simons and Sea Island. (Aff. of Fraser, at 2.) Moreover, she is an active member of numerous conservation and environmental protection organizations and alleges she would have attended public meetings about Subject Wetland if any had taken place. (<u>Id.</u>)


## II.   LEGAL STANDARD

In order to establish standing under Article III of the United States Constitution, Plaintiffs have the burden to show:

> (1) [they have] suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and [(3)] it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc., 528 U.S. 167, 180-81 (2000) (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992)). Plaintiffs assert standing is proper because Plaintiff Fraser has standing to sue in her individual capacity and Plaintiffs GEC and CSC have associational standing.[1]

An organization has standing to sue on behalf of its members when (1) one of its members would otherwise have standing to sue individually; (2) the member's interests at stake in the suit are germane to the organization's purpose; and (3) "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Id. (citing Hunt v. Wash. State Apple Advert. Comm'n, 432 U.S. 333, 343 (1977)). The "organization must 'make specific allegations establishing that at least one identified member has suffered or will suffer harm.'" Ga. Republican Party v. Sec. & Exch. Comm'n, 888 F.3d 1198, 1203 (11th Cir. 2018) (quoting Summers v. Earth Island Inst., 555 U.S. 488, 498 (2009)). The only "identified member" of GEC and CSC in Plaintiffs' amended complaint is Plaintiff Fraser. (See Aff. of Fraser, at 1.) Thus, standing turns on whether Plaintiff Fraser has standing to sue in her individual capacity. If Plaintiff

---

[1] The Court considered direct standing as to Plaintiff GEC in its prior Order and found that the complaint lacked factual allegations asserting a specific injury-in-fact Plaintiff GEC suffered resulting from Defendant's fill of Subject Wetand. (See Mar. 9, 2020 Order, at 9-10.) Upon review of Plaintiffs' amended complaint, the Court finds no additional facts have been asserted to confer direct standing as to Plaintiff GEC. Additionally, the Court finds no allegations conferring direct standing as to Plaintiff CSC.

Fraser has standing, the Court need not decide whether Plaintiffs GEC and CSC have standing. See Ouachita Watch League v. Jacobs, 463 F.3d 1163, 1170 (11th Cir. 2006) ("So long as one party has standing, other parties may remain in the suit without a standing injury." (citing Clinton v. City of New York, 524 U.S. 417, 434-36 (1998))).

When challenging "standing via a motion to dismiss, '[the] trial . . . court[] must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.'" Region 8 Forest Serv. Timber Purchasers Council v. Alcock, 993 F.2d 800, 806 (11th Cir. 1993) (quoting Warth v. Seldin, 422 U.S. 490, 501 (11th Cir. 1975)). Moreover, the Court "is not restricted to the face of [the] complaint—it is free to rely on affidavits submitted by the plaintiff in support of the complaint." Id.

### III. DISCUSSION

Plaintiff Fraser argues she has suffered environmental and procedural injuries. The Court discusses each in turn.

### A. Environmental Injuries

First, Plaintiffs generally allege that "[w]etlands serve vital purposes, such as acting as natural barriers to filter pollutants out of downstream tributaries." (Doc. 29, at 2-3.) Plaintiffs also argue "[t]he destruction of [Subject Wetland]

allows non-point source pollutants, such as oil run off from the nearby parking lot . . . to make their way into Dunbar Creek." (Id. at 3.)   However, Plaintiffs offer no specific factual allegations that the fill of Subject Wetland has caused pollution in Dunbar Creek.   These are the same type of conclusory and speculative assertions that were unconvincing to the Court in Plaintiffs' initial complaint.   Although it may be true that wetlands serve as "natural barriers," and the destruction of such may in fact cause an increase in pollution, Plaintiffs have not alleged with specificity that the fill of 0.49 acres of Subject Wetland in fact caused an increase of pollution in Dunbar Creek or any property in its vicinity.   The mere possibility of pollution is not enough.   See Ga. Republican Party, 888 F.3d at 1202 ("An injury in fact must be 'concrete and particularized and . . . actual or imminent, not conjectural or hypothetical.'" (quoting Friends of the Earth, 528 U.S. at 180)).

Moreover, Plaintiff Fraser alleges she owns "real property that adjoins and includes Sea Island Road and is located in the immediate vicinity of the Subject Wetland." (Doc. 29, at 4; Am. Compl., at 7-8.)   She states that "[f]illing the Subject Wetland . . . caused . . . disturbance to habitats surrounding the Subject Wetland" and "[t]he Subject Wetland was habitat for wildlife that is not stationary but migrates to Dunbar Creek and the park property on Sea Island Road that [she and] GEC . . . own a real

property interest [in]." (Doc. 29, at 4-5.) These allegations
are also conjectural and conclusory because Plaintiffs do not
allege that any specific disturbance to Plaintiffs' property
interest has or will occur. See, e.g., Mrosek v. City of Peachtree
City, No. 3:12-CV-0094, 2014 WL 11279463, at *3 (N.D. Ga. Dec. 22,
2014), aff'd, 631 F. App'x 757 (11th Cir. 2015) (finding the
plaintiff's testimony that "buildup in the stream and pond on his
property [due to the defendant's actions] . . . resulted in the
deposit of lawn chairs, trash, bottles, a car tire and other
pollutants" was not conclusory and satisfied the injury-in-fact
requirement).

