[PUBLISH]

# In the
# United States Court of Appeals
# For the Eleventh Circuit

_____

No. 21-10676

_____

THE GLYNN ENVIRONMENTAL COALITION, INC.,
CENTER FOR A SUSTAINABLE COAST, INC.,
JANE FRASER,

                                    Plaintiffs-Appellants,

versus

SEA ISLAND ACQUISITION, LLC,

                                      Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Georgia
D.C. Docket No. 2:19-cv-00050-JRH-BWC

_____

Case 2:19-cv-00050-JRH-BWC   Document 42   Filed 04/01/22   Page 2 of 18
USCA11 Case: 21-10676   Date Filed: 03/03/2022   Page: 2 of 16

2                Opinion of the Court                21-10676

Before WILLIAM PRYOR, Chief Judge, JORDAN, Circuit Judge, and BROWN,[*] District Judge.

WILLIAM PRYOR, Chief Judge:

This appeal concerns whether a local environmentalist who regularly visits an area of wetlands to recreate and enjoy their natural beauty has standing to complain about the filling of a wetland with outside materials because it has diminished her aesthetic interest in that wetland. Because these allegations suffice to establish an injury in fact, we vacate the order of dismissal and remand for further proceedings.

## I. BACKGROUND

At this stage, we accept as true the following allegations of the complaint. Sea Island Acquisition, LLC, owns a 0.49-acre parcel of land near Dunbar Creek in Glynn County, Georgia, next to the parking lot for its nearby hotel. The parcel is considered a wetland under the Clean Water Act. When Sea Island sought to fill that parcel with outside materials, the Act required Sea Island to obtain a certification from the State of Georgia and a permit from the United States Army Corps of Engineers. *See* 33 U.S.C. §§ 1311(a), 1341(a)(1), 1344(a), (e).

---

[*] Honorable Michael L. Brown, United States District Judge for the Northern District of Georgia, sitting by designation.

Case 2:19-cv-00050-JRH-BWC   Document 42   Filed 04/01/22   Page 3 of 18
USCA11 Case: 21-10676   Date Filed: 03/03/2022   Page: 3 of 16

21-10676              Opinion of the Court                    3

The Act allows for two kinds of permits. For the first kind, an individual permit, a person seeking to fill a wetland must submit to the appropriate Corps district office a detailed application, *see* 33 C.F.R. §§ 325.1(c)–(d), 325.2(a), that includes "a list of authorizations required by other federal, interstate, state, or local agencies for the work, including all approvals received or denials already made" by those agencies, *id.* § 325.1(d). The application then undergoes "public notice and receipt of comments," *id.* § 325.5(b)(1), and the Corps issues a "decision document" that reports the view of the issuing official concerning the "probable effect of the proposed [project] on the public interest" and imposes "special conditions" on the project to the extent those conditions are appropriate to minimize environmental impact, *see id.* § 325.2(a)(6). The second kind of permit, a general permit, is valid for a period of no more than five years for activities that will not cause significant environmental harm. *See* 33 U.S.C. § 1344(e).

Nationwide Permit 39, a general permit, was issued in 2012. It allowed the filling of wetlands "for the construction . . . of commercial and institutional building foundations and . . . attendant features . . . necessary for the use and maintenance of the structures" on the wetlands. Reissuance of Nationwide Permits, 77 Fed. Reg. 10184-01, 10279 (Feb. 21, 2012). In 2012, the Georgia Environmental Protection Division issued a conditional certification for all projects that were allowed by Permit 39.

On January 10, 2013, Sea Island submitted a pre-construction notification to the Corps for its plan to fill its wetland for the

Case 2:19-cv-00050-JRH-BWC   Document 42   Filed 04/01/22   Page 4 of 18
USCA11 Case: 21-10676   Date Filed: 03/03/2022   Page: 4 of 16

4                        Opinion of the Court                21-10676

purpose of constructing a commercial building. The notification represented that Sea Island intended to fill 0.49 acres of what might be a wetland under the Act. Sea Island also sought a jurisdictional determination by the Corps of whether the parcel was a wetland. Sea Island proposed building "[r]etaining walls . . . to reduce [the] overall footprint of the project in the wetlands," as well as purchasing 3.48 wetland "mitigation credits" to offset the loss of wetlands.

