IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | | |
|---|---|---|
| THE GLYNN ENVIRONMENTAL COALITION, INC.; CENTER FOR A SUSTAINABLE COAST, INC.; and JANE FRASER, | * * * * | |
| Plaintiffs, | * * | CV 219-050 |
| v. | * * | |
| SEA ISLAND ACQUISITION, LLC, | * * | |
| Defendant. | * * | |

**O R D E R**

This matter is before the Court on remand from the Eleventh Circuit. (Docs. 42, 43, 44.) On January 29, 2021, the Court found Plaintiffs lacked Article III standing and granted Defendant's motion to dismiss. (Doc. 34.) On appeal, the Eleventh Circuit vacated the Court's January 29, 2021 Order and remanded the case for further proceedings. (Doc. 42.) Accordingly, the Court now readdresses Defendant's motion to dismiss. (Doc. 26.) For the following reasons, Defendant's motion is **GRANTED**.

**I. BACKGROUND**

The facts of this case are presented in the Court's prior Orders and are summarized and supplemented as necessary below. (See Docs. 23, 34.)

On January 10, 2013, Defendant applied to the United States Army Corps of Engineers ("Corps") under Nationwide Permit 39 ("NWP 39") to fill 0.49 acres of land located at 100 Salt Marsh Lane, St. Simons Island, Georgia ("Subject Property") for the purpose of constructing an office building and parking lot. (Doc. 24, ¶¶ 2, 112-15.) The Corps, using its then-existing regulations, completed a preliminary Jurisdictional Determination ("JD"),[1] which provided Defendant notice that the Subject Property "may be waters of the United States" within the Corps' jurisdiction. (Doc. 24-1, at 1, 8, 16; Doc. 24-8, at 36-37.) On February 20, 2013, the Corps authorized Defendant to fill the Subject Property for the proposed project under NWP 39. (Doc. 24, ¶¶ 3, 117-18.)

On April 17, 2019, Plaintiffs brought this citizen suit to enforce certain provisions of the Clean Water Act ("CWA"), 33 U.S.C. §§ 1251-1389. (Docs. 1, 24.) Plaintiffs allege Defendant did not comply with the CWA and conducted unpermitted filling activities in violation of the CWA. (Doc. 24, ¶¶ 154-64, 169-72, 182-85.) Moreover, Plaintiffs seek a declaratory judgment that Defendant's authorization to act under NWP 39 has expired without Defendant's compliance and is invalid and void ab initio. (Id. ¶¶ 165-68, 173-81.)

---

[1] A preliminary JD is a non-binding, written indication that a parcel may contain "waters of the United States" and is "advisory in nature and may not be appealed." (Doc. 24-1, at 8.) On the other hand, an approved JD is the Corps' official determination that a parcel contains "waters of the United States," and these decisions are appealable. (Id. at 9, 11.)

2

Defendant first filed its motion to dismiss on April 6, 2020. (Doc. 26.) On January 29, 2021, the Court granted Defendant's motion to dismiss, finding Plaintiffs lacked Article III standing because they failed to establish they suffered an injury-in-fact. (Doc. 34, at 13.) Plaintiffs appealed, and on April 1, 2022, the Eleventh Circuit reversed and remanded the case to this Court for further proceedings. (Docs. 37, 42.) The Eleventh Circuit's mandate was then made the order of this Court, and the Court reopened this case on April 20, 2022. (Docs. 43, 44, 48.)

At the time the Corps issued Defendant NWP 39, and at the time Plaintiffs brought this lawsuit, the Corps asserted jurisdiction over "wetlands" that had a "significant nexus" to a traditional navigable water. (Id. ¶ 78; Doc. 63, at 8-11.) However, on May 25, 2023, the Supreme Court decided Sackett v. Environmental Protection Agency, which rejected the "significant nexus" test as the test to determine whether a parcel is a "wetland" under the CWA. 598 U.S. 651, 679 (2023). In Sackett, the Supreme Court adopted the test first pronounced by a plurality in Rapanos v. United States, 547 U.S. 715 (2006):

> [T]he CWA extends to only those wetlands that are "as a practical matter indistinguishable from waters of the United States." This requires the party asserting jurisdiction over adjacent wetlands to establish "first, that the adjacent body of water constitutes 'waters of the United States,' (i.e., a relatively permanent body of water connected to traditional interstate navigable waters); and second, that the wetland has a continuous surface connection with that water making it difficult to determine where the 'water' ends and the 'wetland' begins."