Additionally, despite Plaintiffs offering the affidavit of
Matthew Schweisberg, a "professional wetland scientist," as
support of these allegations, the affidavit does not allege any
specific harms to Dunbar Creek either. (See Doc. 24-13.) Instead,
the affidavit merely speculates the type of harm typically
associated with the fill of wetlands. Here, Plaintiffs have
offered no allegation of actual harm as a result of the fill of
Subject Wetland and therefore have failed to allege an injury-in-
fact required to confer standing.

"While generalized harm to . . . the environment will not
alone support standing, if that harm in fact affects the
recreational or even the mere [a]esthetic interests of the
plaintiff, that will suffice." Summers, 555 U.S. at 494 (citing

7

Sierra Club v. Morton, 405 U.S. 727, 734-736 (1972)). "[E]nvironmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons 'for whom the aesthetic and recreational values of the area will be lessened' by the challenged activity." Friends of the Earth, 528 U.S. at 183 (quoting Morton, 405 U.S. at 735). Plaintiff Fraser alleges she "regularly recreate[s] in and enjoy[s] the aesthetics of the wetlands and marshes on St. Simons and Sea Island, including the wetlands associated with Dunbar Creek." (Aff. of Fraser, at 2.) She "derived aesthetic pleasure from the Subject Wetland and other similar wetland habitats in Glynn County by viewing the area in its natural habitat." (Id.) Specifically, Plaintiff Fraser alleges since the filling of the wetland, she has noticed "a decrease in natural vegetation and wildlife in the immediate area of the Subject Wetland and in the Dunbar Creek area." (Id.) Additionally, Plaintiff Fraser alleges she observes Dunbar Creek "on a daily basis" when she drives over it on Sea Island Road, and she has "noticed a significant difference in the water quality" since the fill of Subject Wetland. (Id.)

Defendants argue "Plaintiffs' Brief never explains specifically *how* allegedly diminished water quality and habitats have infringed on [Plaintiff Fraser's] recreational or aesthetic pursuits." (Doc. 31, at 6.) The Court agrees. Plaintiffs cite to Jones Creek Invs., LLC v. Columbia Cnty., 98 F. Supp. 3d 1279,

197-98 (S.D. Ga. 2015) for the assertion that "an injury in fact exists when the recreational value of the affected area has been diminished." (See Doc. 29, at 7.) This is true; however, it is Plaintiffs' burden to show that an actual recreational or aesthetic harm exists. In Jones Creek, sediment deposit, as a result of the defendant's actions, created shallow channels and increased vegetation in certain rivers. The organizational plaintiff asserted the sediment deposit directly affected their members' interest in the rivers' water quality and supported this assertion with affidavits of members alleging they could no longer kayak or lead commercial kayaking tours on parts of the water affected. Id. at 1298. The Court found these allegations were enough to establish an injury-in-fact. Here, Plaintiff Fraser merely states she "recreates in" wetlands and associated areas generally, including Dunbar Creek. However, she does not describe what kind of recreation has been affected and how that recreation has been affected by Defendant's actions.[2]

Plaintiffs also argue they have asserted an injury-in-fact similar to that found in Sierra Club v. U.S. Army Corps of Eng'rs, 935 F. Supp. 1556 (S.D. Ala. 1996).[3] In Sierra Club, the

---

[2] Likewise, Plaintiff Fraser states she "enjoy[s] the aesthetics of the wetlands," but she does not allege she ever actually visited Subject Wetland prior to its fill. (Aff. of Fraser, at 2.) Stating an interest in the preservation of wetlands generally, even for aesthetic purposes, is not sufficient to show an injury-in-fact.
[3] Plaintiffs incorrectly refer to Sierra Club as "Johnson" in their response in opposition. (Doc. 29, at 8-9.)

organizational plaintiffs alleged that their "members regularly use and enjoy the environment, waters, wetlands, air and lands of Alabama, including Dog River, the lands in the Dog River Basin, and the benefits from the wetlands on this site." Id. at 1569. Plaintiffs argue this statement alone shows an injury-in-fact. (See Doc. 29, at 9.) However, Plaintiffs leave out the fact that in addition to the above assertion the "plaintiffs allege[d] that their members engage in various activities, such as fishing and bird watching . . . and that their ability to enjoy those activities will be impaired by the destruction of the wetlands at issue . . . ." Sierra Club, 935 F. Supp. at 1569. Here, Plaintiff Fraser has not alleged she recreated in Subject Wetland prior to its fill, nor has she alleged any specific recreation in Dunbar Creek has been diminished since the fill of Subject Wetland. Although Plaintiffs state they "identify particular facts that demonstrate Defendant's activity devalued Plaintiffs' recreational and aesthetic interest in the Subject Wetland and Dunbar Creek," the Court finds none. (See Doc. 29, at 8.)