On February 20, 2013, the Corps issued a preliminary jurisdictional determination that the 0.49-acre parcel of land might be a wetland, and the Corps "verified authorization" of the proposed project. The authorization lasted for two years or until Permit 39 was "modified, reissued, or revoked," plus an additional year from that time to complete the work.

Although Sea Island had represented to the Corps that it intended to construct or expand a "commercial and institutional building foundation[] . . . and [an] attendant feature[]," (Quoting Reissuance of Nationwide Permits, 77 Fed. Reg. at 10279.) "Sea Island intentionally and maliciously misrepresented" that intent. "Sea Island never intended to comply" with Permit 39 or the Georgia Conditional Permit and "only applied for [Permit 39] to save time and money." Instead, it intended to "landscape over" the wetland, which is near "its hotel, the Inn at Sea Island." "Sea Island filled" the wetland with "fill material . . . between February 20, 2013, and March 27, 2013," but it still has not erected nor has any intention to erect any buildings or structures on the wetland.

Case 2:19-cv-00050-JRH-BWC   Document 42   Filed 04/01/22   Page 5 of 18
USCA11 Case: 21-10676   Date Filed: 03/03/2022   Page: 5 of 16

21-10676                Opinion of the Court                5

Sea Island created various documents before and after its notification to the Corps that are allegedly inconsistent with its representations to the Corps. For example, Sea Island submitted a preliminary site plan to Glynn County on November 20, 2012—before its notification to the Corps—that did not show a proposed building. And the final construction plans created on November 27, 2012, evidenced that Sea Island intended to place permanent sodding on the wetland.

Finally, Sea Island made inconsistent representations regarding the presence of curb cuts in the pavement. Curb cuts would be necessary to operate an administrative office and parking lot because curb cuts lower the curb to allow cars to enter the parking lot and pedestrians to step onto the sidewalk. Even though Sea Island's application to the Corps indicated that there would be curb cuts in the pavement, the preliminary and final plats sent to the county did not show curb cuts, and the final project does not have them. Further, Sea Island placed utilities such that it would be extremely difficult, if not impossible, to add curb cuts.

The Glynn Environmental Coalition, Inc., the Center for a Sustainable Coast, Inc., and Jane Fraser sued Sea Island. The organizations are Georgia non-profit corporations. Some of their members, including Fraser, reside in Glynn County near the wetland. The organizations provide their members with information concerning environmental developments in the area.

The environmentalists alleged that Sea Island did not comply with the Act's permitting process because it filled the wetland

| 6 | Opinion of the Court | 21-10676 |
|---|---|---|

for the purpose of landscaping and not constructing a commercial structure, it did not comply with the Georgia conditional certification, the authorization under Permit 39 had expired without compliance, and the authorization was null and void because Sea Island "intentionally and maliciously misled the Corps." The environmentalists sought a declaratory judgment, an injunction "compelling Sea Island to restore" the wetland, civil penalties, and attorney's fees.

Fraser is a "resident of Glynn County" who "ha[s] lived in the area . . . for over twenty years" and is a member of both Glynn Environmental and Sustainable Coast. Fraser moved to the area "in large part due to the area's unique ecology, including its native habitat, wildlife[,] and vegetation." She "regularly recreate[s] in and enjoy[s] the aesthetics of the wetlands and marshes" in the general Dunbar Creek area. Before the fill of the wetland, Fraser "derived aesthetic pleasure" from the wetland, which she described as a "pleasing natural resource," and from "other similar wetland habitats in Glynn County by viewing the area in its *natural* habitat." (Emphasis added.) After the fill, the wetland was "replaced by *unnatural* grassed areas" and an "unnatural lawn" that is "less aesthetically pleasing." (Emphasis added.) The fill of the wetland was the partial cause of a "noticeable deterioration of the natural aesthetic beauty, water quality, and habitat of the . . . area," and Sea Island's actions "diminished" Fraser's "aesthetic and recreational value" in the wetland and "its downstream tributaries." Fraser also alleges that she "observe[s] Dunbar Creek on a daily basis" as she

Case 2:19-cv-00050-JRH-BWC   Document 42   Filed 04/01/22   Page 7 of 18
USCA11 Case: 21-10676   Date Filed: 03/03/2022   Page: 7 of 16

21-10676                Opinion of the Court                7

drives over Dunbar Creek and that she has "noticed a significant difference in the water clarity in Dunbar Creek."