3

598 U.S. at 678-79 (alterations adopted) (quoting Rapanos, 547 U.S. at 755, 742).

On June 8, 2023, Defendant filed a notice of supplemental authority and motion for leave to file supplemental briefing in support of its motion to dismiss, apprising the Court of the Sackett decision and requesting leave to file supplemental briefing addressing Sackett's impact on this case. (Doc. 59.) The Court granted Defendant's motion over Plaintiffs' opposition. (Docs. 60, 61.) Defendant filed supplemental briefing on September 22, 2023, and Plaintiffs responded on October 6, 2023. (Docs. 62, 63.) The motion has now been fully briefed and is ripe for the Court's review.

## II. LEGAL STANDARD

In considering a motion to dismiss under Rule 12(b)(6), the Court tests the legal sufficiency of the complaint. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), *overruled on other grounds by* Davis v. Scherer, 468 U.S. 183 (1984). Pursuant to Federal Rule of Civil Procedure 8(a), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant fair notice of both the claim and the supporting grounds. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, Rule 8 "demands more than an unadorned, the-defendant-

4

unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). The plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct." Id. The Court must accept all well-pleaded facts in the complaint as true and construe all reasonable inferences therefrom in the light most favorable to the plaintiff. Garfield v. NDC Health Corp., 466 F.3d 1255, 1261 (11th Cir. 2006). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 557). A plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). Furthermore, "the court may dismiss a complaint pursuant to [Rule] 12(b)(6) when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993).

5

## III. DISCUSSION

All of Plaintiffs' claims seek to enforce the CWA. (Doc. 24, ¶¶ 154-185.) According to Defendant, the CWA does not apply because the Subject Property is not a "wetland," and thus not "waters of the United States" subject to the CWA's protection, post-Sackett. (Doc. 62, at 1-3.) Defendant argues, since the CWA does not apply, Plaintiffs' amended complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). (Id.)

Plaintiffs argue the Court should not dismiss this case, even after Sackett. (Doc. 63, at 4-13.) First, Plaintiffs argue Sackett does not apply retroactively to the facts of this case. (Id. at 4-7.) Second, even if Sackett applies, Defendant waived its argument that the Subject Property is not protected by the CWA. (Id. at 7-8, 13.) Third, regardless of which standard applies to the Subject Property, Plaintiffs have sufficiently alleged it is a "wetland." (Id. at 8-13.) The Court addresses the Parties' arguments below.

### A. Whether This Case Implicates Sackett

The Court finds Sackett is implicated under the facts of this case. The CWA prohibits "the discharge of any pollutant by any person." 33 U.S.C. § 1311(a). "Discharge of a pollutant" means "any addition of any pollutant to navigable waters from any point source." Id. § 1362(12)(A). Under the CWA, "pollutant" includes dredged spoil, rock, sand, and agricultural waste discharged into water. Id. § 1362(6). The CWA defines "navigable

6

waters" as "the waters of the United States." Id. § 1362(7). "The Environmental Protection Agency (EPA) and the [Corps] jointly enforce the CWA." Sackett, 598 U.S. at 661. The Corps is permitted, under 33 C.F.R. § 323.3(a), to issue permits "for the discharge of dredged or fill material into waters of the United States." The Corps has defined "waters of the United States," as used in 33 C.F.R. § 323.3(a), to include "wetlands" adjacent to those waters. 33 C.F.R. § 328.3(a)(4); see also 33 C.F.R. § 323.2(a).

Plaintiffs allege the CWA is implicated here because the Subject Property is a "wetland," and Defendant violated the CWA by filling the Subject Property and not complying with the CWA's permitting provisions. (Doc. 24, ¶¶ 1, 2, 9, 22, 40, 141-53, 169-72, 182-85.) If the Subject Property is not a "wetland," Defendant argues, then any purported filling of the Subject Property did not run afoul of the CWA, and all of Plaintiffs' claims fail. (Doc. 62, at 2.) Thus, the question becomes whether the Subject Property is a "wetland." Because the Supreme Court in Sackett "granted certiorari to decide the proper test for determining whether wetlands are 'waters of the United States,'" the Court finds the Sackett decision is squarely implicated here. 598 U.S. at 663.