Plaintiffs' reliance on Cahaba Riverkeeper v. U.S. Env't Prot. Agency, 938 F.3d 1157 (11th Cir. 2019) is similarly misguided. In that case, to prove standing, the organizational plaintiffs submitted declarations from their members that the Eleventh Circuit summarized as follows:

> [T]hey have been swimming, kayaking, and fishing in those waterways for years . . . [and defendant's actions] threaten[] their enjoyment of their waterways. They also claim to have "witnessed the pollution" of the waterways and "attribute much of this pollution to poor regulation of pollution sources under the Alabama NPDES permit program . . . and poor oversight of the Alabama NPDES permit program by EPA." They also state that they would "recreate in these waters more and enjoy their recreational activities more, if EPA required that Alabama's NPDES program fully complied with the minimum requirements of 40 C.F.R. pt. 123."

Id. at 1162–63. The Eleventh Circuit found that "those statements are enough to establish injury in fact." Id. at 1163. As stated above, here, Plaintiff Fraser has not alleged that any specific recreational activity she partakes in has been diminished by the fill of Subject Wetland.

Plaintiffs' citation to Sierra Club v. Tenn. Valley Auth., 430 F.3d 1337 (11th Cir. 2005) is also unconvincing. Plaintiff Fraser alleges "she drives over the Creek on Sea Island Road . . . and has noticed a significant difference in the water quality in Dunbar Creek." (Doc. 29, at 9.) In TVA, one organizational member stated in his affidavit that "he regularly saw plumes of smoke from the Colbert plant as he drove across a bridge over the Tennessee River to get to high school." TVA, 430 F.3d at 1345. Plaintiffs argue that this is enough to show an injury-in-fact. (See Doc. 29, at 9.) However, once again, Plaintiffs fail to give the full picture. That organizational member in TVA also alleged he found it frightening to breathe the polluted air in the area

11

and that he refrained from boating and hunting in the area because of the emissions by the defendant's power plant.[4]  Id.  If merely driving by Dunbar Creek and alleging a change in its water clarity was enough to establish an injury-in-fact, then anyone driving past it could establish standing.  Plaintiffs allegations are nothing more than general grievances.  See Carney v. Adams, 141 S. Ct. 493, 498 (2020) ("[A] grievance that amounts to nothing more than an abstract and generalized harm . . . does not show standing." (citations omitted)); Region 8, 993 F.2d at 809 ("[T]he injury alleged must be personal.").  Thus, Plaintiff Fraser has failed to show an environmental injury sufficient to confer standing.[5]  Because the Court finds Plaintiff Fraser does not have standing to sue in her own right, Plaintiffs GEC and CSC do not have associational standing.  See Friends of the Earth, 528 U.S. at 181.

---

[4] For additional examples of members of organizations showing standing through recreational and aesthetic injuries see Sierra Club, Inc. v. St. Johns River Water Mgmt. Dist., No. 614CV1877, 2015 WL 6814566, at *5 (M.D. Fla. Nov. 6, 2015) (finding injury-in-fact where organizational plaintiff "avers that its members engage in various forms of aesthetic and recreational activities . . . such as hiking, camping, and fishing" (internal quotations omitted)) and Fla. Pub. Int. Rsch. Grp. Citizen Lobby, Inc. v. EPA, 386 F.3d 1070, 1084 (11th Cir. 2004) (finding injury-in-fact where plaintiffs provided detailed affidavits averring pollution severely limited activities such as sailing, swimming, fishing, and canoeing).

[5] Plaintiffs also argue they have an "aesthetic interest" in Subject Wetland itself because it "is visible from the road." (Doc. 29, at 10.)  Plaintiffs cite to Jones Creek but offer no explanation as to how Subject Wetland being visible from the road is sufficient to establish an injury-in-fact.

## B. Procedural Injuries

To establish an injury-in-fact that is procedural in nature, a "plaintiff must demonstrate that 'the procedures in question are designed to protect some threatened concrete interest of his.'" Sierra Club v. Johnson, 436 F.3d 1269, 1277 (11th Cir. 2006) (quoting Lujan, 504 U.S. at 573 n.8). "[T]he question of whether a plaintiff has a procedural right is inseparable from the requirement of a concrete injury." Id. That is because procedural injuries like "rights to participation, information, and informed decision making are generalized grievances which do not state an Article III controversy. . . . [Those] injuries are not peculiar to [plaintiffs], but rather are shared by all citizens." Region 8, 993 F.2d at 810. Thus, if Plaintiffs could show "an injury to a separate concrete interest, they would have standing to assert a procedural injury." Id. Here, the Court determined Plaintiffs have not suffered a concrete injury, therefore, Plaintiffs do not have standing to assert their procedural injuries. Accordingly, Plaintiffs fail to establish they have suffered an injury-in-fact; therefore, the Court need not address the traceability and redressability prongs of Article III Standing.[6]

---

[6] Because Plaintiffs do not have standing to bring this suit, the Court need not address Defendant's remaining arguments under Federal Rule of Civil Procedure 12(b)(6).

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (Doc. 26) is **GRANTED** and this matter is **DISMISSED**. The Clerk is directed to **TERMINATE** all pending motions and deadlines, if any, and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this 27th day of January, 2021.

J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

14