Sea Island moved to dismiss the environmentalists' amended complaint for lack of standing and for failure to state a claim upon which relief could be granted. *See* FED. R. CIV. P. 12(b)(1), (6). Sea Island argued that the environmentalists' allegations did not establish that any of the parties had suffered an injury in fact and that the organizations could not establish associational standing. And it contended that, assuming the allegations established a legally cognizable injury, the complaint did not establish causation or redressability. Sea Island also contested the legal sufficiency of each of the environmentalists' claims. The environmentalists responded that they had suffered environmental, aesthetic, recreational, and procedural injuries, and that the organizations had associational standing through the standing of Fraser. The environmentalists also argued that they had adequately alleged causation and redressability, and they defended their complaint on the merits.

The district court dismissed the complaint for lack of standing on the ground that the environmentalists failed to allege an injury in fact. *See* FED. R. CIV. P. 12(b)(1). The district court addressed only Fraser's alleged aesthetic and recreational injuries, the environmentalists' alleged procedural injury, and the organizations' associational standing. The district court reasoned that Fraser had not alleged how her aesthetic and recreational interests in the area surrounding the wetland were harmed besides "conclusory and

Case 2:19-cv-00050-JRH-BWC   Document 42   Filed 04/01/22   Page 8 of 18
USCA11 Case: 21-10676   Date Filed: 03/03/2022   Page: 8 of 16

8                    Opinion of the Court                21-10676

speculative assertions" that filling the wetland would cause harm to the surrounding area and injure Fraser's aesthetic and recreational interests. The district court rejected Fraser's alleged injury to her aesthetic interest in the wetland itself because "she d[id] not allege [that] she ever actually visited" the wetland "prior to its fill." It also reasoned that Fraser's allegations regarding her recreational interests were inadequate because she never explained what activities were inhibited and how they were inhibited. The district court concluded that the environmentalists had not alleged "particular facts that demonstrate" that Sea Island's "activity devalued" the environmentalists' "recreational and aesthetic interest in the . . . [w]etland and Dunbar Creek" and so could not establish a concrete injury.

The district court also rejected the environmentalists' arguments regarding associational standing and procedural injury. "Because . . . Fraser does not have standing to sue in her own right, [the organizations] do not have associational standing." The district court also reasoned that to allege a procedural injury, a plaintiff must show "an injury to a separate concrete interest." (Quoting *Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 810 (11th Cir. 1993).) Because the environmentalists had not adequately alleged any other concrete injury, the district court concluded that they had not suffered a procedural injury.

## II. STANDARD OF REVIEW

We review the dismissal of a complaint *de novo*. *Aaron Priv. Clinic Mgmt. LLC v. Berry*, 912 F.3d 1330, 1335 (11th Cir. 2019).

Case 2:19-cv-00050-JRH-BWC   Document 42   Filed 04/01/22   Page 9 of 18
USCA11 Case: 21-10676   Date Filed: 03/03/2022   Page: 9 of 16

21-10676	Opinion of the Court	9

We accept as true the allegations in the complaint and attached exhibits and draw all reasonable inferences in favor of the plaintiffs. *Miljkovic v. Shafritz & Dinkin, P.A.*, 791 F.3d 1291, 1297 & n.4 (11th Cir. 2015).

## III. DISCUSSION

Article III standing requires a plaintiff to have "suffered an injury in fact, . . . that is fairly traceable to the challenged conduct of the defendant, and . . . that is likely to be redressed by a favorable judicial decision." *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 924 (11th Cir. 2020) (en banc) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). "Each element of standing is 'an indispensable part of the plaintiff's case' and 'must be supported in the same way as any other matter on which the plaintiff bears the burden of proof.'" *Aaron Priv. Clinic*, 912 F.3d at 1336 (quoting *Lujan v. Defs. of Wildlife* (*Lujan*), 504 U.S. 555, 561 (1992)). At the motion-to-dismiss stage, we evaluate standing by determining whether the complaint "clearly alleges facts demonstrating each element." *Id.* (quoting *Spokeo*, 578 U.S. at 338).