## B. Whether Sackett Applies Retroactively

Because Sackett is implicated, the Court turns to whether Sackett applies retroactively. Plaintiffs argue Sackett has no retroactive effect on the Subject Property's jurisdictional

7

status. (Doc. 63, at 4-7.) In Plaintiffs' view, the <u>Sackett</u> decision provided the Corps and EPA with guidance for determining whether property qualifies as a "wetland." (See <u>id.</u> at 4.) Plaintiffs note that, after <u>Sackett</u>, the Corps and EPA amended their definitions of "wetlands" to comply with <u>Sackett</u>'s test and specifically stated the new "Conforming Rule" would become effective on September 8, 2023. (<u>Id.</u> (citing 88 Fed. Reg. 61,964 (Sept. 8, 2023) (codified at 33 C.F.R. § 328 & 40 C.F.R. § 120)).) Because the Conforming Rule's language does not explicitly provide that it applies retroactively, Plaintiffs conclude neither the Conforming Rule nor the <u>Sackett</u> decision apply retroactively. (<u>Id.</u> at 5 (citing <u>Sierra Club v. Tenn. Valley Auth.</u>, 430 F.3d 1337, 1351 (11th Cir. 2005); <u>Jones Creek Invs., LLC v. Columbia Cnty.</u>, No. CV 111-174, 2016 WL 593631, at *5 (S.D. Ga. Feb. 12, 2016)).) The Court disagrees.

<u>Sackett</u> did more than simply provide the Corps and EPA with guidance. The <u>Sackett</u> decision created a new rule of federal law when it held "that the CWA extends to only those 'wetlands with a continuous surface connection to bodies that are "waters of the United States" in their own right,' so that they are 'indistinguishable' from those waters." 598 U.S. at 684 (quoting <u>Rapanos</u>, 547 U.S. at 742, 755). The Supreme Court did not only create a new rule; but it also applied the new rule to the parties before it. See <u>id.</u> (explaining the new rule compelled reversal because "[t]he wetlands on the Sacketts' property are

8

distinguishable from any possibly covered waters [of the United States]" then reversing and remanding for further proceedings consistent with the Supreme Court's opinion).

> When [the Supreme] Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate [the Supreme Court's] announcement of the rule.

Harper v. Va. Dep't of Tax'n, 509 U.S. 86, 97 (1993). Because the Supreme Court applied a rule of federal law — its interpretation of the CWA — to the parties before it in Sackett, this Court must give full retroactive effect to the decision. See id. Therefore, the Court finds Sackett applies retroactively.

**C. Whether the Subject Property is a "Wetland" Under Sackett**

The Court now turns to whether the Subject Property, as described in Plaintiffs' amended complaint, satisfies the Sackett test. Plaintiffs argue the Court should not address this issue because Defendant waived its argument that the Subject Property is not a "wetland" by (1) obtaining a preliminary JD as opposed to an approved JD; and (2) raising it for the first time in its supplemental briefing. (Doc. 63, at 7-8, 13.) However, Defendant's argument — that the Court should apply the Sackett decision — is an argument that cannot be waived because it is the Court's duty to apply a Supreme Court decision retroactively to the facts of a non-final case if the Supreme Court applies an

9

applicable rule of federal law to the parties before it. See Harper, 509 U.S. at 90 ("[The Supreme] Court's application of a rule of federal law to the parties before [it] *requires every court to give retroactive effect to that decision.*" (emphasis added)). As discussed above, the Supreme Court applied a rule of federal law to the parties in Sackett. See 598 U.S. at 684. Accordingly, the Court has a duty to apply the decision retroactively to the facts of this case, even though they predate the Supreme Court's decision in Sackett. See Harper, 509 U.S. at 97.

The CWA only extends to wetlands that are indistinguishable from "waters of the United States" as a practical matter. Sackett, 598 U.S. at 678 (internal quotation marks and citation omitted). The Parties do not dispute, at least for purposes of Defendant's motion to dismiss, that Dunbar Creek is a traditional navigable water, and thus a "'water[] of the United States' in [its] own right." (Doc. 62, at 2 n.1); see also Sackett, 598 U.S. at 678, 684 (citation omitted). Accordingly, to establish the Subject Property is a "wetland" covered by the CWA, Plaintiffs must show: (1) the Subject Property is adjacent to Dunbar Creek; and (2) the Subject Property has a continuous surface connection with Dunbar Creek, making it difficult to determine where Dunbar Creek ends and the Subject Property begins. Sackett, 598 U.S. at 678-79.

Plaintiffs argue they met the Sackett standard by

10

> sa[ying] the Subject [Property] is a jurisdictional Water of the United States, alleging that water from the Subject [Property] flows via "both surface runoff and groundwater" to salt marsh adjacent to Dunbar Creek, and by relying on their expert Matthew Schweisberg's affidavit [stating] "[t]here is a direct connection between the Subject [Property] and the adjacent salt marsh via culverts and pipes."