An injury in fact must be "concrete, particularized, and actual or imminent." *Muransky*, 979 F.3d at 925. An injury that is "conjectural or hypothetical" is constitutionally insufficient. *Id.* At the motion-to-dismiss stage, "'general factual allegations of injury' can suffice," *id.* at 924 (quoting *Lujan*, 504 U.S. at 561), so long as the complaint "plausibly and clearly allege[s] a concrete injury," *id.* (quoting *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1621 (2020)). Only factual allegations, and not legal conclusions, are relevant to

Case 2:19-cv-00050-JRH-BWC   Document 42   Filed 04/01/22   Page 10 of 18
USCA11 Case: 21-10676   Date Filed: 03/03/2022   Page: 10 of 16

10                    Opinion of the Court                    21-10676

our inquiry, and "mere conclusory statements . . . do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *accord Muransky*, 979 F.3d at 924. A conclusory statement is a legal conclusion that is "couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).

The environmentalists offer several arguments for why they have adequately alleged an injury in fact, including that Fraser suffered an aesthetic injury. Because we conclude that Fraser adequately alleged a concrete injury to her aesthetic interest in the wetland, we do not address the environmentalists' other arguments.

An individual suffers an aesthetic injury when she "use[s] the affected area" and is a person "for whom the aesthetic . . . value[] of the area will be lessened by the challenged activity." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 183 (2000) (internal quotation marks omitted); *accord Sierra Club v. Johnson*, 436 F.3d 1269, 1279 (11th Cir. 2006). An individual can meet her burden of establishing that injury at the pleading stage "by attesting that [s]he uses . . . an area affected by the alleged violations and that h[er] aesthetic . . . interests in the area have been harmed." *Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs*, 781 F.3d 1271, 1280 (11th Cir. 2015) (quoting *Sierra Club v. Tenn. Valley Auth.*, 430 F.3d 1337, 1344 (11th Cir. 2005). "Aesthetic . . . well-being" is an "important ingredient[] of . . . quality of life in our society" and is a recognized interest even though it is often

Case 2:19-cv-00050-JRH-BWC   Document 42   Filed 04/01/22   Page 11 of 18
USCA11 Case: 21-10676   Date Filed: 03/03/2022   Page: 11 of 16

21-10676                Opinion of the Court                11

"shared by the many rather than the few." *Sierra Club v. Morton*, 405 U.S. 727, 734 (1972).

Fraser "plausibly and clearly allege[d] a concrete injury" to her aesthetic interest. *See Muransky*, 979 F.3d at 924 (quoting *Thole*, 140 S. Ct. at 1621). Fraser gains aesthetic pleasure from viewing wetlands in their natural habitat. She regularly recreates in the area and sees the wetland. After the wetland was replaced with sodding, she derived less pleasure from the wetland because the habitat and vegetation were unnatural. These alleged injuries are sufficient at the pleading stage because Fraser need only allege "that [s]he uses" the "area affected" and that "h[er] aesthetic . . . interests . . . have been harmed." *Black Warrior*, 781 F.3d at 1280 (internal quotation marks omitted). Her allegations are neither a mere legal conclusion that she suffered an injury in fact nor a legal conclusion that she suffered an injury in fact "couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal quotation marks). Fraser explained how and why she derived aesthetic pleasure from the wetland that Sea Island filled. She then explained why her aesthetic interest in the wetland was harmed.

Sea Island makes three arguments in defense of the dismissal. First, it argues that the district court correctly concluded that Fraser needed to have "actually visited" the wetland "prior to its fill." The district court understood Fraser to have alleged only that "she enjoys the aesthetics of the wetlands" generally, so it reasoned that Fraser's allegations were "not sufficient to show and injury-in-fact." (Alterations adopted.) Second, Sea Island argues that Fraser

Case 2:19-cv-00050-JRH-BWC   Document 42   Filed 04/01/22   Page 12 of 18
USCA11 Case: 21-10676   Date Filed: 03/03/2022   Page: 12 of 16

12                     Opinion of the Court                  21-10676

must have "entered upon" the wetland to have an aesthetic interest in it. Third, Sea Island seems to argue that that the environmentalists categorically have no interest of any kind in the wetland because it is private property. We address and reject each contention in turn.

Contrary to Sea Island's argument, Fraser did specifically allege in her affidavit that she "derived aesthetic pleasure" from the wetland "[p]rior to Sea Island['s] . . . fill" of the wetland. But, in any event, Fraser was not required to visit the wetland before it was filled. Even if she did not previously derive pleasure from the wetland, Fraser suffers an injury in fact if she cannot now derive aesthetic pleasure from it because it was filled. For example, the Supreme Court has held that plaintiffs who alleged that they "would [have] like[d] to" have engaged in certain recreational activities but did not because of the defendant's alleged conduct had standing, *Friends of the Earth*, 528 U.S. at 181–83, even though they had never used the affected area or had done so only once or twice years before, *id.* at 200 (Scalia, J., dissenting).

Fraser also need not physically step foot on or use the wetland to have an aesthetic interest in it. Sea Island quotes language from the Supreme Court that "a plaintiff claiming injury from environmental damage must use the area affected by the challenged activity and not an area roughly in the vicinity of it." (Quoting *Lujan*, 504 U.S. at 565–66 (characterizing the holding in *Lujan v. Nat'l Wildlife Fed'n* (*Nat'l Wildlife Fed'n*), 497 U.S. 871, 887–889

Case 2:19-cv-00050-JRH-BWC   Document 42   Filed 04/01/22   Page 13 of 18
USCA11 Case: 21-10676   Date Filed: 03/03/2022   Page: 13 of 16

21-10676                Opinion of the Court                         13

(1990).) But closer examination of that decision reveals that the Supreme Court does not require physical occupation of the wetland.

*National Wildlife Federation* is distinguishable. There, the plaintiffs used unspecified parts of a two-million-acre area of Wyoming "in the vicinity of" the 4,500 acres that were affected by the government's challenged action. 497 U.S. at 886–87 (emphasis omitted) (internal quotation marks omitted). All but 6,500 acres of that two-million-acre area had been open to mining and oil and gas leases, and the government had opened 4,500 of the remaining land to leases, leaving only 2,000 acres closed to such leases. *See id.* at 887. The plaintiffs alleged that the government action harmed their "recreational use and aesthetic enjoyment of federal lands." *Id.* at 886 (internal quotation marks omitted). At the summary judgment stage, the Court concluded that the plaintiffs had not established that those interests were affected because "averments" that the plaintiffs "use[d] *unspecified* portions of an immense tract of territory" did not satisfy the summary judgment standard even if they would have been enough to survive a motion to dismiss. *Id.* at 889 (emphasis added).

In contrast with *National Wildlife Federation*, Fraser alleged that she derived pleasure from the half-acre wetland that Sea Island filled, that she also has seen it after it was filled, and that she has observed the immediate area surrounding the wetland. Those allegations differ from an averment that a person's aesthetic interest is harmed solely because he uses part of a two-million-acre area, a small portion of which was opened to mining and oil and gas leases.

Case 2:19-cv-00050-JRH-BWC   Document 42   Filed 04/01/22   Page 14 of 18
USCA11 Case: 21-10676   Date Filed: 03/03/2022   Page: 14 of 16

14                    Opinion of the Court                    21-10676

Sea Island's position would require a plaintiff to have climbed on top of the arches in Arches National Park to challenge their destruction or to have stepped on the Old Faithful geyser at Yellowstone National Park to challenge its destruction. That position finds no support in case law. *Cf. Lujan*, 504 U.S. at 562–63 ("[T]he desire to use *or observe* an animal species, even for purely esthetic purposes, is undeniably a cognizable interest for purpose of standing." (emphasis added)).

Federal courts enjoy the power to protect an interest that is "shared by the many rather than the few." *Morton*, 405 U.S. at 734. And "[t]he fact that an injury may be suffered by a large number of people does not . . . make that injury a nonjusticiable generalized grievance." *Spokeo*, 578 U.S. at 339 n.7. An injury can be "widely shared," *id.*, and remain actionable so long as "the impact on [the] plaintiff is [not] plainly undifferentiated and common to *all* members of the public," *Lujan*, 504 U.S. at 575 (emphasis added) (alteration adopted) (internal quotation marks omitted). Not every citizen will drive by the wetland that Sea Island filled, nor will every citizen be bothered by not seeing the wetland in its natural state. *Cf. id.* (rejecting an injury that "affect[ed] only the generalized interest of *all* citizens" (emphasis added) (internal quotation marks omitted)).

Even if Sea Island is correct that the environmentalists have no recreational interest in the filled wetland itself because they have no ability to recreate on Sea Island's private property, that argument does not apply to Fraser's alleged aesthetic interests in the

Case 2:19-cv-00050-JRH-BWC   Document 42   Filed 04/01/22   Page 15 of 18
USCA11 Case: 21-10676   Date Filed: 03/03/2022   Page: 15 of 16

21-10676              Opinion of the Court                    15

filled wetland. A person can suffer an injury from the unsightly nature of private property under well-settled tort law, even if he cannot always prevail on his underlying claim. *See, e.g.*, *Allison v. Smith*, 695 P.2d 791, 794 (Colo. App. 1984) ("[L]egitimate but unsightly activity . . . may become a private nuisance . . . ."); *Livingston v. Davis*, 50 N.W.2d 592, 598 (Iowa 1951) ("[T]hat a thing is unsightly or offends the aesthetic sense does not *ordinarily* make it a nuisance or afford grounds *for injunctive relief.*" (emphases added)); M. L. Cross, Annotation, *Spite Fences and Other Spite Structures*, 133 A.L.R. 691 (1941) (explaining the general rule that a useful structure does not give rise to a cause of action even though "it causes *injury* to another by . . . interfering with the view" (emphasis added)); Deborah Tussey, Annotation, *Fence As Nuisance*, 80 A.L.R.3d 962 (1977) (explaining that the alleged "*injury*" caused by a "spite fence . . . is often the obstruction of the . . . view of the adjoining property" (emphasis added)); *cf. TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021) (explaining that "intangible harms" that were "traditionally recognized as providing a basis for lawsuits in American courts" are "concrete").

Sea Island also argues that the environmentalists cannot establish that they will suffer an injury that will occur at a "fixed and specific time" in the future as is required to request an injunction because any harm that they might have suffered occurred at a discrete time in 2013. (Citing *Am. C.L. Union of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1193–94 (11th Cir. 2009).) This argument is without merit because the environmentalists' theory

is that the filled wetland imposes a continuing and ongoing injury as Fraser "regularly" frequents an area from which the wetland is visible. An aesthetic injury is not a one-use-only card.

Fraser adequately alleged that she suffered an injury to her aesthetic interests in the wetland because she has viewed the wetland, derived aesthetic pleasure from its natural habitat and vegetation, and now derives less pleasure from the unnatural grasses and lawn placed on the wetland. Those allegations are sufficient to establish an injury in fact at this stage, and the district court erred in concluding otherwise.

## IV. CONCLUSION

We **VACATE** the order of dismissal and **REMAND** for further proceedings.

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

March 03, 2022

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 21-10676-DD
Case Style: The Glynn Environmental, et al v. Sea Island Acquisition, LLC
District Court Docket No: 2:19-cv-00050-JRH-BWC

Electronic Filing
All counsel must file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause. Non-incarcerated pro se parties are permitted to use the ECF system by registering for an account at www.pacer.gov. Information and training materials related to electronic filing are available on the Court's website. Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Pursuant to Fed.R.App.P. 39, costs taxed against the appellee.

Please use the most recent version of the Bill of Costs form available on the court's website at www.ca11.uscourts.gov.

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Bradly Wallace Holland, DD at 404-335-6181.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Djuanna H. Clark
Phone #: 404-335-6151

OPIN-1A Issuance of Opinion With Costs