(Doc. 63, at 11 (citing (Doc. 24-13, at 4)).) The Court disagrees. First, Plaintiffs' allegation that "[t]he Subject [Property] and its basin that includes Dunbar Creek . . . are . . . waters of the United States" is a legal conclusion, not a factual allegation, and must be disregarded. See Chapman v. U.S. Postal Serv., 442 F. App'x 480, 482-83 (11th Cir. 2011) ("In considering a motion to dismiss, a court should eliminate any legal conclusions contained in the complaint, and then determine whether the factual allegations, which are assumed to be true, give rise to relief." (citation omitted)). The only remaining allegations in Plaintiffs' amended complaint describing the Subject Property's proximity to Dunbar Creek is that they are both located in the same basin. (See Doc. 24, ¶¶ 40, 41.) However, the fact that the Subject Property and Dunbar Creek are in the same basin does not necessarily establish there is a "continuous surface connection" between them. See Sackett, 598 U.S. at 678-79.

Moreover, Plaintiffs' contention that water will eventually reach Dunbar Creek by "surface runoff and groundwater" and Plaintiffs' expert's statement that the Subject Property and

11

nearby salt marsh are directly connected "via culverts and pipes" do not sufficiently allege the Subject Property is a "wetland" under Sackett. (Doc. 63, at 11; Doc. 24-13, at 4.) Neither Plaintiffs' allegations nor Plaintiffs' expert's affidavit establish the Subject Property "has a continuous *surface* connection with [Dunbar Creek], making it difficult to determine where [Dunbar Creek] ends and the [Subject Property] begins." Sackett, 598 U.S. at 678-79 (emphasis added) (citation omitted).

In fact, the images attached to Plaintiffs' amended complaint show there is a "clear demarcation" between the Subject Property and Dunbar Creek.[2] (Doc. 24-1, at 5, 24; Doc. 24-8, at 7, 10, 54, 58; Doc. 24-9, at 1; Doc. 24-11, at 1); see also Sackett, 598 U.S. at 678. Plaintiffs provide survey images that outline the Subject Property and show Dunbar Creek to the west. (Doc. 24-1, at 5; Doc. 24-8, at 7, 10.) Based on the key provided, Dunbar Creek is hundreds of feet away from the Subject Property. (Doc. 24-8, at 10.) Between the Subject Property and Dunbar Creek (from west to east) there is: a salt marsh; upland; the road leading from Sea Island Road to Defendant's hotel; a median; the road from Defendant's hotel to Sea Island Road; and, finally, the Subject Property. (Doc. 24-1, at 24; Doc. 24-8, at 54, 58; Doc. 24-9, at 1; Doc. 24-11, at 1.) Because these images establish a "clear

---

[2] The Court may consider these images because Plaintiffs have attached them to the amended complaint. See Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000).

12

demarcation" between the Subject Property and Dunbar Creek, Plaintiffs' amended complaint fails to demonstrate there is a "continuous surface connection" between them and fails under the Sackett test. 598 U.S. at 678.

To be sure, Plaintiffs' expert opines that, "[b]ecause the salt marsh is tidal, each time tidal flooding occurs, . . . the water will 'pick up' a fresh dose of the excess chemicals and become contaminated," then the water will "flow[] back to Dunbar Creek when the tide ebbs." (Doc. 24-13, at 3.) Even though "phenomena like low tides or dry spells" do not necessarily sever a water's surface connection with a parcel for CWA purposes, as the Court discussed above, nothing in or attached to the amended complaint indicates Dunbar Creek ever has a surface connection with the Subject Property, even when the tides change. See Sackett, 598 U.S. at 678.

Because Plaintiffs failed to allege facts indicating the Subject Property is adjacent to Dunbar Creek and has such a continuous surface connection to it that it is "indistinguishable" from it, Plaintiffs fail to meet the Sackett test for whether a parcel is a "wetland," and thus "waters of the United States," under the CWA. Furthermore, the images attached to Plaintiffs' amended complaint indicate there is a clear demarcation between Dunbar Creek and the Subject Property. (See Doc. 24-1, at 5, 24; Doc. 24-8, at 7, 10, 54, 58; Doc. 24-9, at 1; Doc. 24-11, at 1);

13

see also Sackett, 598 U.S. at 678. Because Sackett applies retroactively to this case, and because the amended complaint does not satisfy the test promulgated in Sackett, the amended complaint does not sufficiently allege the Subject Property is a "wetland," thus it is not "waters of the United States" and does not invoke the CWA's protections. See 33 U.S.C. §§ 1311(a), 1362(12)(A), 1362(7), 1344; see also 33 C.F.R. §§ 323.3(a), 328.3(a)(4). Since each of Plaintiffs' claims are predicated on the CWA's application, Plaintiffs' amended complaint shall be dismissed.

## IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's motion to dismiss (Doc. 26) is **GRANTED**. The Clerk is **DIRECTED** to **TERMINATE** all pending motions and deadlines, if any, and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this 1st day of March, 2024.

_____
J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA